**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RECEIVED

SEP 1 9 2018

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| JANE DOE,<br>by and through her<br>next friend JULIE DOE; | ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) <br> ) |
| v. | ) <br> ) |
| | )     Case No. |
| THE DISTRICT OF COLUMBIA,<br>  A MUNICIPAL CORPORATION; | ) <br> ) <br> ) |
| SERVE:     Muriel Bowser, Mayor<br>             Office of The Mayor<br>             c/o Cynthia Brock-Smith<br>             Office of the Secretary<br>             John A. Wilson Building<br>             Room 419<br>             1350 Pennsylvania Ave. NW<br>             Washington, D.C. 20004 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|       and | ) <br> ) |
|              Karl A. Racine<br>             District of Columbia<br>              Attorney General<br>             441 4th Street NW<br>             Room 600 South<br>             Washington, D.C. 20001 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| AQUEELHA JAMES, individually and as<br>  an agent of DISTRICT OF COLUMBIA; | ) <br> ) <br> ) |
| SERVE:     Aqueelha James, Principal<br>             Roosevelt High School<br>             4301 13h Street NW<br>             Washington, D.C. 20011 | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      On June 13, 2017, Plaintiff Jane Doe, a freshman high school student, was sexually battered and violated by fellow student M.P.[1] at Roosevelt High School, a District of Columbia Public School (DCPS), in Washington, D.C.

2.      M.P. dragged Jane Doe into a boys' bathroom on the second floor of the school, and forced her into a bathroom stall. M.P. blocked the stall door with his body, and refused to allow her to exit. He groped Jane Doe's buttocks and thighs, attempted to shove his hands up her dress and into her underwear, and sucked or kissed her neck so violently that he caused it to bruise. Jane Doe begged M.P. to stop and let her out of the stall. M.P. warned her to "be quiet." Only after Jane Doe repeatedly pled with M.P. did he release her and allow her to exit the bathroom. M.P. then posted details about his assault against Jane Doe on social media.

3.      On June 14, 2017, Julie Doe reported the sexual violence that had been committed against her daughter, Jane Doe, to Defendant Principal Aqueelha James and Superintendent David Pinder. That same day, Julie and Jane Doe met with Defendant James, Assistant Principal Michael Moss, Dean of Students Reginald Stevens, and Guidance Counselor Maurice Butler to discuss M.P.'s sexual assault against Jane Doe. Defendant James dismissed the report and ridiculed and derided Jane and Julie Doe when she thought they were out of earshot, stating:

> **"I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email *just so I can embarrass her*..."** [2]

---

[1] Upon information and belief, M.P. was and continues to be a minor. His correct initials are not being used in order to protect his identity, pursuant to Fed. R. Civ. P. 5.2.

[2] These statements were recorded by Julie Doe on June 14, 2017, through her cellular telephone. The recording has been preserved.

**"Since I walked into this building, I immediately responded to what I knew was _bullshit_."**

**"This whole thing is going to blow up in her face."**

**"You should see the dress she has got on."**

4.      No Roosevelt High School administrator or other school official of Defendant District of Columbia completed a proper investigation of Jane and Julie Doe's report, informed them of the outcome of any type of investigation or disciplinary measures taken against M.P., or took any steps to ensure that Jane Doe would be safe at Roosevelt High School.

5.      Left with no other choice to ensure Jane Doe's safety, and fearing further retaliation by school officials against her, Jane and Julie determined that Jane would have to leave Roosevelt High School.

## JURISDICTION

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 _et seq._, and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

7.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

8.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this District.

## PARTIES

10.     Plaintiff Jane Doe is a minor child and a former Roosevelt High School student. At all times relevant herein, she was a minor and a resident of the District of Columbia, where she continues to reside.

11.     Plaintiff Julie Doe is the mother and next friend of Jane Doe.  She is a resident of the District of Columbia.

12.     Defendant the District of Columbia is a municipal corporation.

13.     Upon information and belief, Defendant Aqueelha James was and continues to be the principal of Roosevelt High School at all times relevant herein.  She is an employee and or agent of DCPS and the Defendant District of Columbia.

