# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JANE DOE, by and through                  )
her next friend, JULIE DOE, *et al.,*     )
                                          )
              Plaintiffs,                 )
                                          )   C.A. No. 1:18-CV-2181 (ABJ)
              v.                          )
                                          )
District of Columbia, *et al.,*           )
                                          )
              Defendants.                 )
_____)

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia (the District), by and through counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Complaint [3]. The District also moves for summary judgment under Fed. Rule of Civil Procedure 56. As grounds in support of the motions, the District states that:

1)      Plaintiff Julie Doe failed to state a cause of action for which she is entitled to relief;

2)      Title IX, 20 U.S.C. §§ 1681-1688, does not govern Plaintiffs' claims (Count I or Count II) against the District.

3)      The Fourteenth Amendment does not apply to the District and Plaintiffs have failed to sufficiently plead municipal liability against the District pursuant to 42 U.S.C. § 1983;

4)      Plaintiffs' common law torts against the District are barred by their failure to fully comply with D.C. Code § 12-309; and

1

     5)     Plaintiffs fail to state a viable claim for defamation, slander, intentional infliction of emotional distress, negligent infliction of emotional distress or for negligent supervision.

A Memorandum of Points and Authorities in support of this Motion and a proposed Order are attached hereto for this Court's consideration.

               Respectfully submitted,

               KARL A. RACINE
               Attorney General for the District of Columbia

               GEORGE C. VALENTINE
               Deputy Attorney General
               Civil Litigation Division

               /s/ Patricia A. Oxendine
               PATRICIA A. OXENDINE
               D.C. Bar No. 428132
               Chief, Civil Litigation Division, Sec. 1

               /s/ Kerslyn D. Featherstone
               KERSLYN D. FEATHERSTONE
               D.C. Bar No. 478758
               Senior Assistant Attorney General
               EMMA LOMAX[1]
               Assistant Attorney General
               441 Fourth St., N.W., Suite 630 South
               Washington, D.C. 20001
               Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
               Fax: (202) 741-8941; (202) 715-7821
               Kerslyn.featherstone@dc.gov;
               emma.lomax@dc.gov

---

[1]     Admitted to practice only in the state of Texas. Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JANE DOE, by and through                )
her next friend, JULIE DOE, *et al.,*   )
                                        )
         Plaintiffs,                    )
                                        )   C.A. No. 1:18-CV-2181 (ABJ)
         v.                             )
                                        )
District of Columbia, *et al.,*         )
                                        )
         Defendants.                    )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MOTION FOR SUMMARY JUDGMENT

In support of its motion to dismiss Plaintiffs' Complaint and motion for summary judgment, Defendant District of Columbia (the District), by and through counsel, submits this memorandum of points and authorities and states as follows:

### STATEMENT OF FACTS

Plaintiff Jane Doe filed this action, through her next friend, Julie Doe on September 19, 2018. Compl. [3]. Plaintiff Julie Doe asserts claims against both against the District and Aqueelha James, Principal of Roosevelt High School. Specifically, Plaintiffs assert claims under Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* (Counts I and II), a constitutional claim for failure to train under the 14th Amendment pursuant to 42 U.S.C. 1983, and common law claims against all defendants for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation/slander and negligent supervision. *Id.* Plaintiffs' claims stem from Jane Doe's allegations that on or about June 13, 2017, while a

student at Roosevelt High School, she was sexually assaulted by another student, M.P., during school hours. *Id.* at ¶ 17. Plaintiffs allege they made a report of the crime to the Metropolitan Police Department on the same day as the alleged sexual assault. *Id.* at ¶ 19. Plaintiffs also aver that M.P. posted details of the incident on his social medial accounts. *Id.* at ¶ 20.

Plaintiffs submit that by email, dated June 14, 2017, they reported the sexual assault to Defendant James and Superintendent David Pinder. *Id.* at ¶ 21. Plaintiffs aver that later that same day, they met with Defendant James, Dean of Students Reginald Stevens, Assistant Principal Michael Moss and Guidance Counselor Butler at the school to discuss the alleged sexual assault. *Id.* at ¶ 22. Dean Stevens allegedly participated by phone. *Id.* Plaintiffs acknowledge that during that meeting, Principal James asked for the identity of the perpetrator, where the incident occurred and attempted to obtain a statement from Jane Doe. *Id.* at ¶ 23. Plaintiffs aver that Jane Doe became upset, left the room and Julie Doe also left the room. *Id.* at ¶ 24. Unbeknownst to those remaining in the room, the conversations of the school officials were captured on audio. *Id.* at ¶¶ 24, 27. Plaintiffs claim that Defendant James made the following defamatory and slanderous comments to the other school officials:

> "this whole thing is going to blow up in her face,"that is why I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her..." She also stated to Mr. Stevens, who was listening by telephone, "you should  see the dress she has got on." During the conversation, Defendant James can also be heard laughing, and otherwise ridiculing Jane Doe. She finally says "since I [Defendant James] walked into this building, I immediately responded to what I knew was bullshit."

