**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>　　　　*Defendants.* | Civil Action No. 18-2181 (ABJ) |

**DEFENDANT AQUEELHA JAMES'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Principal of Roosevelt High School Aqueelha James (Principal James) moves to dismiss plaintiffs' Complaint for failure to state a claim against her. Fed. R. Civ. P. 12(b)(6). As set forth in the accompanying memorandum of points and authorities, the Complaint is devoid of any actionable theory of liability against Principal James, in her individual or official capacity, under Title IX of the Education Amendments, 20 U.S.C. §§ 1681-1688, 42 U.S.C. § 1983, or District of Columbia common law. Even if plaintiffs state a claim against Principal James, any claim against her in her official capacity should be dismissed as redundant of plaintiffs' claims against defendant the District of Columbia. A proposed order is attached.

Dated:  November 6, 2018.　　　Respectfully submitted,

　　　　　　　　　　　　　　KARL A. RACINE
　　　　　　　　　　　　　　Attorney General for the District of Columbia

　　　　　　　　　　　　　　TONI MICHELLE JACKSON
　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　Public Interest Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Acting Chief, Equity Section

/s/ Michael A. Tilghman II
MICHAEL A. TILGHMAN II [ 988441]
JOSHUA W. DANSBY*
Assistant Attorneys General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202) 727-6247
(202) 741-8776 (fax)
michael.tilghman@dc.gov

*Counsel for Defendant Aqueelha James*

---

\* Admitted to practice only in Washington State. Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR 83.2(f).

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *et al.*,<br><br>      *Plaintiffs*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 18-2181 (ABJ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AQUEELHA JAMES'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## INTRODUCTION

Plaintiff Jane Doe and her mother Julie Doe bring this lawsuit against Principal of Roosevelt High School Aqueelha James (Principal James), in her individual and official capacity, and the District of Columbia (the District), seeking relief for actions allegedly taken by Principal James in response to Jane Doe's report that she was sexually assaulted by a fellow student at Roosevelt High School (the School). The allegations in the Complaint, however, are insufficient to state a plausible cause of action against Principal James. As explained below, plaintiff Julie Doe fails to allege that Principal James engaged in any conduct that caused her harm. Furthermore, to the extent plaintiffs assert claims against Principal James under Title IX of the Education Amendments (Title IX), 20 U.S.C. § 1681, *et seq.*, those claims should be dismissed because Principal James is not a proper party under Title IX. Likewise, plaintiffs cannot pursue a claim against Principal James under 42

U.S.C. § 1983 because they have not plausibly alleged a predicate violation of Title IX or any federal constitutional provision.

Plaintiffs' common law tort claims fare no better. Plaintiffs have failed to support their intentional infliction of emotional distress (IIED) claim with plausible allegations that Principal James's conduct amounts to extreme and outrageous conduct that caused Jane Doe harm. Nor have plaintiffs made the requisite showing that Principal James's conduct placed Jane Doe in a "zone of physical danger" or that Jane Doe had the requisite "special relationship" with Principal James, one of which is required to support a claim of negligent infliction of emotional distress (NIED). Plaintiffs' defamation claim, viewed in appropriate context, is unsupported by a verifiable false statement. And plaintiffs' negligent supervision claim fails because plaintiffs do not plausibly allege that Principal James had a duty to protect Jane Doe or that she breached any such duty. Even assuming plaintiffs state a claim, their IIED and defamation claims are barred by the applicable statute of limitations. Finally, any claims asserted against Principal James solely in her official capacity should be dismissed as redundant of plaintiffs' claims against the District.

## BACKGROUND

On September 19, 2018, plaintiffs brought this suit against the District and Principal James asserting claims for violation of Title IX (Counts I and II), under 42 U.S.C. § 1983 (Count III), for IIED (Count IV), NIED (Count V), defamation (Count VI), and negligent supervision (Count VII). Plaintiffs allege the following facts in support of their claims.

