UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JANE DOE, by and through<br>her next friend, JULIE DOE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>District of Columbia, *et al*.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 1:18-CV-2181 (ABJ)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFFS' OPPOSITION
TO THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Defendant District of Columbia ("the District"), by and through counsel, hereby submits this reply brief in response to Plaintiffs' opposition to the District's motion to dismiss.[1]

I.  **Plaintiff Jane Doe's Title IX Claim Fails As A Matter Of Law**.

Contrary to Plaintiff Jane Doe's arguments, she has failed to sufficiently plead liability against the District under Title IX.  Importantly, rather than plead facts to support her claim, Plaintiff Jane Doe makes conclusory allegations based on "information and belief" without any actual facts, which is insufficient to support liability against the District.  *See* Compl. [1].  As demonstrated by the language she uses, Plaintiff Jane Doe's allegations as based on "information and belief" is simply guesswork, innuendos and supposition.  Without more, these allegations fail to meet the *Iqbal* pleading requirement and dismissal is appropriate.  *See Ashcroft v. Iqbal,*

---

[1]  The originally scheduled deadline for the reply brief was December 5, 2018.  Given the federal government closure on December 5, 2018, for the funeral of the late President George H.W. Bush, the deadline for this filing is December 6, 2018.  *See* Fed. R. Civ. P. 6(a)(3) and 6(a)(6).

1

556 U.S. 662 (2009) ("To survive motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged").

Even if the Court could accept Plaintiff Jane Doe's suppositions, they still remain insufficient to support the District's municipal liability under Title IX.  *First,* while Plaintiff Jane Doe drops a footnote in her opposition filing stating that the District failed to make an argument regarding her retaliation claim filed under Title IX, this argument should be rejected by this Court.  Indeed, the District identified each claim pled in the Complaint by Plaintiff Jane Doe, including her retaliation claim under Title IX, and argued the facts pled in the Complaint demonstrate the District took actions as it was required to when the sexual assault was reported by Plaintiffs.  *See* District's Mot. To Dismiss at 5, 11 [15].  While, for purposes of this motion only, it is undisputed that Defendant James reportedly stated an intent to embarrass Plaintiff Jane Doe, the Complaint is devoid of facts which show that she took specific action in furtherance of her stated intent.  In fact, not only is the Complaint void of facts showing retaliatory conduct, Plaintiffs have pled no injury caused to Plaintiff Jane Doe resulting from Defendant James' conduct.  Nor have they shown that the District can be held strictly liable under Title IX for the alleged misconduct committed by Defendant James.  Given that Plaintiff failed to plead any facts showing that Defendant James sent an email to the police or other school administrators filled with language that was meant to embarrass Plaintiff Jane Doe or took any other action in retaliation because she reported the sexual assault, Plaintiff Jane Doe's claims under Title IX fails.

*Second,* Plaintiff Jane Doe's argument that she has satisfied the requirements under Title

IX to proceed against the District is not supported by the facts as pled, the cases relied on by the District or the cases upon which she relies.  In *Davis* Court recognized that in the plaintiff's Complaint, she alleged that the minor child "was the victim of *repeated acts of harassment* by [a fellow student] over a 5-month period, and allegations support the conclusion that his misconduct was severe, pervasive, and objectively offensive. Moreover, the Complaint alleges that multiple victims of [the fellow student's] misconduct sought an audience with the school principal and that the harassment had a concrete, negative effect on [the minor child's] ability to receive an education.  The complaint also suggests that petitioner may be able to show both actual knowledge and deliberate indifference on the part of the Board, which made no effort either to investigate or to put an end to the harassment."  *See Davis v. MonDoe Cnty. Bd. F Educ.,* 526 U.S. 629, 650 (1999), emphasis added.  Here, unlike in Davis, the incident giving rise to this lawsuit occurred *once,* on the last day of school, not over an extended period of time. Plaintiffs' Complaint contains no allegations that there were persistent sexual advances made against Plaintiff Jane Doe or that an intimidating, hostile, offensive, and abusive school environment existed at the school after the incident occurred.  The *Davis* Court determined that the incidents occurring against the minor child constituted harassment "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  While Plaintiffs argue that a single incident is sufficient to support their Title IX claim, the *Davis* Court made clear that while "[a] single instance of *severe* one-on-one peer harassment *could, in theory*, be said to have such a systemic effect, [] it is unlikely that Congress would have thought so." *Id.* at 631. The *Davis* Court explained that "[t]he fact that it was a teacher who engaged in harassment in *Franklin* and *Gebser* is relevant. Peer harassment is less likely to satisfy the requirements that the misconduct