## FACTUAL ALLEGATIONS

14.     Jane Doe was a minor child and a freshman student at Roosevelt High School during the 2016-2017 academic year.

15.     M.P. was a student at Roosevelt High School during the 2016-2017 academic year.

16.     On June 13, 2017, Jane Doe and M.P. were in a classroom together on the third floor of the building with other students.  There was no teacher or staff member in the classroom and, upon information and belief, many staff and teachers had already left the building for the summer holiday as this was the last day of school for the 2016-2017 school year.

17.     M.P. requested to borrow Jane Doe's phone charger.  After borrowing the charger, he left the room.  Jane Doe then followed M.P., requesting that he give her back the charger she had lent him.  M.P. then ran down a flight of stairs to the second floor of the building, and Jane Doe followed him.  On the second floor, M.P. ran past several dean's offices

4

and classrooms. Upon reaching the area outside of a boys' restroom on the second floor, M.P. pulled Jane Doe into the restroom and then pushed her into a stall in the restroom. While in the stall, M.P. blocked the door with his body, and refused to allow her to exit for several minutes. During this time, he forcibly groped Jane Doe's buttocks and thighs, attempted to shove his hands up Jane Doe's dress and into her underwear, and sucked and/or kissed her neck, leaving a bruise. During the assault, Jane Doe repeatedly pled with M.P. to "stop" and to let her out of the stall. M.P. responded to her pleas by repeatedly telling her "be quiet." M.P. finally relented and allowed Jane Doe to leave the restroom.

18.    Thereafter, M.P. exited the school's premises. Jane Doe called Julie Doe and reported that she had been assaulted. She then left the school and returned home.

19.    Later on June 13, 2017, Julie Doe reported the incident by phone to the Metropolitan Police Department ("MPD"), who instructed her to report the incident to the appropriate persons at Roosevelt High School in order to pursue criminal charges.

20.    Following the assault on June 13, 2017, M.P. posted details concerning the incident on social media and other students approached Jane Doe about the incident, causing her severe emotional distress.

### Defendants Ridiculed Jane Doe and Julie Doe and Were Deliberately Indifferent to the Report of Sexual Violence against Jane Doe

21.    On June 14, 2017, Julie Doe wrote an email to Defendant James and Superintendent David Pinder, reporting that Jane Doe had been sexually assaulted, and requesting assistance with the matter.

22.    Later on June 14, 2017, Julie Doe, along with Jane Doe, attended a meeting at the Roosevelt High School with Defendant James, Dean of Students Stevens, Assistant Principal Moss, and Guidance Counselor Butler. Mr. Stevens participated in the meeting by telephone.

5

23.     During this meeting, Defendant James asked for the identity of the perpetrator, where the incident occurred, and attempted to otherwise obtain a statement from Jane Doe. Defendant James indicated that MPD would be coming to the school to interview Jane Doe.

24.     During this meeting, Jane Doe became upset and left the room. Julie Doe followed her into the hallway directly outside of the conference room. Defendant James then stated to the others present that "this whole thing is going to blow up in her face," "that is why I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her..." She also stated to Mr. Stevens, who was listening by telephone, "you should see the dress she has got on." During the conversation, Defendant James can also be heard laughing, and otherwise ridiculing Jane Doe. She finally says "since I [Defendant James] walked into this building, I immediately responded to what I knew was bullshit." Upon information and belief, Defendant James made similar statements to the Metropolitan Police officers assigned to the criminal investigation of this matter. These statements by Defendant James are not only defamatory and slanderous toward Jane Doe, but also demonstrate the deliberate indifference exhibited by Defendant James and the other DCPS officials involved in the investigation of this assault, as well as the sexual discrimination and retaliation experienced by Jane Doe as a result of reporting a sexual assault.

25.     Jane Doe was then interviewed by Maurice Butler, who obtained a report of the assault from her. She was thereafter interviewed by an Officer Garcia from MPD at her home, who took a preliminary report to be referred to the Youth Division and the criminal matter was opened for an investigation.

26.     Upon information and belief, after June 14, 2017, DCPS did not further investigate the sexual assault, other than turning over some video footage to the police officers involved in the criminal investigation.  Defendants did not report any conclusion of any such investigation to Jane Doe or Julie Roe, and they did not institute any disciplinary measures or proceedings against M.P.  Upon information and belief, Defendants never even  interviewed M.P.

27.     Following the meetings that took place, Julie Doe and Jane Doe listened to the recording and discovered the statements made by Defendant James.  Jane Doe became depressed, withdrawn, and reluctant to speak further about the incident after hearing the recording.