*Id.* at ¶ 24. Plaintiffs aver that they believe that Defendant James made similar statements to the investigator assigned to the criminal investigation. *Id.* Plaintiffs admit that Jane Doe was later interviewed by Maurice Butler and Officer Garcia on separate occasions, reports of the assault were retrieved from her, and a criminal matter was opened for an investigation. *Id.* at ¶ 25.

Plaintiffs submit that "[u]pon information and belief, after June 14, 2017, DCPS did not further investigate the sexual assault, other than turning over some video footage to MPD police officers involved in the criminal investigation." *Id.* at ¶ 26. Plaintiffs aver that they were not apprised of the conclusions of the investigation, and no discipline measures or other proceedings were instituted against M.P., the perpetrator. *Id.* at ¶ 27. Julie Doe acknowledges that she "sought a safety transfer for Jane Doe from Roosevelt High School to another high school…for the 2017-2018 school year." *Id.* at ¶ 28. A transfer to a different high school was approved for Julie Doe on August 14, 2017, as requested. *Id.* at ¶ 31. Plaintiffs submit that as a result of the defamatory statements contained on the audio, "she suffered severe psychological and emotional injuries, which have required medical treatment, including psychological counseling, and medication." *Id.*

Plaintiffs allege the following supports Title IX liability against the District:

a.   Choosing to take no action against M.P. to discipline him;

b.   Ignoring Jane Doe's complaint regarding M.P.'s sexual assault and violence against her, or being deliberately indifferent thereto;

c.   Failing to conduct their own investigation into reports of M.P.'s sexual misconduct;

d.   Failing to refer the investigation to a designated and qualified Title IX officer;

e.   Requiring Jane Doe to protect herself from further sexual harassment, assault, and violence from M.P., with no assistance from Defendants;

f.   Retaliating against Jane Doe for reporting the sexual assault perpetrated upon her by M.P.;

g.   Creating a climate that tolerated sexual harassment, assault, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by M.P., or were deliberately indifferent thereto;

h.   Failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual harassment, assault, and violence;

1.   Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual harassment, assault, and violence;

j.   Failing to provide policy, procedures, or training for administrators, employees, students, and students' parents about sexual harassment and assault;

k.   Failing to terminate or otherwise discipline Defendants' employees and agents identified herein for their willful disregard to Jane Doe's safety and rights, or were deliberately indifferent thereto;

l.   Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Jane Doe after she was sexually harassed, assaulted, and violated by M.P.; or being deliberately indifferent thereto; and

m.   Through other actions, inaction, and deliberate indifference.

*Id.* at ¶ 59. Plaintiffs also avers that their rights under Title IX were violated because Jane Doe was retaliated against when Defendant James made defamatory and slanderous statements about her and acted materially adverse to her interests by denying a safety transfer and depriving her of educational opportunities and benefits and the right to a fair and impartial investigation. *Id.* at ¶ 64. As a result of the alleged actions, Plaintiffs claim that Plaintiff Jane Doe suffered unspecified injuries. *Id.* at ¶ 65. In an effort to support municipal liability under § 1983, Plaintiffs allege that the District, its agents, including Defendant James, violated Jane Doe's constitutional rights under the Fourteenth Amendment and had a duty to train on Title IX sexual harassment and assaults and failed to do so. *Id.* at ¶ 73.

Plaintiffs filed this action on September 21, 2018. Compl. [3].

The District now moves to dismiss Plaintiffs' claims filed against it and for summary judgment.

6

## STANDARD OF REVIEW

### A.   Motion to Dismiss

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when a moving party has failed to set forth a claim for which he/she is entitled to relief. The determination of whether a dismissal is proper must be made on the face of the pleadings alone. *See Telecommunications of Key West, Inc. v. United States,* 757 F.2d 1330, 1335 (D.C. Cir. 1985); *Celotex Corp. v. Catrett,* 106 S. Ct. 2548 (1986). A plaintiff is required to plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

In order to survive a motion to dismiss, a plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65. "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966.