2

On June 13, 2017, the last day of the academic year, Jane Doe "was sexually battered and violated by fellow student M.P.," while at the School. Compl. ¶¶ 1, 16. According to the Complaint, the alleged assault occurred in a boy's restroom on the second floor of the School, where M.P. allegedly dragged Jane Doe, after she left a third-floor classroom and chased M.P., attempting to recover a phone charger that M.P. borrowed earlier. *Id.* ¶¶ 2, 16-17. Julie Doe reported the incident to the Metropolitan Police Department (MPD) and was instructed to report the incident to officials at the School to pursue criminal charges. *Id.* ¶ 19.

On June 14, 2017, Julie Doe scheduled and attended a meeting with Jane Doe, Principal James, Dean of Students Reginald Stevens (who participated by telephone), Assistant Principal Michael Moss, and Guidance Counselor Maurice Butler. *Id.* ¶ 22. As plaintiffs recount, Principal James, "asked for the identity of the perpetrator, where the incident occurred, and attempted to otherwise obtain a statement from Jane Doe." *Id.* ¶ 23. Jane Doe apparently became upset and exited the room; Julie Doe followed her. *Id.* ¶ 24. Plaintiffs allege that while they were in the hallway, Principal James ridiculed Jane Doe and made statements about her that were defamatory. *Id.* ¶¶ 24, 94. Specifically, plaintiffs allege that Principal James stated the following:  (1) "This whole thing is going to blow up in her face"; (2) "that is why I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her…"; (3) "you should see the dress she has got on"; and (4) "[s]ince I walked into this building, I immediately responded to what I knew was

3

bullshit." *Id.* ¶ 94. Unbeknownst to Principal James, Julie Doe secretly recorded Principal James's statements, which plaintiffs subsequently "listened to … and discovered." *Id.* at 2 n. 2, ¶ 27.

Plaintiffs also allege that, at some point, Jane Doe provided a report of the alleged assault to Mr. Butler and was interviewed by MPD Officer Garcia, who referred a preliminary report to the MPD Youth Division, triggering a criminal investigation into the allegation. *Id.* at ¶ 25. Jane Doe subsequently sought a transfer from the School, which was approved before the next school year, on August 14, 2017. *Id.* ¶¶ 28-31.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

# ARGUMENT

## I.   Plaintiff Julie Doe Fails to State a Cause of Action Against Principal James Because She Has Not Alleged that Principal James Caused Her Harm.

The Complaint identifies both Jane Doe and Julie Doe as plaintiffs, Compl. ¶¶ 10-11, but fails to assert facts establishing that Julie Doe is personally entitled to relief on any claim for the reasons stated in the District's Motion to Dismiss [15 at 8-9], which arguments Principal James incorporates by reference. As such, to the extent plaintiffs assert a claim for relief against Principal James on behalf of Julie Doe in her individual capacity, that claim should be summarily dismissed.

## II.   The Court Should Dismiss Plaintiffs' Title IX Claims Against Principal James Because Title IX Does Not Provide a Cause of Action Against School Officials.

In Counts I and II, plaintiffs allege that Jane Doe's rights were violated under Title IX. Compl. ¶¶ 49-65. It is unclear whether plaintiffs assert those claims against Principal James. To the extent they do, those claims must be dismissed because Title IX does not authorize suit against school officials, such as Principal James. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ( "[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"); *Bull v. Bd. of Trs. of Ball State Univ.*, Civil Action No. 10-cv-00878-JMS-TAB, 2011 U.S. Dist. LEXIS 147774, at *9 (S.D. Ind. Dec. 22, 2011) (citing *Fitzgerald*, 555 U.S. at 257) (noting that "only the actual recipient of federal funds can be held liable under Title IX, not individual employees of the institutions" and dismissing Title IX claims against the individual defendants).