breach Title IX's guarantee of equal access to educational benefits and have a systemic effect on a program or activity." *Id., citing Franklin* v. *Gwinnett County Public Schools,* 503 U.S. 60 (1992); *Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274 (1998). Here, as can be understood by *Davis*, this single peer on peer incident is unlikely that Congress would have thought that it had a system effect on the overall education environment to support a Title IX claim in this case.

Plaintiff Jane Doe mistakenly relies on the holding in *Wells v. Hense,* 235 F. Supp. 3d 1,7-8 (D.D.C. 2017), a non-binding District Court decision, to stave off dismissal of this action. In *Wells,* two female students were assaulted by two male peers during an unsupervised class while attending a public charter school.  The two female victims reported the incidents to the school and the parents were immediately called.  According to the Complaint allegations, one of the males involved in the incident had previously been involved in a fight.  While the school officials reportedly wanted to suspend or take other actions against the student, they did not do so and the students were allowed to remain at the school.  As a result, the two female students feared attending their classes and the incident was the subject of gossip throughout the school, causing them to be ostracized, bullied and called names.  These incidents were also reported but nothing was done to stop the peer harassment.  As a result, the female students stopped attending classes, and completed the remainder of the school year at home, only attending school to take their examinations.  That next school year, the continued presence of the two male students who had assaulted them caused them further emotional distress.  The two female students' grades dropped, one of them experienced nightmares, and both had to undergo continued mental health counseling.  *Id.* at 5-6.  Those plaintiffs filed Title IX complaints alleging the school was deliberately indifferent to the hostile environment created by the assaults committed against

them. *Id.* at 6.  The *Wells* Court held that "in a context of student on student sexual assault, deliberate indifference exists only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 7.  According to the *Wells* Court, "[t]o support their argument, defendants describe the material allegations in the complaint as establishing that, in response to the incident, school officials 'considered suspending the offenders and having them arrested,' "communicated remedial actions with both mothers," "conducted an investigation and involved the Metropolitan Police Department," "accommodated [the victims] and allowed [them] to complete their remaining class assignments for the year at home, which prevented further contact between [p]laintiffs and the offenders." The Court reasoned that some of the allegations asserted by Plaintiffs in the Complaint as failures by the defendant were not addressed or were disregarded and the facts must be viewed in the light most favorable to the plaintiffs.

       The facts as pled in this case pale in comparison to the facts as pled in *Wells*.  Here, the incident at issue happened one time on the last day of school; not in the class but outside the class, after the perpetrator left the classroom and Plaintiff Jane Doe followed him.  Compl. at ¶¶ 16-17 [3].  Unlike in *Wells* where the educational environment became hostile given the number of incidents directed at the two female students for a long period of time, and the fact that the two male students were allowed to remain at the same school which caused the plaintiffs fear and apprehension, there was no hostile educational environment created in this case.  As Plaintiffs acknowledge, the incident giving rise to this lawsuit occurred only once, and when the new school year began, Plaintiff Jane Doe started at another school where the male who assaulted her was not in attendance.  In fact, as pled by Plaintiffs, they requested the transfer for Jane Doe to attend another school and it was granted.  Compl., at ¶¶ 28, 31.  Given that the *Wells* Court's

reasoning for allowing the case to proceed is not applicable in this case, the *Wells* case does not support denying the District's motion to dismiss.