28.     Thereafter, Julie Doe sought a safety transfer for Jane Doe from Roosevelt High School to another high school in the District of Columbia for the 2017-2018 school year.

29.     Julie Doe also reported the retaliation by Ms. James and the other DCPS employees to the Mayor and David Pinder, Superintendent.  Upon information and belief, these school officials did not act upon and did not respond to Julie Doe's concerns about the retaliation her daughter experienced at the hands of Ms. James and the other DCPS employees after reporting the sexual assault.

30.     Upon information and belief, Defendant District of Columbia, through its agents and employees, denied Julie Doe's request for a safety transfer for her daughter.

31.     Ultimately, a transfer to a different high school was approved on August 14, 2017, just seven days before school was scheduled to start for the 2017-2018 school year. Consequently, Jane Doe waited the entire summer to find out whether she would be transferred, or whether DCPS would require her to return to Roosevelt High School, where she had been

7

sexually assaulted, ridiculed by Defendant James, and retaliated against for reporting sexual assault. This waiting period caused additional stress and anxiety to Jane Doe leading up to the 2017-2018 academic school year

32. As a result of the defamatory and slanderous statements made by Defendant James, Defendants' deliberate indifference and retaliation against her for reporting sexual violence, and the sexual discrimination she experienced at the hands of Defendant James and other DCPS officials, Jane Doe has suffered severe psychological and emotional injuries, which have required medical treatment, including psychological counseling, and medication.

33. Plaintiff seeks recovery for the significant damages she has suffered as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*; federal rights; equal protection rights under the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; and the laws of the District of Columbia described in this Complaint.

### *Defendants Failed to Provide Essential Title IX and Sexual Harassment Training to Administrators, Staff, Students, and Students' Parents*

34. In 1998, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).

35. In 1999, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to student-against-student sexual misconduct and harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The Court stated deliberate indifference may be shown when a school makes no effort to investigate or put an end to student-against-student sexual harassment. *Id.* at 654.

8

36.     In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students, or Third Parties* ("2001 OCR Guidance"), informing all U.S. schools receiving Federal financial assistance, including School Defendants, that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn."   OCR reminded schools that student-against-student sexual misconduct constitutes prohibited sexual harassment.  OCR also stated:

> "[S]chools need to ensure that employees are ***trained*** so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. ***Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported.***"

37.     The 2001 OCR Guidance stated, with respect to student-against-student sexual harassment:

> "If a student sexually harasses another student and the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the program, and if the school knows . . . about the harassment, the school is responsible for taking immediate effective action to eliminate the hostile environment and prevent its recurrence. . . . [I]f, upon notice, the school fails to take prompt, effective action, the school's own inaction has permitted the student to be subjected to a hostile environment that denies or limits the student's ability to participate in or benefit from the school's program on the basis of sex."

38.     In January 2006, OCR issued *Dear Colleague Letter – Sexual Harassment Issues*, to U.S. public schools, including School Defendants, stating, "***[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being***."  OCR reminded public schools of their obligation "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."

39.    In September 2008, OCR issued *Sexual Harassment: It's Not Academic,* reiterating that unwelcome student-against-student sexual touching is sexual harassment, and that sexual harassment includes rape, sexual assault, dating violence, and sexually motivated stalking.

40.    On April 4, 2011, OCR sent *Dear Colleague Letter: Sexual Violence* ("2011 OCR Guidance"), to all U.S. public schools, including School Defendants, that issued a *"call to action"* to the nation's schools because of "deeply troubling" data regarding school-place sexual violence.  OCR informed schools, *"[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools."*  The Guidance stated, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX."

41.    The 2011 OCR Guidance reminded schools they have an obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide *training and education* to employees and students on sexual harassment and violence.[3]

42.    On April 24, 2013, OCR sent *Dear Colleague Letter: Retaliation,* to all U.S. public schools reminding them they may not retaliate against students or parents who complain to a school about a civil rights violation like sexual discrimination.

43.    On April 24, 2015, OCR sent *Dear Colleague Letter: Title IX Coordinators,* and issued a *Title IX Resource Guide,* to all U.S. public schools.  OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for

---

[3] The U.S. Department of Education withdrew this Dear Colleague Letter on September 22, 2017.  However, the statistics cited above have not changed, and the requirements set forth above have not been formally revised or otherwise superseded by the U.S. Department of Education.