### B.   Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. *Id.* at 323; Fed. R. Civ. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials"). In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial. *Celotex,* 477 U.S. at 324.

To avoid summary judgment, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by [the evidence in the record] designate specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted). The non-moving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Doe,* 706 F.Supp.2d at 5. "In order to survive a summary judgment motion, a plaintiff must have more than a scintilla of evidence to support his claims." *Freedman v. MCI Telecomm. Corp.,* 255 F.3d 840, 845 (D.C.Cir.2001). The non-moving party is required to point to evidence that would permit a reasonable jury to find in his favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987).

## ARGUMENT

### A.  Julie Doe Has Not Pled A Viable Cause of Action Against the District.

It is unclear whether Julie Doe seeks recovery in her individual capacity given that she had pled no facts to support liability under any Count pled in the Complaint. *See* Compl. at case caption, ¶ 11, and generally. Title IX does not apply to Julie Doe, an adult who was not matriculating at any school at the time of the alleged misconduct committed against Jane Doe.

8

Moreover, Julie Doe has not alleged any facts to show that her constitutional rights were violated under 42 U.S.C. 1983, or that any common law tort was committed against her. *Id.* In fact, in each of the counts brought by Julie Doe, the only claimed injury and request for damages is for Plaintiff Jane Doe. *Id.* As such, to the extent any claim for relief is being sought for Julie Doe in her individual capacity, that claim should be summarily dismissed.

**B.      Plaintiffs Have Failed to Plead a Viable Title IX Claim Against the District.**

Plaintiffs seek to hold the District liable for its school officials' action or inaction under Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* They have also asserted a claim for the District's alleged failure to train its school officials train on Title IX regarding sexual harassment and assaults. Compl., generally. Title IX reads as follows: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The standard set out in *Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277—that a school district may be liable for damages under Title IX where it is deliberately indifferent to known acts of teacher-student sexual harassment—also applies in cases of student-on-student harassment.

Under Title IX, the sexually harassing conduct must be *severe and persistent* **and** must compromise or interfere with educational opportunities normally available to students. *See Brown v. Hot, Sexy & Safter Prod'us,* 68 F.3d 525, 540 (lst Cir. 1995)(explaining that such a violation occurs when the educational environment is "permeated with discriminatory intimidation, ridicule, and insult" of sufficient severity). *See Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 650-52 (1999), which involves sexual misconduct occurring at a public school. In *Davis,* LaShonda was the victim of repeated acts of harassment by G.F. over a 5–

month period which supported the conclusion that G.F.'s misconduct was severe, pervasive, and objectively offensive. Moreover, there were multiple victims of G. F.'s misconduct who sought an audience with the school principal and the alleged harassment had a concrete, negative effect on LaShonda's ability to receive an education. In reversing the Eleventh Circuit's affirmance of the trial court's dismissal of the complaint, the Supreme Court found that the complaint suggested that petitioner may be able to show both actual knowledge [of the prior alleged sexual misconduct] and deliberate indifference on the part of the Board, which made no effort to either investigate or put an end to the harassment. *Id.* at 631-632. The *Davis* Court reasoned that "[a] private Title IX damages action may lie against a school board in cases of student-on-student harassment, but only where the funding recipient is deliberately indifferent to sexual harassment, of which the recipient has actual knowledge, and that harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.*

Here, unlike in *Davis*, the alleged sexual assaultive misconduct occurred once, on June 13, 2017, when Jane Doe and M.P. were at school together. Compl. at ¶ 6. An email was sent to the school on June 14, 2017, the day after the incident to report it and school officials met with the Does that same day. *Id.* at ¶¶ 21, 22. According to Plaintiffs, during the meeting, Defendant James attempted to gather information from Jane Doe about the assault. including the identity of the perpetrator, where the incident occurred, and a statement from Jane Doe. *Id.* at ¶ 23. Plaintiffs also admit that Defendant James indicated that MPD would be coming to the school to interview Jane Doe. *Id.* Jane Doe was interviewed by the Guidance Counselor Maurice Butler and Officer Garcia on separate occasions, both took statements from her, and a criminal matter was opened for investigation. *Id.* at ¶ 25. The June 13, 2017 incident by itself is insufficient to

demonstrate "severe and persistent" conduct, a requirement under Title IX, or that the school officials knew about the misconduct in advance of its occurrence and failed to take appropriate action to stop M.P.'s alleged sexual assaultive behavior, or that M.P. continued that same conduct against Jane Doe because the school officials acted with deliberate indifference. *Id.* Moreover, Plaintiffs have not pled facts that show that the school officials' actions compromised or interfered with her educational opportunities normally available to students. Compl., generally. In fact, Plaintiffs admit that they were the ones to ask for a safety transfer to another high school and that request was granted. *Id.* at ¶¶ 28, 31.