III.    **The Court Should Dismiss Plaintiffs' 42 U.S.C. § 1983 Claim Against Principal James Because Plaintiffs Have Not Alleged a Plausible, Predicate Constitutional or Federal Statutory Violation.**

In Count III, plaintiffs bring a claim under 42 U.S.C. § 1983, alleging that Jane Doe's rights under the Equal Protection Clause of the Fourteenth Amendment and Title IX were violated. Compl. ¶¶ 66-81. "To state a claim under § 1983 against an official in [her] individual capacity, a plaintiff must plead facts sufficient to allege (1) 'the violation of a right secured by the Constitution and the laws of the United States,' and (2) 'that the alleged deprivation was committed by a person acting under the color of state law.'" *Ford v. Donovan*, 891 F. Supp. 2d 60, 65 (D.D.C. 2012) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Plaintiffs have failed to allege a predicate statutory violation under Title IX for the reasons stated in Section II above.

Plaintiffs also fail to allege a predicate violation of the Equal Protection Clause of the Fourteenth Amendment for two reasons. First, "[t]he Fourteenth Amendment … is not applicable to the actions of the District or its officials or employees." *Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 125 (D.D.C. 2012). Second, to assert an equal protection claim predicated upon sex discrimination, a plaintiff must first make a threshold showing that he or she was intentionally treated differently from members of the opposite sex who were similarly situated. *See Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (internal citations omitted); *see also BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 34 (D.D.C. 2015) (quoting *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94 (D.D.C. 2014)). Plaintiffs do not meet this threshold requirement because they fail to allege

*any* fact that would indicate Principal James treated Jane Doe differently because of her sex. *See Rodriguez v. District of Columbia,* 118 F. Supp. 3d 132, 138 (D.D.C. 2015) (Berman Jackson, J.) (quoting *Iqbal,* 556 U.S. at 676) ("To state a claim for intentional discrimination under the Equal Protection Clause, a plaintiff 'must plead and prove that the defendant acted with discriminatory purpose.'"). To the contrary, plaintiffs admit that Principal James and other school officials convened a meeting to hear Jane Doe's allegations the very day Jane Doe reported the alleged sexual assault; plaintiffs also acknowledge that her allegations were later reported to the police for investigation. *See* Compl. ¶¶ 21-25. In light of these allegations, plaintiffs' contention that she was subjected to discriminatory animus based on her sex is a "'naked assertion[ ] devoid of 'further factual enhancement,'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), that cannot give rise to an equal protection claim.[1]

## IV.  The Court Should Dismiss Plaintiffs' IIED Claim Against Principal James Because Plaintiffs Have Failed to Plausibly Allege That Principal James's Statements and Alleged Inaction Were Extreme and Outrageous or That They Caused Jane Doe's Alleged Harm.

In Count IV, plaintiffs allege that Principal James's statements about Jane Doe and alleged failure to investigate Jane Doe's allegation of sexual assault constituted IIED. Compl. ¶¶ 82-92.  A claim for IIED requires a plaintiff to allege: "'(1) extreme and outrageous conduct on the part of the defendant, which (2)

---

[1] Further, plaintiffs may not hold Principal James liable under § 1983 based solely on her status as a supervisor under a respondeat superior theory of liability for M.P.'s or other school personnel's actions. *Iqbal*, 556 U.S. at 676.

intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (emphasis added). To be "extreme and outrageous," conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Langer v. George Washington Univ.*, 498 F. Supp. 2d 196, 200 (D.D.C. 2007) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)). Plaintiffs' allegations do not plausibly establish that Principal James engaged in "extreme and outrageous" conduct that caused Jane Doe emotional distress, especially based on the context in which the conduct took place. *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 163 (D.C. 2013) (quoting *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 641 (D.C. 1995)) ("'in determining whether the conduct complained of is extreme and outrageous, the court must consider the specific context in which the conduct took place.'")