While Plaintiffs argue that *Brown v. Hot, Sexy & Safter Prods,* cited by the District, lends support for Plaintiff Jane Doe's Title IX claim, it does not. *See* Pl.'s Opp'n, footnote 24, citing *Brown,* 68 F.3d 525, 541 n. 13 (lst Cir. 1995). The *Brown* case makes clear that "Title IX is violated '[w]hen the [educational environment] is **permeated** with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive ... environment.'" *Brown,* 68 F.3d at 520, citing *Harris v. Forklift Sys. Inc.,* 540 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 899 (1st Cir.1988). Indeed, just as Plaintiffs suggest, in a *footnote*, the Court wrote "[w]e do not hold that a one-time episode is *per se* incapable of sustaining a hostile environment claim. The frequency of the alleged harassment is a significant factor, but only one of many to be considered in determining whether the conduct was "sufficiently severe or pervasive" that a reasonable person would find that it had rendered the environment hostile or abusive." This commentary by the Court appears in a footnote, not the body of the Court's opinion, and nonetheless makes clear that a one-time incident must still be sufficiently severe or pervasive to permeate or otherwise alter the conditions of the victim's educational environment. Here, based on the allegations as pled, the incident giving rise to the lawsuit only occurred on one occasion, on the last day of school year, and no allegations have been pled that shows it permeated the educational environment to which Plaintiff Jane Doe was subjected. Instead, as acknowledged by Plaintiffs, Plaintiff Jane Doe never returned to the school where the incident occurred. Instead, *Plaintiffs asked for and was granted* the right to

have Plaintiff Jane Doe attend another school when the new school year began, and the Complaint is devoid of any showing that Plaintiff Jane Doe's new school environment was abusive in any manner. That unbeknownst to the District, the alleged perpetrator posted information on social media, does not change the fact that the school environment in which Plaintiff Jane Doe returned was not an abusive school environment, and there are no allegations pled that the social media posts were disclosed to the District and no action taken. Compl. [3].

Similarly, this case is easily distinguished from both *McGinnis v. Muncie Cmty. Sch. Corp.,* No. 1:11-cv-1125, 2013 U.S. Dist. LEXIS 79548, at *35-37 (S.D. Ind. June 5, 2013) and *Vance v. Spencer Cnty. Pub. Sch. Distrt.*, 231 F.3d 253, 259 n. 4 (6th Cir. 2000), both relied on by Plaintiffs. In *McGinnis,* the minor child was pulled into the bathroom and raped. The rape was timely reported to school officials, but they made a decision not to call school security, the police or child protective services. Although the alleged perpetrator was questioned, he was released back to his class that same day, and later told he had nothing to worry about. The victim was taken to the hospital and evaluated. When the Title IX action was filed, the defendant argued that "a single incident of sexual assault, no[] matter how severe, does not support a claim of peer harassment" because it "does not constitute systemic deprivation of educational opportunities." *McGinnis,* at 36. The *McGinnis* Court disagreed with the defendant's argument finding that because a single act of harassment such as the rape as described by the plaintiff may suffice in the context of a Title VII hostile work environment claim, given that the defendants pointed to no reason why the result should be different, regardless of the environment, the impact on the victim would be the same. *See* Pls.' Opp'n at 6, citing *McGinnis*, 2013 U.S. Dist. LEXIS 79548, at *36-37. Here, fortunately, unlike in *McGinnis,* this plaintiff was not raped, and while the school officials in McGinnis failed to notify the police about the

rape once reported, here, once the District was notified, communications with the police occurred. Thus, even under *McGinnis,* Plaintiffs have not demonstrated that the single incident that is the subject of this lawsuit meets the standard as explained by *McGinnis* or as dictated under Title IX.

The *Vance* case also lends no support for Plaintiffs' Title IX claim. In *Vance,* on the second day of school, other minor children yelled at the minor child saying, "Oh, there's that German gay girl, that new girl that just moved here." These comments were reported to the counselor who gave presentations to the student about accepting people. On another occasion, while riding the school bus, a high school student asked the minor child to describe oral sex. This too was reported to the school counselor, who then reported the incident to the principal. Although the student was expelled, when he returned to the school, he cursed at the minor child and used even more vulgar language when speaking to her. During the subsequent school year, the minor child began attending Spencer County High School, where the school principal's nephew confronted the minor student in the presence of other students and demanded to know if she was gay. When the minor child reported the incident to the assistant principal, he reportedly said "that the boys considered her cute and they were flirting with her, so she should just 'be friendly.'" *Id.* at 256. Thereafter, when the minor child entered her seventh-grade year, other students regularly shoved her into walls, her book bag was grabbed, and students stole and destroyed her homework. *Id.* These incidents were also reported. During that same school year, the minor child and other female students were called vulgar names, were hit, their bras were snapped, their buttocks were grabbed, and things were taken out of the minor child's bag. Again, these incidents were reported. While the principal did not immediately get involved when the reports were received, the student later told the minor child that "he had been talked to, but that

8

he did not get into any trouble because he was a school board member's son." *Id*. In fact, many other cruel incidents were directed at the minor child during school. On appeal from the jury's verdict in favor of the plaintiff, the Court affirmed the jury's verdict, relying on the decision in *Davis*, in which "the Supreme Court established that Title IX may support a claim for student-on-student sexual harassment when the plaintiff can demonstrate the following elements:

>   (1)   the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school,
>
>   (2)   the funding recipient had actual knowledge of the sexual harassment, and
>
>   (3)   the funding recipient was deliberately indifferent to the harassment.