10

coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. §106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."

44.     Prior to M.P.'s sexual assault on Jane Doe, a student-on-student sexual assault occurred on August 15, 2016, on Roosevelt High School's campus.

45.     Based upon information and belief, despite clear notice by the U.S. Supreme Court and OCR regarding Defendants' obligations to prevent and remediate the effects of sexual harassment, at all times relevant hereto Defendants failed to provide training or education to administrators, staff, students, and parents regarding Title IX, student-against-student sexual harassment, or retaliation against students who report sexual harassment.

46.     Based upon information and belief, Defendants, at all times relevant hereto, failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual harassment and violence, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, remediating sexual harassment and violence, proper reporting of suspected sexual harassment or violence to Defendants' employees, and prohibition on retaliating against students who report sexual harassment.

47.     At all times relevant hereto, Defendants, based upon information and belief, had no Title IX coordinator or other employees designated to handle complaints of sexual harassment and/or sexual assault, who were adequately trained in receiving, coordinating or investigating reports of sexual harassment and sexual discrimination against students, such as Jane Doe.

11

48.     At all times relevant hereto, Defendants' officially adopted sexual harassment policies were inequitable and inadequate with respect to investigating and properly responding to reports of student-against-student sexual harassment, and, in any event, based upon information and belief, Defendants failed to provide training or education on those policies to administrators, staff, students, and parents.

## COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*
### (*Against Defendant District of Columbia*)

49.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

50.     No later than June 14, 2017, Defendant District of Columbia, through its agents and employees including but not limited to Defendant James, Mr. Butler, Mr. Moss, and Mr. Stevens, had actual knowledge of M.P.'s sexual assault upon Jane Doe.  Defendant knew or should have known that such conduct was considered sex discrimination and was specifically prohibited by Title IX.

51.     The individuals with actual knowledge, including but not limited to Defendant James, Mr. Butler, Mr. Moss, and Mr. Stevens, had the authority and ability to investigate and take meaningful corrective action by investigating the matter and referring it to an appropriate Title IX officer for follow-up.

52.     Instead, Defendant District of Columbia, through its agents and employees including but not limited to Defendant James, Mr. Butler, Mr. Moss, and Mr. Stevens, retaliated against Jane Doe making an accusation of sexual assault by making defamatory, slanderous, and inappropriate statements about her to other DCPS employees, and upon information and belief, to Metropolitan Police Department officers who investigated this incident.

12

53.     Defendant District of Columbia's failure to adequately investigate Jane Doe's report, failure to take corrective action against M.P., failure to interview M.P., and the retaliatory actions and/or statements taken and/or made by Defendant James, were clearly unreasonable in light of the known circumstances.

54.     Through the actions and inactions of its agents or employees, Defendant District of Columbia, was deliberately indifferent to the sexual harassment, assault, and violence that Jane Doe suffered at Roosevelt High School, inappropriately retaliated against Jane Doe for making a report of sexual assault, and proximately caused injuries to Jane Doe.

55.     Through the actions and inactions of its agents or employees, Defendant District of Columbia created a climate in which sexual misconduct was tolerated and complaints of sexual ignored and/or discouraged.

56.     As a result of Defendant District of Columbia's deliberate indifference towards Jane Doe, she was subjected to sexual discrimination by DCPS employees following the report of sexual assault. This discrimination included but is not limited to, the defamatory and slanderous statements made by Defendant James to other agents of the District of Columbia involved in the investigation of this sexual assault.

57.     The sexual assault perpetrated by M.P. against Jane Doe was severe, objectively offensive, and effectively barred Jane Doe's access to educational opportunities and benefits. Furthermore, the defamatory and slanderous statements by Defendant James as well as the retaliation Jane Doe experienced from DCPS employees and/or agents, including but not limited to Defendant James, caused Jane Doe additional emotional distress and psychological suffering, contributing to her injuries following the assault.

13

58.     By their actions and inactions, Defendants acted with deliberate indifference toward the right of Jane Doe to a safe and secure education environment, thus materially impairing Jane Doe's ability to pursue her education at Roosevelt in violation of the requirements of Title IX.