Additionally, Plaintiffs simply have pled no facts showing that the District's alleged failure to train its school officials either created a hostile school environment for her or that she suffered injuries caused by the District's purported failures. *First,* Jane Doe never returned to the school where the criminal conduct allegedly occurred as she requested a safety transfer that was approved. *Id.* *Second,* it is clear from Plaintiffs' allegations that neither she nor the school had notice that M.P. would sexually assault her and therefore given the absence of foreseeability, Plaintiffs have pled no facts showing that the District's alleged failure to train its school officers about Title IX caused the June 13, 2017 incident or injuries stemming from that incident. Compl., generally. *Third,* as acknowledged by Plaintiffs, the crime was immediately investigated. Upon their notification to the school the day after the incident, Jane Doe and Julie Doe met with school officials the day the school was notified, Defendant James attempted to get statements from Jane Doe, the guidance counselor and Officer both met with Jane Doe separately, each took statements from her, a criminal investigation was opened, and the school provided some video footage to the police officers involved in the criminal investigation.

Compl., at ¶¶ 22, 23, 25, 26.  On this record, dismissal of Plaintiffs' Title IX action is appropriate.

**B.** **Plaintiffs Have Failed to Plead a Viable Municipal Liability Claim Against the District Under 42 U.S.C. § 1983.**

       **A.**     **The Fourteenth Amendment Does Not Apply to the District.**

Plaintiffs seek to hold the District liable under the Fourteenth Amendment for the alleged constitutional misconduct of Defendant James.  *See* Compl., generally.  The Due Process Clause of the Fourteenth Amendment reads, in pertinent part: "No State shall… deprive any person of life, liberty, or property without due process of law…." U.S. CONST. 14TH AMEND.  Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia or its employees. *See Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 125 (D.D.C. 2012) ("The Fourteenth Amendment …is not applicable to the actions of the District or its officials or employees");  *San Francisco Arts & Athletics, Inv. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n. 21 (1987) ("The Fourteenth Amendment applies to actions by a state");  *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia).  Therefore, because the Fourteenth Amendment is inapplicable to the District, this Court should dismiss Plaintiffs' § 1983 claim.

       **B.**     **Plaintiffs Have Not Sufficiently Pled Municipal Liability.**

Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or cause to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The case law is very clear that under § 1983, a municipality cannot be held liable under principles of *respondeat superior*.  *See Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997), *citing Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691 (1978).  Rather, municipal liability can only be found when its customs, practices or policies are the moving force for the constitutional violation.  "Municipal liability should not be imposed *when the municipality was not itself at fault*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985). *Id.* at 818 (emphasis added).  Moreover, a municipality can be held liable for a constitutional violation *only if* the plaintiff alleges *facts* that indicate his or her injury was caused by a municipal policy, practice or custom. *See Monell,* 436 U.S. at 694; *see also Tuttle*, 471 U.S. at 824, emphasis added. Municipal liability results only when the municipality itself can be directly charged with fault for an unconstitutional deprivation. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1985).  For any action brought under § 1983, courts must address the threshold question: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *See Baker v. McCollan*, 443 U.S. 137, 146-47 (1979). Therefore, municipal liability results only when the policy or custom fairly attributable to the municipality is the "moving force" behind the particular constitutional violation. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

Here, Plaintiffs' complaint is completely devoid of any facts that show that their constitutional rights have been violated or that a District custom, practice or policy *was the moving force* behind the violation of their constitutional rights or that a final policymaker was responsible for the constitutional violation through deliberate indifference.  Compl, generally. "[T]here must be an affirmative link between the policy and the particular constitutional

violation alleged." *Tuttle*, 471 U.S. at 824.  Other than make conclusory statements to support municipal liability, Plaintiffs have failed to plead facts that show an *affirmative link* between any District policy, practice or custom and the asserted constitutional violation or that a final policymaker acted with deliberate indifference.  Compl., generally.  Rather, Plaintiffs simply allege that the District's failure to train administrators, staff, students, and parents concerning sexual misconduct and identifying, reporting and stopping sexual harassment by students like M.P. against students like Jane Doe amounts to a violation under § 1983. These allegations fall short of the necessary facts to support municipal liability.  For these reasons, dismissal of Plaintiffs' municipal liability claim against the District is warranted.