Indeed, central to plaintiffs' IIED claim are allegations that Principal James's statements to other school officials in a conference room caused Jane Doe emotional distress. Compl. ¶ 84. Jane Doe, however, was outside the room when Principal James made those statements, *id.* ¶ 24, and Jane Doe admits that she only heard them when Julie Doe played back her secret recording of Principal James. *Id.* ¶ 27. According to plaintiffs, it was after hearing the recording that Jane Doe "became depressed, withdrawn, and reluctant to speak further about the incident ...." *Id.* Principal James's statements were not "extreme" and "outrageous" because they were, at worst,

"'mere insults, indignities, … or other trivialities[,]'" that are not actionable as a matter of law. *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (citation omitted). Moreover, plaintiffs have not plausibly alleged that Principal James "intentionally" or "recklessly" caused Jane Doe harm because, on plaintiffs' own account, Principal James waited until she believed plaintiffs were out of earshot to make them. *Steele v. Isikoff,* 130 F. Supp. 2d 23, 34 (D.D.C. 2000) (quoting *Sanders v. Wright*, 642 A.2d 847, 849 (D.C. 1994)) ("'A defendant's conduct is the proximate cause of a plaintiff's injury only if 'the injury is the natural and probable consequence of the negligence or wrongful act and ought to [have been] foreseen in light of the circumstances.'").

Plaintiffs' allegation that Principal James, through her agents and employees, "did not impartially investigate the claims of sexual assault," Compl. ¶ 84, is similarly insufficient to give rise to an IIED claim. Plaintiffs acknowledge that Principal James asked Jane Doe "the identity of the perpetrator, where the incident occurred, and attempted to … obtain a statement from Jane Doe." *Id.* ¶ 23. Principal James also stated that she would make MPD aware of the incident. *Id.* ¶ 24. And plaintiffs acknowledge that Jane Doe reported the incident to MPD, which opened an investigation. Compl. ¶¶ 19, 25. It is not "extreme" or "outrageous" to improperly investigate or to rely on the expertise of a law enforcement agency to investigate. *See Cavalier v. Catholic Univ. of Am.*, 306 F. Supp 3d 9, 41-42 (D.D.C. 2018) (rejecting allegation that an improper investigation is sufficient to establish extreme and outrageous conduct); *Ayala v. Houston Indep. Sch. Dist.*, 305 F. Supp. 3d 726, 732

(S.D. Tex. 2018) (rejecting, in the Title IX context  plaintiffs' argument that the steps the high school and district took in investigating were "clearly unreasonable" and stating that, "[i]n a situation where … there is the potential for criminal charges if it was an assault, it is not 'clearly unreasonable' to rely on the investigative expertise of a law enforcement agency."). Plaintiffs' "labels and conclusions" to the contrary and "formulaic recitation" of the elements of an IIED claim, *see Bell Atl. Corp.,* 550 U.S. at 555, are insufficient to survive dismissal.

V.    <u>The Court Should Dismiss Plaintiffs' NIED Claim Against Principal James Because Plaintiffs Have Failed to Plausibly Allege that Principal James Placed Jane Doe in the Zone of Physical Danger or Undertook an Obligation That Implicated Jane Doe's Emotional Well-Being.</u>

Plaintiffs' NIED claim (Count V) likewise fails. In Count V, plaintiffs allege that Principal James's failure to impartially investigate her claim of sexual assault, discipline M.P. after the alleged assault or supervise his activities at the School, and statements made to other school officials about Jane Doe gives rise to a NIED claim. Compl. ¶¶ 90-92.

"To make out a claim for [NIED], a plaintiff must show that '(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for [her] own safety, and (4) the emotional distress so caused was serious and verifiable.'" *Harris v. United States Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *Rice v. District of Columbia*, 774 F. Supp.2d 25, 33 (D.D.C. 2011)). If not in the "zone of physical danger," a plaintiff seeking to establish a NIED claim must establish:

> "(1) The defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff."

*Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 177 (D.D.C. 2017) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011)).