*Davis,* 526 U.S. at 629. Here, while Plaintiffs principally focus on whether or not the District was deliberately indifferent to the reported harassment, even then, they do not plead facts to support their argument. Rather, they argue that the District was deliberately indifferent because of its alleged "minimalistic" response. Pls.' Opp'n at 9. However, as recognized by Plaintiffs, "[d]eliberate indifference" exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.*, *citing Wells,* 235 F. Supp. 3d at 7-8. "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* Here, the Complaint is devoid of any facts showing that the District's actions were clearly unreasonable in light of the known circumstances or that the alleged deliberate indifference caused Plaintiff Jane Doe to undergo harassment, made or liable thereto, or made or vulnerable to it. Compl. [3]. More importantly, given that Plaintiffs' allegations do not rise to the level required to support *each* factor required for a Title IX action, all claims raised under Title IX should be dismissed. *See Davis*, 526 U.S. at 629. The determination of whether a dismissal is proper is made on the face of the pleadings alone. *See*

*Telecomm. of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985). A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's Complaint, thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" in order to survive a Rule 12(b)(6) motion to dismiss. *Id.*, 550 U.S. at 555. Here, given that the Complaint does not satisfy the requirements of *Twonbly* or *Igbal,* dismissal of Plaintiff Jane Doe's Title IX action is appropriate.

> II. **Plaintiff Jane Doe Failed to Plead Sufficient Fact to Procced on Her Municipal Liability Claim Under 42 U.S.C. § 1983**.

Fed. R. Civ. P. 8 requires that "[a] pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Here, Plaintiffs specifically pled their constitutional claim for failure to train under 42 U.S.C. § 1983 as Fourteenth Amendment equal protection violation. Compl. at ¶ 67. While Plaintiffs seemingly don't take this flaw seriously, dismissal is appropriate given that they specifically pled relief under the Fourteenth Amendment which does not apply to the District. The fact that the Fifth Amendment applies to the District is of no moment given that the Complaint makes no mention of claims raised under the Fifth Amendment. *Id.*

Even if this flaw in Plaintiffs' pleading could be disregarded, they still have not pled *facts* supporting municipal liability. Rather, Plaintiffs make conclusory arguments which are devoid of facts. *Id. See also* Pls.' Opp'n, generally. The Complaint is simply devoid of any showing that Plaintiffs' constitutional rights were violated through a District custom, practice or

procedure or that the District was aware of deficiencies in its training or other policies, customs, or procedures, that it was deliberate indifferent to these known failures, or that these failures were the moving force that resulted in the violation of Plaintiff Jane Doe's constitutional rights. *Id.  See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978), which expressly restricted municipal liability to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.") A causal link must be demonstrated between the official custom or practice and the plaintiff's injury to demonstrate liability on the part of the municipality. *See Clarke v. City of New York, et al.,* 2001 WL 876926, at *10 (August 1, 2001.)  Plaintiffs' reliance on *Forest Hills* is misplaced given that the Complaint is devoid of facts showing a District custom, practice or policy that was deficient *and* it led to injuries suffered by Plaintiff Jane Doe.  *See Doe v. Forest Hills,* 2015 WL 9906260 at *15-16 (March 31, 2015).  Since there is no *respondeat* superior liability under *Monell,* Plaintiffs' failure to plead facts to support their municipal liability claim is fatal and dismissal is appropriate.  *Monell*, 436 U.S. at 691.