59.     Specifically, Defendants violated Title IX by, *inter alia*:

    a.     Choosing to take no action against M.P. to discipline him;

    b.     Ignoring Jane Doe's complaint regarding M.P.'s sexual assault and violence against her, or being deliberately indifferent thereto;

    c.     Failing to conduct their own investigation into reports of M.P.'s sexual misconduct;

    d.     Failing to refer the investigation to a designated and qualified Title IX officer;

    e.     Requiring Jane Doe to protect herself from further sexual harassment, assault, and violence from M.P., with no assistance from Defendants;

    f.     Retaliating against Jane Doe for reporting the sexual assault perpetrated upon her by M.P.;

    g.     Creating a climate that tolerated sexual harassment, assault, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by M.P., or were deliberately indifferent thereto;

    h.     Failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual harassment, assault, and violence;

    i.     Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual harassment, assault, and violence;

    j.     Failing to provide policy, procedures, or training for administrators, employees, students, and students' parents about sexual harassment and assault;

    k.     Failing to terminate or otherwise discipline Defendants' employees and agents identified herein for their willful disregard to Jane Doe's safety and rights, or were deliberately indifferent thereto;

14

l.     Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Jane Doe after she was sexually harassed, assaulted, and violated by M.P.; or being deliberately indifferent thereto; and

m.    Through other actions, inaction, and deliberate indifference.

60.    As a direct and proximate result of Defendants' action, inaction, deliberate indifference, and retaliation, Plaintiff Jane Doe suffered and continues to suffer injuries for which she is entitled to be compensated, including but not limited to:

a.     Past, present, and future physical and psychological pain, suffering and impairment;

b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.     Impaired educational capacity;

d.     Attorneys' fees and costs; and

e.     Such other and further relief as this Court deems just and proper.

## COUNT II
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*
### *Retaliation against Jane Doe*

61.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

62.    Reporting sexual assault and harassment to school officials is a statutorily protected activity under Title IX. Reporting incidents of sexual discrimination is integral to Title IX enforcement.

63.    Because Jane Doe reported M.P.'s sexual assault on her to employees and agents of DCPS, certain DCPS employees and agents, including but not limited to Defendant James, retaliated against her by making defamatory and slanderous statements concerning Jane Doe to other employees or agents of the District of Columbia, including Mr. Butler, Mr. Moss, and Mr.

15

Stevens, and Metropolitan Police Officers assigned to the criminal investigation of the sexual assault.

64.    Defendant District of Columbia, through its agents and employees including but not limited to Defendant James, acted materially adverse to Jane Doe's interests by denying a safety transfer; depriving her of educational opportunities and benefits and the right to a fair and impartial investigation; slandering and defaming her; and, otherwise subjecting her to a hostile education environment.

65.    As a direct and proximate result of Defendant District of Columbia's retaliation, Plaintiff Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.    Past, present, and future physical and psychological pain, suffering and impairment;

   b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.    Impaired educational capacity;

   d.    Attorneys' fees and costs; and

   e.    Such other and further relief as this Court deems just and proper.

## COUNT III
### Violation of Plaintiff's Constitutional and Federal Rights, brought under 42 U.S.C. § 1983
### Failure to Train

66.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

67.    Sexual harassment is a form of unlawful sex discrimination that can violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. Jane Doe's Equal Protection rights were violated when she suffered sexual harassment and discrimination at Roosevelt High School.

16

68.    Jane Doe had federal civil rights secured by federal statute, Title IX of the Education Amendments of 1972, which provides in pertinent part:

> [N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

69.    Title IX was intended to benefit students like Jane Doe.

70.    Title IX provides students like Jane Doe clear civil rights, which are not amorphous or vague, to be free from known sexual discrimination at school.

71.    Title IX imposes a binding mandatory obligation on schools like that run by Defendants that are recipients of federal funding that prohibits them from discriminating against students on the basis of sex.

72.    The U.S. Supreme Court, in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under *both* Title IX *and* § 1983 for unlawful sex discrimination. Accordingly, a remedy for sex discrimination in schools is not foreclosed under §1983.

73.    At all times relevant hereto, Defendant District of Columbia and its agents or employees, including but not limited to Defendant James, were policy makers and administrators who had a duty to train, and failed to train, administrators, staff, students, and parents concerning sexual discrimination and harassment against students, Title IX and/or student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual harassment by students like M.P. against students like Jane Doe.