### E.   Plaintiffs' Common Law Torts Are Barred By Their Failure To Fully Comply With D.C. Code § 12-309.

D.C. Code § 12-309 provides that "[a]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, *within six months* after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage."  D.C. Code § 12-309 (emphasis added). "Compliance with the statutory notice requirement is mandatory," and the Court of Appeals for the District of Columbia has "upheld the dismissal of many suits for failure to give timely or sufficient notice under § 12-309." *Tucci v. Dist. of Columbia*, 956 A.2d 684, 694 (D.C. 2008) (citations omitted).

Here, Plaintiffs provided a letter to the Office of Risk Management on December 13, 2018. *See* Peter Clark Decl., Exhibit A. In that letter, Plaintiffs identify the date of the incident as June 13, 2017, the location of the incident was provided, and provide the following description of the incident: "sexual assault, interference w/ police investigation, Title IX failure, due diligence, etc....." *Id.*  She also indicated that the police failed to properly investigate the

rape allegation.  *Id.*  Finally,  the letter does not specifically  state that Jane Doe was injured  as a result  of the incident.  *Id.*  To be sufficient,  notice  under D.C. Code § 12-309 must describe "the injuring  event with  sufficient  detail to reveal,  in itself,  a basis for the District's  potential liability."  *See Doe by Fein v. Dist. of Columbia*, 697 A.2d 23, 27 (D.C. 1997) (citations omitted).  Moreover,  because the purpose  of 12-309 is to allow  the District  to conduct  a prompt investigation  of the claim,  "it is reasonable  to require  specificity  with  respect to the cause and circumstances  of the injury."  *Id.*  Not only does Plaintiffs'  December 13, 2017 letter fail  to identify  an injury,  but it also fails  to provide  detailed  facts from  which  the District  could reasonably  anticipate  that a claim  against it arises for the sexual assault,  for defamation/slander, intentional  infliction  of emotional  distress,  negligent  infliction  of emotional  distress or negligent supervision  of students.  *Id.*  The letter is simply  devoid of circumstances  giving  rise to Plaintiffs'  potential  claims  against the District.  Therefore,  Plaintiffs  have failed  to comply  with the notice  requirements  of § 12-309 and judgment  should  be entered  in the District  on all common  law claims  asserted therein,  including  Count IV (Intentional  Infliction  of Emotional Distress),  Count V (Negligent  Infliction  of Emotional  Distress),  Count VI (Defamation/Slander) and Count VII (Negligent  Supervision).

      **F.**       <u>**Plaintiffs  Fail To State A Claim For Defamation,  Slander,  Intentional Infliction  Of Emotional  Distress,  Negligent Infliction  Of Emotional Distress and Negligent Supervision.**</u>

          1.      Plaintiffs  Fail to State a Claim  for Intentional  Infliction  of Emotional Distress  against the District.

In Count IV of Plaintiff's  Complaint,  Plaintiffs  assert that the District  is vicariously  liable for intentional  infliction  of emotional  distress (IIED) based on allegations  that its agents and employees  did not impartially  investigate  Jane Doe's sexual assault claim and made outrageous defamatory  and slanderous  statements  to District  employees  and agents.  *See* Compl. at ¶¶ 84-86.

15

However, Plaintiffs' allegations are insufficient to state a claim for intentional infliction of emotional distress against the District.

To state a claim for intentional infliction of emotional distress under District of Columbia law, a plaintiff must show, "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 163 (D.C. 2013). To overcome a motion to dismiss, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams v. Dist. of Columbia*, 9 A.3d 484, 494 (D.C. 2010). "This is a very demanding standard [that] is only infrequently met." *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 41 (D.D.C. 2018) (internal quotations and citations omitted). Moreover, a defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998). It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1041 (D.C. 2015).