Plaintiffs fail to satisfy either standard. First, plaintiffs have not plausibly alleged that Jane Doe was placed in a zone of physical danger created by Principal James's alleged negligence that was *contemporaneous* with Jane Doe's fear for her own safety. *Harris*, 776 F.3d at 915. In fact, plaintiffs do not allege that Principal James acted in any manner that placed Jane Doe in physical danger. *Dyson v. Winfield*, 129 F. Supp. 2d 22, 24 (D.D.C. 2001) (holding that, unless a plaintiff was "physically endangered as a result of the [defendant's] negligence," damages for emotional distress are not recoverable). Instead, plaintiffs' allegations focus on alleged inaction by Principal James after the sexual assault by M.P., which allegedly occurred on the last day of school. Compl. ¶¶ 16, 90. Accepting plaintiffs' version of the facts, any alleged inaction by Principal James could not have placed Jane Doe in any zone of physical danger because school was out of session by the time Principal James learned of Jane Doe's allegations and Jane Doe transferred schools prior to the start of the new school year. *Id.* ¶¶ 16, 31.

11

Second, plaintiffs have not alleged a relationship with Principal James that implicates Jane Doe's "emotional well-being." "The D.C. Court of Appeals has emphasized that 'not all relationships will give rise to a duty to avoid negligent infliction of emotional distress, as the law recognizes and imposes a duty of care on many different types of relationships, not all of which necessarily implicate the emotional well-being of the parties.'" *Teasdell v. District of Columbia*, Civil Action No. 15-0445, 2016 U.S. Dist. LEXIS 195168, at *43-44 (D.D.C. Sept. 16, 2016) (Berman Jackson, J.) (quoting *Hedgepeth*, 22 A.3d at 812 n. 39). For example, in *Sibley v. St. Albans School*, 134 A.3d 789 (D.C. 2016), the D.C. Court of Appeals opined that "[t]he relationship between a student and his school or the musical director of his choir program is not enough, without more, to impose the predicate duty of care for a claim of negligent infliction of emotional distress." *Id.* at 798. Similarly, here, plaintiffs' failure to plausibly allege that Principal James undertook an obligation that necessarily implicated Jane Doe's emotional well-being foreclosures plaintiffs' NIED claim.

VI.   **The Court Should Dismiss Plaintiffs' Defamation Claim Against Principal James Because Principal James's Alleged Statements Could Not Be Reasonably Understood to Assert a Verifiably False Fact About Jane Doe.**

In Count VI, plaintiffs allege that Principal James's statements on July 14, 2017, were slanderous and caused Jane Doe harm. In support, plaintiffs rely on four statements allegedly made by Principal James after Jane Doe made her report of sexual assault to school officials:  (1) "This whole thing is going to blow up in her face"; (2) "that is why I am going to go the extra mile and call MPD because I am sick of

12

her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her…"; (3) "you should see the dress she has got on"; and (4) "[s]ince I walked into this building, I immediately responded to what I knew was bullshit." Compl. ¶ 94.

Slander is the spoken form of defamation. *Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*, Civil Action No. 18-1715, 2018 U.S. Dist. LEXIS 176318, at *7 (D.D.C. Oct. 15, 2018); Restatement (Second) of Torts § 568 (1977). To state a claim for defamation under District of Columbia law, a plaintiff must allege: "(1) that [s]he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Zimmerman v. Al Jazeera Am.*, LLC, 246 F. Supp. 3d 257, 272 (D.D.C. 2017) (quoting *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013)). Whether statements are capable of defamatory meaning or are false are questions of law. *Smith v. Clint*, 253 F. Supp. 3d 222, 239 (D.D.C. 2017). And when analyzing statements, "'[c]ontext is critical because 'it is in part the settings of the speech in question that makes their … nature apparent, and which helps determine the way in which the intended audience will receive them.'" *Farah*, 736 F.3d at 535 (internal citations omitted).

Plaintiffs allege that Principal James's statements were made to school officials who remained in the room after plaintiffs exited; these officials, according to plaintiffs, also were present when Jane Doe reported the sexual assault and when Principal James attempted to discern what happened. Compl. ¶¶ 22-24. In this

context, a reasonable person could not view Principal James's statements as assertions of verifiable fact. Rather, "it is plain that [Principal James was] expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, [rendering Principal James's] statement[s] … not actionable." *See Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). In short, Principal James's statements, even if inappropriate, were simply too vague and subjective to constitute actionable slander, considering the context in which they were made and to whom they were made. *See Church of Scientology v. Foley*, Case No. 77-2134, 1980 U.S. App. LEXIS 20369, at *9 n.19 (D.C. Cir. Feb. 20, 1980) (stating that a plaintiff must show that "the third party understood the defamatory nature of the communication and its reference to the plaintiffs" to state a defamation claim); *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006) ("the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it is addressed").