### III.     Plaintiffs Failed to Satisfy D.C. Code § 12-309's Notice Requirements.

In the Opposition filed in this matter, Plaintiff Julie Doe submits that she satisfied 12-309's requirements and proceeds as if she is a party to this lawsuit.  She is not.  *See* Compl. [3].  The Complaint is devoid of any allegations that pertain directly to Julie Doe or otherwise show that any Counts as pled pertain to her.  *Id.*  Nonetheless, the December 13, 2017 claim form submitted to the Office of Risk Management (ORM) is insufficient to place the District on notice of any of common law tort claims.  In that claim form, the claims identified were as follows: sexual assault, interference with police investigation, Title IX failure, due diligence, etc.  *See*

Pls.' Exh 1.A.  It also shows that the "police failed to properly investigate rape allegation." *Id.* Under D.C. Code § 12-309, a claimant is required to give "notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." *See* § 12-309.  The phrases in the claim form provide no description of the circumstances giving rise to any injury as is required under § 12-309, nor does it place the District on notice of its potential liability as to any of the claims pled in the Complaint.  Compl. [3].  The District would have no reason to know that it had potential liability for Intentional Infliction of Emotional Distress (Count IV), Negligent Infliction of Emotional Distress (Count V), Defamation/Slander (Count V) or Negligent Supervision (Count VI) as pled in the Complaint.

      While a police report can be substituted as notice, it too must contain the requirements set forth in the statute.  Here, while the police report describes the criminal sexual assault committed against Plaintiff Jane Doe, it does not bear anyone's name nor initials.  *See* Pls.' Exhibit 2.  More importantly, other than describe the crime committed at the school, there are no facts showing why or how the District potentially bears liability for the claims as raised in the Complaint.  *Id. Allen v. District of Columbia,* 533 A.2d 1259, 1264 (D.C. 1987), nor *Enders v. District of Columbia,* 4 A.3d 457 (2010), allow for denial of this motion.  In *Allen,* the plaintiff sued the District under theories of false arrest, assault and battery, negligence, and malicious prosecution.  The D.C. Court of Appeals, in part, reversed the trial court's decision finding that the police report nor the letter satisfied the requirements of § 12-309., finding "[w]hen providing information about the "cause" of an injury, the written notice or police report must "recite[ ] facts from which it could be reasonably anticipated that a claim against the District might arise." *Allen,* 533 A.2d at 1262, citing *Pitts v. District of Columbia,* 391 A.2d 803, 808-09 (D.C.1978).  As recognized by the *Allen* Court, "a police arrest record ... does not necessarily suggest that the arrest was 'false' or the prosecution 'malicious,' nor does it automatically supply the requisite

information regarding 'time, place, cause, and circumstances of the injury or damage.'" *Allen,* 533 A.2d at 1263. Rather, "a police report must do more than merely report the happening of an event or accident; it must also report-give notice of-any then apparent injury ... which later forms the basis of a claim." *Allen,* 533 A.2d at 1263, *citing Miller v. Spender* 330 A.2d 250, 252 (D.C. 1974). Here, just like in *Allen* with regards to his tort claims, other than the malicious prosecution claim, neither the claim form nor the police report documenting the crime committed against Plaintiff Jane Doe recite facts from which the District could reasonably anticipate that it could potentially bear liability for the claims as pled in the Complaint. Similarly, the *Enders* decision lends no support for denying the District's motion. In *Enders,* the appellate court determined that the plaintiff's notice letter read in conjunction with the police report was sufficient to place the District on notice of the plaintiff's false arrest claim. *Enders,* 4 A.3d at 468. However, here, even if the claim form and the police report are read together, they still do not place the District on notice of the claims pled in the Complaint. *See* Ps.' Exhibits 1 & 2. As was made clear by the Court of Appeals for the District of Columbia, "[f]ailure of a formal notice or a police report to meet the required specificity would bar the suit even if [information in the District's possession] actually prompted the city to make an investigation." *See McCain v. District of Columbia,* 470 F.Supp.3d 525 (D.D.C. 2014), *citing Campbell v. District of Columbia,* 568 A.2d 1076, 1079 (D.C.1990) (citing *Washington v. District of Columbia,* 429 A.2d 1362, 1367 (D.C.1981)); *see also Owens,* 993 A.2d at 1089 (D.C.2010) ("Whether the District of Columbia had 'actual notice of a potential claim is not an appropriate consideration under section 12–309.' ") (citing *Chidel v. Hubbard,* 840 A.2d 689, 695 (D.C.2004)). As has been shown by the District, Plaintiffs' tort claims are barred under § 12-309.