74.    At all times relevant hereto, Defendant District of Columbia and its agents or employees, including but not limited to Defendant James, were policy makers and administrators who had a duty to train, and failed to train, administrators, staff, students, and parents regarding

any school policies concerning sexual discrimination and harassment against students, Title IX and/or student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual assault by students like M.P. against students like Jane Doe.

75. Defendant District of Columbia failed to train administrators, staff, students and parents despite the plainly obvious need for training on, among other things, student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual assault like that engaged in by M.P.

76. Numerous authorities, including the U.S. Supreme Court and U.S. Department of Education, made clear to School Defendants that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence and prevalence of student-against-student sexual assault and abuse in schools. It was inevitable that School Defendants' administrators and employees would encounter recurrent situations involving sexual abuse that implicated students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations.

77. Defendant District of Columbia failed to adequately train administrators, staff, students, and parents, and thereby prohibit or discourage readily foreseeable conduct, despite the clearly established and well known known dangers of sexual harassment, assault, battery, and violence faced by students in U.S. public schools, and thereby were deliberately indifferent.

78. Defendant District of Columbia's failure to train administrators, staff, students, and parents effectively denied Jane Doe's clearly established federal rights and Constitutional rights.

79. Defendant District of Columbia failed to train administrators, staff, students, and parents in deliberate, reckless, and callous indifference to Plaintiff's federally protected rights.

18

80.     As a direct and natural consequence of Defendant District of Columbia's actions, inactions, and deliberate indifference to and violation of her clearly established Constitutional and federal rights, Jane Doe suffered, and continues to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

81.     As a direct and proximate result of Defendant District of Columbia's actions, inaction, deliberate indifference to, and violation of Jane Doe's clearly established Constitutional and federal rights, Jane Doe suffered and continues to suffer from injuries for which she is entitled to be compensated, including but not limited to:

      a.     Past, present, and future physical and psychological pain, suffering and impairment;

      b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.     Impaired educational capacity;

      d.     Attorneys' fees and costs; and

      e.     Such other and further relief as this Court deems just and proper.

## COUNT IV
### Intentional Infliction of Emotional Distress
#### (Against All Defendants)

82.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein

83.     Jane Doe was a student at Roosevelt High School and was subject to the authority of Defendant James, her principal, and other agents or employees of the District of Columbia. As such, Defendant James had a duty to protect Jane Doe from sexual harassment, assault and discrimination.

84.     Defendants, through their agents and employees including Defendant James, after learning of M.P.'s sexual assault against Jane Doe, did not impartially investigate the claims of

19

sexual assault, and made outrageous defamatory and slanderous statements to other employees or agents of the District of Columbia with the intent of harming Jane Doe and/or her reputation. Defendants thereby acted with extreme and outrageous conduct towards Jane Doe, and in a manner which was likely to cause her severe emotional distress.

85.    At all times relevant herein, Defendant James was an employee of Defendant District of Columbia and was acting in her capacity as the principal of Roosevelt High School. Therefore, Defendant District of Columbia is vicariously liable for the intentional actions of Defendant James.

86.    As a direct and proximate result of Defendants' breach of their duties to Jane Doe, and their extreme and outrageous conduct towards her, Jane Doe suffered and continues to suffer from injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    Impaired educational capacity;

    d.    Punitive damages as necessary and sufficient to deter Individual Defendants Rumley and Fulkerson from engaging in the same or similar behavior in the future; and

    e.    Such other and further relief as this Court deems just and proper.

## COUNT V
### Negligent Infliction of Emotional Distress
### (*Against All Defendants*)

87.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

88.    Jane Doe was a student at Roosevelt High School and was subject to the authority of Defendant James, her principal, and other agents or employees of the District of Columbia.

As such, Defendants had a duty to protect Jane Doe from sexual harassment, assault, and discrimination.

89.     There was an especially likely risk that the mishandling of an investigation of a claim of sexual assault made by Jane Doe would cause serious emotional distress to her.

90.     Defendants, through their agents and employees including Defendant James, after learning of M.P.'s sexual assault against Jane Doe, failed to adequately, appropriately, and impartially investigate the claims of sexual assault; failed to interview M.P.; failed to discipline M.P. in any manner or supervise his activities on school property; made reckless defamatory and slanderous comments about Jane Doe to other employees or agents of the District of Columbia; and otherwise failed to act reasonably under the circumstances. Defendants thereby breached their duties to Jane Doe in a manner that was likely to cause her severe emotional distress.