*First,* Plaintiffs' allegations are insufficient to support any "intent" by Defendant James to cause her harm. As acknowledged by Plaintiffs, they both had left the room when the alleged offending comments were made. Compl. at ¶ 24. In fact, had they not recorded the statements, they would not have been privy to them. *Id.* at ¶ 27. *Second,* the facts as alleged do not rise to the level of "outrageous and extreme conduct," so as to entitle Plaintiffs to recovery against the District. Rather, the statements allegedly made by Defendant James fall into the category of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which are

not actionable for an IIED claim.  In *North v. Catholic University of America*, 310 F.Supp 3d 89 (D.D.C. 2018), the United States District Court for the District of Columbia found that the plaintiff's allegations that he was treated unfairly during the University's investigation and disciplinary hearing did not rise to level needed to sustain his IIED claim.  *Id.* The plaintiff in *North* alleged that the University's administrators were "openly hostile" towards him, demonstrated a "clear bias" against him, and acted with "actual malice" in deciding which witnesses could testify at the hearing. *Id.* at 95. The plaintiff also complained that the University's investigation process was flawed, which resulted in an unfavorable finding of liability and his suspension from the University. *Id.* Even though the District Court viewed all of these allegations in the light most favorable to the plaintiff, the Court held that the plaintiff had not alleged conduct sufficient to state a claim for IIED and dismissed those claims. *Id.* at 95-96.

Likewise, in *Cavalier v. Catholic University of America*, 306 F.Supp 3d 9 (D.D.C. 2018), the District Court held that the plaintiff failed to state a claim for IIED based on allegations that the University "engaged in extreme and outrageous conduct by…refusing to properly investigate her rape and refusing to meaningfully and appropriately discipline Doe." The Court determined that the plaintiffs' allegations that the University failed to conduct a timely, adequate, and fair investigation of her alleged sexual assault; reached an erroneous finding in the disciplinary hearing; and failed to enforce a no-contact order, were insufficient to allege conduct that defeated the defendant's motion to dismiss her IIED claim. *See Cavalier,* 306 F.Supp 3d at 41-42. In fact, the *Cavalier* Court stated that conduct of this nature "can hardly be said to prompt an average member of the community to exclaim, Outrageous!" *Id.* at 41 (citations and quotations omitted).

Plaintiffs' allegations for IIED are almost indistinguishable from the allegations put forth by the plaintiffs in *North* and *Cavalier*. And just like the plaintiffs in *North* and *Cavalier*, Plaintiffs have failed to allege conduct sufficient to stave off dismissal of that claim. Plaintiffs' allegations that Defendants "did not impartially investigate the claims of sexual assault and made defamatory and slanderous statements to other employees or agents of the District of Columbia with the intent of harming Jane Doe and/or her reputation," are conclusory at best and are simply insufficient for this Court to conclude that "an impartial jury could reasonably find the defendants' conduct, as described by the plaintiff, and with all reasonable inferences drawn in the plaintiff's favor, was sufficiently outrageous to satisfy this concededly demanding standard." *Id.* at 95. *See also* Compl. at ¶ 84. Because Plaintiffs have failed to properly support their claim for IIED with facts showing "outrageous" or "atrocious" conduct, Plaintiffs fail to state a claim upon which this Court can grant relief.

> 2.    Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress Against the District.

Plaintiffs allege the District is vicariously liable for negligent infliction of emotional distress (NIED) based on the conduct of its agents and employees in handling the allegations of Jane Doe's sexual assault. *See* Comp. at ¶ 90. Specifically, Plaintiffs allege the District failed to adequately, appropriately, and impartially investigate the claims of sexual assault; failed to interview the perpetrator; failed to discipline the perpetrator or supervise his activities on school premises; made defamatory comments about Jane Doe; and otherwise failed to act reasonably. *Id.* However, these allegations are insufficient to state a claim for NIED under the laws of the District of Columbia.

To state a claim for negligent infliction of emotional distress a plaintiff must show she was (1) in the 'zone of danger;' which was (2) created by the defendant's negligence; (3) making

18

the plaintiff fear for his or her own safety; resulting in (4) emotional distress that was serious and verifiable." *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 106 (D.D.C. 2018) (citations omitted); *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990). "To be in the zone of danger, a plaintiff must be 'physically endangered by the defendant's negligent activity.'" *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 106–07 (D.D.C. 2018) (quoting *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015)). "A defendant has a duty of care toward those individuals who are in danger of physical injury from the defendant's negligence." *Id.* (citations omitted). Clearly, there are no allegations that Jane Doe was physically endangered by the District's alleged negligent activity. *See generally*, Compl. Furthermore, there are no allegations that Jane Doe feared for her safety as a result of the District's conduct. *See id.*