Finally, plaintiffs' contention that, "upon information and belief, [Principal] James … made similar statements to Metropolitan Police officers who were assigned to investigate the sexual assault perpetuated by M.P. upon Jane Doe," Compl. ¶ 95, is also insufficient. As a practical matter, a party can plead an allegation upon "information and belief," but such allegations must still satisfy the Court's general pleading requirements. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994) (observing that "standards for pleadings on information and belief

must be construed consistent with the purposes of [pleading rules], which attempts in part to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs"). Plaintiffs' assertion, "upon information and belief," that Principal James made "similar statements" to MPD is completely devoid of further support in the Complaint, meaning it should not be credited on a Rule 12(b)(6) analysis. *See Ashcroft*, 556 U.S. at 678 (rejecting "naked assertions devoid of further factual enhancement"). Even accepting plaintiffs' contention as well-pleaded fact, it cannot give rise to a claim for slander because plaintiffs do not allege the defamatory nature of Principal James's alleged statements to MPD or how any such statements, if they occurred, were verifiably false. *See Church of Scientology*, 1980 U.S. App. LEXIS 20369, at *9 n.19.

### VII. The Court Should Dismiss Plaintiffs' Claim for Negligent Supervision Against Principal James Because They Do Not Plausibly Allege that Principal James Knew or Should Have Known that M.P. Posed a Risk to Jane Doe.

In Count VII, plaintiffs allege that Principal James had a duty to protect Jane Doe from sexual assault and harassment while on school premises and that a failure to do so amounted to negligent supervision. Compl. ¶ 100. Plaintiffs claim that Jane Doe was harmed as a result of Principal James's alleged failure to provide adequate supervision over M.P. *Id.* ¶103.

"It is axiomatic in torts that one can only be held liable for negligence if there was a duty, breach of that duty, and injury proximately caused by the breach." *Bd. of Trs. v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009). "Under District of Columbia law, whether a duty is owed is a question of law to be determined by the court." *Hoehn v.*

*United States*, 217 F. Supp. 2d 39, 45 (D.D.C. 2002) (citing *Settles v. Redstone Dev. Corp.*, 797 A.2d 692, 695 (D.C. 2002); *In re Sealed Case*, 67 F.3d 965, 968 (D.C. Cir. 1995)).

Plaintiffs predicate their negligent supervision claim on injury stemming from the alleged intervening criminal act of a third party, M.P. *See* Compl. ¶¶ 100-101, 103. However, school personnel are not insurers "of the complete safety of school children nor [are they] strictly liable for any injuries which may occur to them." *District of Columbia v. Royal*, 465 A.2d 365, 369 (D.C. 1983). "In order for a defendant to be liable to a plaintiff for injury caused by an intervening criminal act, the plaintiff is 'obligated to present evidence establishing that the [crime] was so foreseeable that it became [the defendant's] duty to guard against it[.]" *Bd. of Trs.*, 974 A.2d at 872 (quoting *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C. 1993)) (alterations in original). "It is not sufficient to establish a general possibility that the crime would occur, because, as [the D.C. Court of Appeals has] said before, the mere possibility of crime is easily envisioned and heightened foreseeability requires more precision." *Id.* at 872-73.