III. **The Tort Claims Fail As Pled.**

In *Dreja v. Vaccaro*, 650 A.2d 1308 (D.C. 1994), a detective interviewed the plaintiff who was a rape victim. His tone, demeanor and statements directed to the plaintiff were found to be extremely offensive, insensitive and demeaning. While the trial court characterized the detective's behavior as "obnoxious and boorish," it found that it did not rise to the level of extreme and outrageous. The appellate court reasoned that the trial court erred in applying the wrong standard in determining whether the plaintiff was more susceptible to emotional distress than other rape victims or crime victims, when it should have decided whether she was more susceptible than members of the public at large. Unlike in *Drejza,* there are no facts pled that during the meeting with Defendant James, her comments were demeaning, or that she ridiculed, treated poorly or otherwise made anyone feel that the complaints were not being taken seriously. Instead, an audio recording existed that captured statements that clearly not meant for anyone, other than those in the room, to hear. Compl. at ¶¶ 24, 27. Moreover, there is no showing that Defendant James' actions caused injuries to anyone. No reasonable juror could find that the necessary intent to harm Plaintiff Jane Doe as is required to support an IIED claim. As argued in its motion, *Cavalier v. Catholic University of America*, 306 F.Supp 3d 9 (D.D.C. 2018) and *North v. Catholic University of America*, 310 F.Supp 3d 89 (D.D.C. 2018), are instructive, yet were not distinguished by Plaintiffs. Under *Cavalier and North*, "[t]o make out a claim for IIED under D.C. law, [the plaintiff] must allege '(1) extreme and outrageous conduct on the part of [the defendant] which (2) either intentionally or recklessly (3) cause[d] [her] severe emotional distress.'" *Cavalier,* 306 F.Supp 3d at 41*, citing Halcomb v. Woods*, 610 F.Supp.2d 77, 80 (D.D.C. 2009) (quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002); *North,* 310 F.Supp 3d at 94, *citing Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37

(D.C. 1982) (internal quotation marks omitted). "Liability will not be imposed for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Cavalier,* 306 F.Supp 3d at 41, citing *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting *Waldon v. Covington*, 415 A.2d 1070, 1078 (D.C. 1980) ).  Here, while the comments allegedly made by Defendant James and captured on the audio may be characterized as insensitive or mere insults, neither those comments or the other allegations as raised by in the Complaint rise to actions level for an IIED claim, and dismissal is appropriate.

The *Hedgepeth* Court established that even if the "zone of danger" element for NIED is not satisfied, a plaintiff may still make out a claim for NIED if it can be shown that:  "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011).   Here, when Defendant James allegedly made her comments, the plaintiff was not in the zone of danger because other than the school officers, no one was in the room when the statements were allegedly made by Defendant James.  Compl. at ¶¶ 24, 27.  Instead, both Jane and Julie Doe had left the room and did not become privy to the statements made until they listened to a recording that neither Defendant James nor anyone else present in the room knew existed.  *Id.*  Even under *Hedgepeth,* the NIED claim fails because there are no facts showing that it was especially likely risk that Defendant James' negligence would cause serious emotional distress to anyone or that her actions in fact caused the plaintiff to serious emotional distress. *Hedgpeth,* 22 A.3d at 810-11.  *See also* Compl. at ¶¶ 87-92.  Nor are there facts pled facts showing that the District's claimed failure to conduct a proper investigation caused her harm.  *Id.*

15

"[A] statement of opinion is actionable if—but only if—'it has an explicit or implicit factual foundation and is therefore objectively verifiable." *Id.* If the statement cannot be "construed as a statement of fact," it is not defamatory. *See Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013). Here, given the statements allegedly made by Defendant James as pled, it is clear that she was merely expressing her opinion. On that basis, dismissal is appropriate.

Finally, the negligent supervision claim also fails as pled. As acknowledged in the Complaint, the incident giving rise to this lawsuit occurred just after school recesses and was unforeseeable. Other than conclusory allegations, there simply are no facts pled showing that the sexual assault occurred because the perpetrator was not properly supervised. Compl. [3]. Moreover, the method by which students are supervised is within the discretion of school officials. Thus, sovereign immunity bars this negligent supervision claim.

## CONCLUSION

Based on the foregoing, Defendant requests that this Court dismiss this action against the District in its entirety.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Sec. 1

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General

EMMA LOMAX[2]
441 Fourth St., N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
Fax: (202) 741-8941; (202) 715-7821
Kerslyn.featherstone@dc.gov;
emma.lomax@dc.gov