91.     At all times relevant herein, Defendant James was an employee of Defendant District of Columbia and was acting in her capacity as the principal of Roosevelt High School. Therefore, Defendant District of Columbia is vicariously liable for the negligence of Defendant James.

92.     As a direct and proximate result of Defendants' negligence, Jane Doe suffered and continues to suffer from injuries for which she is entitled to be compensated, including but not limited to:

  a.     Past, present, and future physical and psychological pain, suffering and impairment;

  b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

  c.     Impaired educational capacity; and

  d.     Such other and further relief as this Court deems just and proper.

21

## COUNT VI
## Defamation/Slander
### (*Against All Defendants*)

93.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

94.     On June 14, 2017, at Roosevelt High School, Defendant James made the following defamatory and slanderous statements to Maurice Butler, Michael Moss, and Reginald Stevens: "This whole thing is going to blow up in her face;" "that is why I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her...;" "you should see the dress she has got on;" and, "since I [Defendant James] walked into this building, I immediately responded to what I knew was bullshit." During the conversation, Defendant James also laughed at and otherwise ridiculed Jane Doe.

95.     Upon information and belief, Defendant James also made similar statements to Metropolitan Police officers who were assigned to investigate the sexual assault perpetrated by M.P. upon Jane Doe.

96.     These statements by Defendant James were made negligently and/or with malice and intent to harm Jane Doe and/or her reputation.

97.     At all times relevant herein, Defendant James was an employee of Defendant District of Columbia and was acting in her capacity as the principal of Roosevelt High School. Therefore, Defendant District of Columbia is vicariously liable for the defamation and/or slander perpetrated by Defendant James.

98.    As a direct and proximate result of the defamation and/or slander described above, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    e.    Past, present, and future physical and psychological pain, suffering and impairment;

    f.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    g.    Impaired educational capacity; and

    h.    Such other and further relief as this Court deems just and proper.

## COUNT VII
### Negligent Supervision
*(Against All Defendants)*

99.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

100.    Jane Doe was a student at Roosevelt High School and was subject to the authority of Defendants, including Defendant James, her principal. Similarly, M.P. was a student at Roosevelt High School and as such was subject to the authority and control of Defendants. As such, Defendants had a duty to protect Jane Doe from sexual assault and/or harassment while on their premises and while in their custody and control.

101.    Defendants' duties to Jane Doe extended to providing adequate supervision of other students, including M.P.

102.    Given the prevalence of sexual assault in schools and at least one prior known act of sexual violence towards a student by other students at Roosevelt High School in the same school year, Defendants knew or should have known of the risk of sexual violence towards students at the school.

23

103.    Despite these known risks, Defendants failed to provide adequate supervision over M.P. on the date of the assault by failing to adequately staff classrooms and/or deans offices; failing to adequately monitor the hallways and/or restrooms; failing to monitor security camera footage in the building; failing to provide adequate security in the building; and otherwise failing to reasonably supervise students, including M.P., on the date of the incident.

104.    As a direct and proximate result of the negligent supervision of Defendants, Jane Doe sustained and continues  to sustain injuries for which she is entitled to be compensated, including but not limited to:

        i.      Past, present, and future physical and psychological pain, suffering and impairment;

        j.      Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

        k.      Impaired educational capacity; and

        l.      Such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff prays the Court enter judgment against Defendants, jointly and severally, for an amount of no less than $5,000,000.00 for compensatory and punitive damages, together with costs of this lawsuit, legal interest, reasonable attorney's fees and such other relief as the Court may deem just and proper under the circumstances.

24

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

KOONZ, MCKENNEY, JOHNSON,
  DEPAOLIS & LIGHTFOOT, LLP

By: _____

David M. Schloss      #416523
Kasey K. Murray       #1016186
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, D.C.  20006
(202) 659-5500
kmurray@koonz.com
*Counsel for Plaintiff*

and

THE FIERBERG NATIONAL LAW GROUP

By: _____

Douglas E. Fierberg      #418632
The Fierberg National Law Group
1701 Pennsylvania Ave., NW
Suite 200
Washington, D.C.  20006
(202) 351-0510
dfierberg@tfnlgroup.com
*Counsel for Plaintiff*

25