Moreover, Plaintiffs have not shown any "negligence" or that the District's negligent infliction of emotional distress proximately caused her injury. *See, e.g., District of Columbia v. Cooper,* 483 A.2d 317, 321 (D.C.1984) (citing Prosser, Handbook of the Law of Torts § 30 (4th ed.1971) (hereinafter "Handbook of the Law of Torts")). Defendant James was not speaking to either Doe when she made her comments as they both left the room. She apparently had no idea that her comments were being taped. While it is unclear whether the conversation was recorded on Jane Doe or Julie Doe's cellphone, they determined to listen to the conversation. Moreover, there is no showing that anything said by Defendant James proximately caused Jane Doe emotional harm, particularly since she clearly experienced harm arising from the incident involving M.P. Nor have Plaintiffs pled facts showing that they were entitled to be kept informed of the progress of the investigation. Moreover, as Plaintiffs clearly acknowledge, Julie Doe's request to have Jane Doe transferred to another school was granted. Absent a showing

that the District's actions' proximately caused her to suffer "severe emotional distress," this claim should be dismissed.   that was conducted

3.   Plaintiffs Fail to State a Claim for Negligent Supervision.

Plaintiffs assert the District is vicariously liable for failing to provide adequate supervision of the students at Roosevelt High School, in particular, M.P. Compl. at ¶ 103. "Whether or not the school provided proper supervision depends largely upon the particular circumstances involved." *Ballard v. Polly*, 387 F.Supp. 895, 899 (D.D.C. 1975). "If no special dangerous condition exists, a school is of course not under a duty to supervise all movements of its students at all times." *Id.* "To do so would impose extreme administrative and financial burdens." *Id.* Yet, a school "owes a duty to its students to exercise reasonable and ordinary care for the protection of pupils to whom it provides an education." *Thomas v. City of Lights School, Inc.*, 124 F. Supp. 2d 707, 709 (D.D.C. 2000).

If the school has knowledge that special dangerous conditions exist, it must provide greater supervision to ensure the safety of the students. *Ballard,* 387 F.Supp. at 899. Here, Plaintiffs essentially aver that the District should have known there was a risk that Jane Doe would be subjected to sexual violence based on one alleged prior known act of sexual violence at Roosevelt High School in the same school year. Compl. at ¶ 102. However, one isolated event in a school year is not enough to create a "special dangerous condition" for which the District was required to provide greater supervision to ensure the safety of Jane Doe. The alleged incident occurred on the last day of school and evolved quickly. Compl., generally. Moreover, sovereign immunity bars this claim. Generally, "[w]here there is room for policy judgment and decision, there is discretion." *Nealon,* 669 A.2d at 690. Here, the District's decisions regarding the hiring and retention of its employees are discretionary, as well as the supervision of its

students. Such decisions clearly involve personal deliberation, decision, and judgment, which are precisely the types of actions "that the discretionary function exception was designed to shield." *See Aguehounde v. District of Columbia,* 666 A.2d 443, 448 (D.C. 1995) (quotations and citation omitted); *Burkhart v. WMATA,* 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("The extent of training with which to provide employees requires consideration of fiscal restraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees deviated from such norms in the past"). Here, sovereign immunity bars Plaintiff's negligent supervision claim.

### 4.    **Plaintiffs Fail to State a Claim for Defamation**

Plaintiffs assert that the District is vicariously liable for the alleged slanderous and defamatory comments made by Defendant James at the June 13, 2017 meeting. However, Plaintiffs' defamation claim fails because it does not meet the pleading requirements to state a cause of action. To state a claim for defamation under the laws of the District of Columbia, a plaintiff must allege: "(1) that the defendant made a false or defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." Payne v. Clark, 25 A.3d 918, 924 (D.C. 2011).

"A statement is defamatory is it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Clawson v. St. Louis Post-Dispatch, L.L.C.,* 906 A.2d 308, 313 (D.C. 2006). However, statements that are "loose, figurative, or hyperbolic…generally are not actionable in defamation." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 247 (D.D.C. 2016), aff'd, 875 F.3d 709 (D.C. Cir. 2017) (citations and

internal quotations omitted). "Whether a statement asserts actionable facts or implies such facts is a question of law for the court to determine as a threshold matter." *Id.* at 247-48 (citations omitted). To determine whether an alleged defamatory statement is actionable, a court must consider the context of the statement. *Id.* at 248. "[W]hile statements of fact may be the basis for a defamation claim, a statement of pure opinion cannot." *Armstrong v. Thompson*, 80 A.3d 177, 184 (D.C. 2013) (citations omitted). "[A] statement of opinion is actionable if—but only if—'it has an explicit or implicit factual foundation and is therefore objectively verifiable." Id. If the statement cannot be "construed as a statement of fact," it is not defamatory. See *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).