Plaintiffs cite the "prevalence of sexual assault in schools and at least one prior known act of sexual violence towards a student by other students at [the School] in the same school year" as evidence that Principal James knew or should have known of the risk of sexual violence that M.P. posed to other students. Compl. ¶ 102. However, plaintiffs' allegation regarding the "prevalence of sexual assault" in public schools is too vague and conclusory to establish any well-pleaded fact. *See Stevens v.*

16

*Sodexo*, 846 F.Supp.2d 119,128 (D.D.C. 2012). And a single incident at the School unrelated to M.P. or Jane Doe, even if proven, is insufficient to place Principal James on notice of a potential, future criminal act by M.P. Without more, Principal James could not have conceivably owed any special duty to protect Jane Doe against the harm she allegedly suffered. *See Lacy v. District of Columbia*, 424 A.2d 317, 323 (D.C. 1980) (holding the school had no duty to protect the student from a sexual assault by the school janitor unless the conduct was foreseeable).

## VIII.  The Court Should Dismiss Plaintiffs' Defamation and IIED Claims Against Principal James As Barred By the Applicable Statute of Limitations.

Even if plaintiffs plausibly allege a cause of action, their claims for defamation and IIED should be dismissed as time-barred. A defamation claim must be filed within one year of the date of publication of the alleged defamatory statement. D.C. Code § 12-301(4); *Foretich v. Glamour,* 741 F. Supp. 247, 252 (D.D.C.1990) ("Defamation occurs on publication, and the statute of limitations runs from the date of publication."). Although an IIED claim would ordinarily fall under the three-year residual provision of D.C. Code § 13-301(8), if the claim arises out of the same facts that give rise to a plaintiff's defamation claim, it is covered by the one-year statute of limitation under D.C. Code § 13-301(4). *Chandler v. Jones*, 802 F. Supp. 2d 13, 16-17 (D.D.C. 2011) (Berman Jackson, J). Accordingly, because plaintiffs' IIED claim is based on Principal James's alleged defamatory statements, Compl. ¶ 84, their defamation claim is subject to a one-year statute of limitation.

By plaintiffs' own admission, Principal James's comments were made on June 14, 2017, and Jane Doe listened to the secret recording Julie Doe made of those

statements the same day. Compl. ¶¶ 24-27. Plaintiffs, however, did not file their Complaint until September 19, 2018, more than one year after the alleged publication of the allegedly defamatory statements. As plaintiffs have failed to otherwise specify an actionable timeframe for the alleged defamation, their defamation and IIED claims should be dismissed as barred by the statute of limitations. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.,* 357 F. Supp. 2d 287, 292 (D.D.C. 2005), *aff'd* 249 Fed. Appx. 832 (D.C. Cir. Oct. 3, 2007) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint").

### IX.   The Court Should Dismiss Plaintiffs' Official Capacity Claims Against Principal James as Redundant of Plaintiffs' Claims Against the District.

Even if plaintiffs have stated some claim against Principal James that is not time-barred, any such claim should still be dismissed, to the extent it is brought against Principal James in her official capacity, as redundant of plaintiffs' claims against the District. Indeed, it is axiomatic that "[a] suit against a District of Columbia official in [his or her] official capacity is 'equivalent to a suit against the municipality itself,'" and as such, courts routinely dismiss official capacity claims as redundant. *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 29 (D.D.C. 2013) (internal citations omitted); *Univ. Legal Servs., Inc. v. St. Elizabeths Hosp.*, Civil Action No.  05-cv-00585(TFH), 2005 U.S. Dist. LEXIS 36132, at *22 (D.D.C. July 22, 2005) (When a plaintiff has already sued the District, including individual officials in their official capacity "is redundant and unnecessary"; *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (recognizing that official capacity suits "generally

18

represent only another way of pleading an action against an entity of which an officer

is an agent") (internal citations omitted). Here, any claim against Principal James in

her official capacity is redundant and should be dismissed accordingly.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss all

claims against Principal James, with prejudice.

Dated:  November 6, 2018.            Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Acting Chief, Equity Section

/s/ Michael A. Tilghman II
MICHAEL A. TILGHMAN II [ 988441]
JOSHUA W. DANSBY*
Assistant Attorneys General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202)727-6247
(202) 741-8776 (fax)
michael.tilghman@dc.gov

*Counsel for Defendant Aqueelha James*

---

* Admitted to practice only in Washington State. Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR 83.2(f).