While the statements allegedly made by Defendant James on June 13, 2017, may have been mean spirited or otherwise inappropriate, they were her opinion. Moreover, the complaint is devoid of facts showing that Jane Doe's reputation at the school or within the community was ruined or harmed in any way by the words used by Defendant James. In fact, Plaintiffs themselves published the words allegedly used by Defendant James. Compl., at ¶ 24. *See also Clawson*, 906 A.2d at 313 ("However, an allegedly defamatory remark must be more than unpleasant or offensive…"). Because none of the statements allegedly made about Jane Doe at the June 13, 2017 meeting are actionable, Plaintiffs' defamation claim fails and should be dismissed.

## CONCLUSION

For the reasons herein, the District requests that the Court grant its motion.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Sec. 1

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
EMMA LOMAX[2]
441 Fourth St., N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
Fax: (202) 741-8941; (202) 715-7821
Kerslyn.featherstone@dc.gov;
emma.lomax@dc.gov

---

[2]     Admitted to practice only in the state of Texas. Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                       )
JANE DOE, by and through               )
her next friend, JULIE DOE,            )
                                       )
             Plaintiffs,               )
                                       )   C.A. No. 1:18-CV-2181 (ABJ)
             v.                        )
                                       )
District of Columbia, *et al*.,        )
                                       )
             Defendants.               )
_____)

**DEFENDANT DISTIRCT OF COLUMBIA'S STATEMENT OF**
**MATERIAL FACTS NOT IN DISPUTE**

Defendant District of Columbia, by and through counsel, hereby submit this statement of material facts not in dispute:

1.      Plaintiffs provided notice to the Mayor through the Office of Risk Management on December 13, 2017. *See* Peter Clark Declaration, with December 13, 2017 Letter, attached hereto as Exhibit A.

2.      The date of the incident was identified as June 13, 2017, and the location of the incident was provided. *Id.*

3.      Julie Doe described the incident as "sexual assault, interference w/ police investigation, Title IX failure, due diligence, etc….." *Id.*

4.      She also indicated that the police failed to properly investigate the rape allegation. *Id.*

5.      The letter does not specifically state that Jane Doe was injured as a result of the incident. *Id.*

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Sec. 1

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
EMMA LOMAX[3]
441 Fourth St., N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
Fax: (202) 741-8941; (202) 715-7821
Kerslyn.featherstone@dc.gov;
emma.lomax@dc.gov

---

[3]   Admitted to practice only in the state of Texas. Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | )<br>)<br>) |
| JANE DOE, by and through<br>her next friend, JULIE DOE, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 1:18-CV-2181 (ABJ)<br>) |
| District of Columbia, *et al.*, | )<br>) |
| Defendants. | )<br>) |
| _____ | ) |

## ORDER

Upon consideration of Defendant District of Columbia's Motion to Dismiss Plaintiffs'

Complaint, any opposition thereto, the District's Reply, and the entire record herein, it is by this

_____ day of _____ 2018,

**ORDERED:** that Defendant District of Columbia's Motion is **GRANTED** for the

reasons set forth therein; and it is,

**FURTHER ORDERED**: that all claims in the Complaint as to the Defendant District of

Columbia are hereby **DISMISSED WITH PREJUDICE**.

.**SO ORDERED.**


_____
JUDGE AMY BERMAN JACKSON
U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, by and through<br>her next friend, JULIE DOE,<br><br>            Plaintiffs,<br><br>      v.<br><br>District of Columbia, *et al*.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 1:18-CV-2181 (ABJ)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Upon consideration of Defendant District of Columbia's Motion for Summary Judgment, any opposition thereto, the District's Reply, and the entire record herein, it is by this _____ day of _____ 2018,

**ORDERED:** that Defendant District of Columbia's Motion is **GRANTED** for the reasons set forth therein; and it is,

**FURTHER ORDERED**: summary judgment is GRANTED on Count IV (Intentional Infliction of Emotional Distress), Count V (Negligent Infliction of Emotional Distress), Count VI (Defamation/Slander) and Count VII (Negligent Supervision).

**SO ORDERED.**

_____
JUDGE AMY BERMAN JACKSON
U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA