```
1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3      Jane Doe,                        ) Civil Action
                                        ) No. 18-cv-2181
4                    Plaintiff,         )
                                        ) STATUS CONFERENCE
5      vs.                              )
                                        ) Washington, DC
6      District of Columbia, et al.,    ) September 24, 2019
                                        ) Time:  3:00 p.m.
7                    Defendants.        )
       _____
8
                       TRANSCRIPT OF STATUS CONFERENCE
9                             HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
10                     UNITED STATES DISTRICT JUDGE
       _____
11
                        A P P E A R A N C E S
12
       For Plaintiff:        Kasey Murray
13                           Koonz McKenney Johnson & DePaolis, LLP
                             2001 Pennsylvania Avenue, NW
14                           Suite 450
                             Washington, DC  20006
15                           (202) 659-5503
                             Email:  Kmurray@koonz.com
16
       For Defendant
17        District of Columbia: Kerslyn Featherstone
                             Emma Lomax
18                           Office of the Attorney General for D.C.
                             441 4th Street NW
19                           Suite 630 South
                             Washington, DC
20                           (202) 724-6600
                             Email:  Kerslyn.featherstone@dc.gov
21     For Defendant
          Aqueelha James:     Michael Tilghman
22                           Bailey and Ehrenberg
                             1015 18th Street NW
23                           Suite 204
                             Washington, DC  20036
24                           (202) 331-1331

25
```

1        Court Reporter:              Janice E. Dickman, RMR, CRR
                                      Official Court Reporter
2                                     United States Courthouse, Room 6523
                                      333 Constitution Avenue, NW
3                                     Washington, DC  20001
                                      202-354-3267
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Your Honor, this afternoon we

2     have civil action No. 18-2181, Jane Doe, et al. versus the

3     District of Columbia, et al.

4          Will counsel for the parties please approach the

5     lectern, identify yourself for the record and name the party or

6     parties that you represent, please.

7          MS. MURRAY:  Good afternoon, Your Honor.  Kasey

8     Murray on behalf of the plaintiff, Jane Doe.  And I have with

9     me Mr. Schloss from my office, David Schloss.

10          MR. SCHLOSS:  Good morning -- good afternoon.

11          THE COURT:  Good afternoon.

12          MR. TILGHMAN:  Good afternoon, Your Honor.  Michael

13     Tilghman on behalf of the Defendant Aqueelha James.

14          THE COURT:  Good afternoon.

15          MS. FEATHERSTONE:  Good morning, Your Honor.  Kerslyn

16     Featherstone and Emma Lomax on behalf of the District of

17     Columbia.

18          THE COURT:  All right.  Good afternoon.

19          This case arises from an alleged incident of

20     peer-on-peer sexual assault that occurred in the boys restroom

21     at Roosevelt Public High School in the District of Columbia.

22     The incident involved two high school students who we're

23     referring to as Jane Doe and M.P.

24          Jane Doe's mother, Julie Doe, filed this lawsuit on

25     Jane's behalf against the District and the principal of

1    Roosevelt High, Aqueelha James, alleging violations of Title

2    IX, 20 U.S.C. Section 1681(a), 42 U.S. Code § 1983, and various

3    common law torts in the District of Columbia.

4         The District has moved to dismiss the complaint or,

5    in the alternative, for summary judgment.  And I've looked at

6    all that.  The District's motion was Docket 15.  Ms. James

7    moved to dismiss the complaint pursuant to Rule 12(b)(6), at

8    Docket 18.  And there have been oppositions and replies filed.

9         Notwithstanding the fact that there's little to

10   commend the principal's behavior, the motions to dismiss are

11   going to be granted as to Counts 3, 5, 6, and 7.

12        And notwithstanding the fact that there are aspects

13   of the plaintiff's case that may turn out to be wanting at the

14   end of the day, Counts 1, 2, and 4 are not going to be

15   dismissed at this time and the case is going to proceed on

16   those.

17        Since this is a situation where the case is going to

18   move forward and I'm not issuing an appealable order

19   terminating the case at this time, I'm going to give my ruling,

20   as I often do, from the bench.  So, I've had people listen to

21   me talk for an hour and then stand up and say, Are you going to

22   issue a written opinion?  So I'm going to tell you now, no.

23        So, you have a choice about how many notes to take

24   under those circumstances.  And I apologize, I think about

25   halfway through these I, too, get tired of the sound of my own

1     voice.  But this, I think, is the most efficient way for me to

2     get the ruling to you, rather than waiting for all of the extra

3     bells and whistles that go with a written opinion.

4              So the factual background which, as everyone knows, I

5     have to take from the face of the complaint, is as follows:

6              Plaintiff Jane Doe is a minor child who at the time

7     of this incident was a freshman at Roosevelt High School during

8     the 2016 to '17 academic year.  That's set out in paragraph 10

9     of the complaint.  M.P. was also a student at Roosevelt High

10    that year.  That's in paragraph 15.

11             On June 13, 2017 Jane Doe and M.P. were in a

12    classroom together on the third floor of the building, along

13    with some other students.  There were no teachers or staff in

14    the classroom.  Many of the staff and teachers had already left

15    the building for the summer holiday, as this was the last day

16    of school.  That's paragraph 16 of the complaint.

17             M.P. asked to borrow Jane Doe's phone charger and

18    after borrowing it he left the classroom.  Jane Doe followed

19    him, asking that he give it back.  M.P. ran down the stairs to

20    the second floor of the building and Jane followed him.  They

21    both ran past several dean's offices and classrooms.

22    Ultimately, M.P. pulled Jane Doe into the boys restroom where

23    he pushed her into a stall.  While in the stall he blocked the

24    door with his body, refused to allow her to leave, forcibly

25    groped her buttocks and thighs, attempted to shove his hands up

1    her dress and into her underwear, and sucked and kissed her

2    neck, leaving a bruise.  That's set out in paragraph 17.

3         During the assault Jane Doe repeatedly asked M.P. to

4    stop and let her out of the stall.  He told her to be quiet and

5    continued doing what he was doing for several minutes.

6    Eventually he let her out.  Jane Doe called her mother and told

7    her she had been assaulted.  That's paragraph 18.  And then she

8    left the school at that time.  After the assault M.P. also

9    level the school's premises.  Later that day he posted details

10   concerning the assault on social media and other students

11   started to ask Jane Doe about it.  That's paragraph 20.

12        The same day Jane Doe's mother reported the incident

13   to the Metropolitan Police Department who instructed her to

14   report it to the appropriate people at the high school.  The

15   next day, June 14, 2017, Jane Doe's mother wrote an email to

16   the principal of Roosevelt High, Aqueelha James and

17   Superintendent David Pinder, reporting that Jane Doe had been

18   sexually assaulted and requesting assistance.  Paragraph 21.

19        Later that day Jane Doe and her mother attended a

20   meeting at Roosevelt High School.  The meeting was attended by

21   the principal, assistant principal, and guidance counselor.

22   And the dean of students was on the phone.  That's paragraph

23   22.

24        At the meeting Principal James asked for the identity

25   of the perpetrator, where the incident occurred, and attempted

1    to obtain a statement from Jane.

2            James, the principal, also indicated that MPD would

3    be interviewing Jane.  Jane became upset and left the meeting.

4    That's paragraphs 23 and 24.

5            Paragraph 24 also alleges that Jane and her mother

6    went outside the conference room into the hallway.  While they

7    were outside, Principal James made several statements to those

8    still in the conference room, including:  This whole thing is

9    going to blow up in her face.  This is why I'm going to go the

10   extra mile and call MPD, because I'm sick of her, sick and

11   tired of her and her mom.  So I'm going to call MPD and have a

12   long and drawn-out email, just so I can embarrass her.  You

13   should see the dress she's got on.  And, since I walked into

14   this building, I immediately responded to what I knew was

15   bullshit.

16           Jane Doe was then interviewed by the guidance

17   counselor, Maurice Butler.  At home she was interviewed by

18   Officer Garcia of the MPD, who took a preliminary report that

19   was to be referred to the youth division.

20           Plaintiff asserts that after this, the school turned

21   over some video footage to the police but did not investigate

22   the assault further; paragraph 26.  No disciplinary proceedings

23   were brought against M.P. and plaintiff asserts that M.P. was

24   never even interviewed and that she was never told the results

25   of any investigation.

1          Jane Doe's mother then sought what is called a safety

2     transfer for Jane Doe from Roosevelt High to another high

3     school in D.C. for the following school year.  Paragraph 28.

4     She alleges that the safety transfer was denied in paragraph

5     30, but paragraph 31 indicates that it was ultimately approved

6     a week before the school year was set to begin.

7          As a result of this incident and the handling of it,

8     paragraph 32 alleges that Jane Doe has suffered severe

9     psychological and emotional injuries which required medical

10    treatment, including psychological counseling and medication.

11         So now I need to go through each of the counts.  All

12    of them -- there's a motion to dismiss that's been filed as to

13    each all of them.  As everybody knows, the standard of review

14    in this case comes out of *Ashcroft versus Iqbal*, 556 I.S. 662,

15    and *Bell Atlantic Corporation versus Twombly*, 550 U.S. 544, and

16    that to survive a Rule 12(b)(6) motion a complaint must contain

17    sufficient factual matter, accepted as true, to state a claim

18    to relief that is plausible on its face.  The pleading must

19    offer more than labels and conclusions or just a formulaic

20    recitation of the elements of a cause of action.  Mere

21    conclusory statements or threadbare recitals of the elements do

22    not suffice.

23         When I evaluate a motion at this stage I must treat

24    the complainant's factual allegations as true.  I must grant

25    the plaintiff the benefit of all inferences that can be derived

1    from the facts alleged.  That's *Sparrow versus United Airlines*,

2    216 F.3d 111 -- no, 1111, out of the D.C. Circuit in 2000.  And

3    I have to construe the complaint liberally in the plaintiff's

4    favor.

5          However, I don't have to accept inferences drawn by

6    the plaintiff if they're not supported by the facts, and I

7    don't have to accept the plaintiff's legal conclusions.

8          In ruling on a motion to dismiss for failure to state

9    a claim, a Court can ordinarily consider only the facts alleged

10   in the complaint, documents attached as exhibits or

11   incorporated by reference in the complaint, and matters by

12   which the Court can take judicial notice.  Here, the District

13   moved for summary judgment in the alternative to its motion to

14   dismiss, presumably because it attached a document to its

15   motion.  The exhibit was a compliant form filled out by Jane

16   Doe's mother, informing the District of a potential injury, and

17   it's relevant only to the threshold question of whether

18   plaintiff could file its tort claims against the District.

19         But, this document is incorporated in the complaint

20   in paragraph 29 and, therefore, I believe I can rule on this

21   motion without converting the motion to dismiss into a motion

22   for summary judgment, and that's the way I'm going to proceed.

23         I want to start with the Title IX claims against the

24   District.  Plaintiff alleges that the District violated Title

25   IX when, through its agents and employees, it had actual

1    knowledge of M.P.'s assault upon Jane Doe but failed to take

2    corrective action, thereby acting with deliberate indifference

3    to the assault that Jane Doe suffered.  That's set out in

4    paragraphs 49 through 60.

5          Title IX provides that no person shall, on the basis

6    of sex, be excluded from participation in, being denied the

7    benefits of, or be subjected to discrimination under any

8    education program or activity receiving federal financial

9    assistance.  The statute covers sexual harassment of one

10   student by another.  And the Supreme Court has held that Title

11   IX authorizes damage awards in private lawsuits against

12   educational institutions, quote, only where they are

13   deliberately indifferent to sexual harassment, of which they

14   have actual knowledge, that is so sever, pervasive, and

15   objectively offensive that it can be said to deprive the

16   victims of access to the educational opportunities or benefits

17   provided by the school.  That's *Davis versus Monroe County*

18   *Board of Education*, 526 U.S. 629, at 650, from 1999.

19         A plaintiff alleging discrimination under Title IX

20   must show:  One, that the Board exercised substantial control

21   over both the harasser and the context in which the known

22   harassment occurred.  The harassment -- two, the harassment

23   must have been so severe, pervasive, and objectively offense

24   that it can be said to deprive the victim of access to the

25   educational opportunities or benefits provided by the school.

1    Three, the school must have actual knowledge of the harassment.

2    Four, the school must have acted with deliberate indifference

3    to the harassment.  And, five, a school's deliberate

4    indifference must cause students to undergo harassment or make

5    them liable or vulnerable to it.

6         The District has three arguments about why the Title

7    IX claim should be dismissed.  First, it says the conduct is

8    not sufficiently severe and persistent such that the school

9    official's actions compromised or interfered with her

10   educational opportunities.  The District said that at pages 9

11   and 11 of its motion.

12        Pages 10 and 11, it argued, secondarily, that

13   plaintiff does not sufficiently allege deliberate indifference.

14   And also, on page 11, it argues this one incident is

15   insufficient to show that M.P. continued that same conduct

16   against Jane Doe because the school officials acted with

17   deliberate indifference.

18        With respect to the first issue, while severe and

19   pervasive conduct is typically shown by repeated acts of

20   harassment, and the Supreme Court has expressed some hesitation

21   when considering whether a single incident could suffice, it

22   didn't foreclose the possibility entirely.  And the *Davis* case,

23   at page 652 to -53, it said:  Although, in theory, a single

24   instance of sufficiently severe one-on-one peer harassment

25   could be said to have such an effect, we think it unlikely that

1    Congress would have thought such behavior sufficient to arise

2    to this level in light of the inevitability of student

3    misconduct and the amount of litigation that would be invited

4    by entertaining claims of official indifference to a single

5    instance of one-on-one peer harassment.  By limiting private

6    damages actions to cases having a systemic effect on

7    educational programs or activities, we reconcile the general

8    principle that Title IX prohibits official indifference to

9    known peer sexual harassment with the practical realities of

10   responding to student behavior, realities that Congress could

11   not have meant to be ignored.

12           Which is, I think, a very wise analysis of the issues

13   on both sides.  And it may be that at the end of the day this

14   single incident is sufficiently severe.

15           But, while we have, I guess, just one instance of

16   sexual harassment, you have some bad facts for the District on

17   the side of the indifference.  And so it seems premature to

18   balance it all out now without moving forward through more

19   discovery and doing it at the summary judgment stage.

20           Looking at *Davis*, I think one instance of peer

21   harassment could suffice to satisfy the severe and pervasive

22   element of Title IX liability, provided that the incident was

23   so severe that it undermined and detracted from the victim's

24   educational experience, such that the victim was effectively

25   denied equal access to an institution's resources and

1    opportunities.

2          There have been a number of courts that have

3    recognized that a single incident of sexual assault may suffice

4    to show this severe, pervasive, and objectively offensive

5    conduct.  *Soper v. Hoben*, 195 F.3d 845, the Sixth Circuit found

6    an incident of rape to meet the standard.  *Stafford versus*

7    *George Washington University*, it's a District Court case from

8    D.C., 2019 WL 2373332, page 15.  An egregious, yet isolated,

9    incident might effectively bar Stafford from an educational

10   opportunity or benefit, but so too might pervasive, though less

11   sever, incidents of harassment.  And a single incident sufficed

12   in a case out of the Southern District of New York, *Patterson*

13   *versus Elmsford Union Free School District No. 11*, 2012 WL

14   860367.

15         It's true that often in the cases that find a single

16   incident to be enough, it's a rape.  That was *Doe versus Forest*

17   *Hills School District*, 2015 Westlaw 9906260, from the Western

18   District of Michigan.  *McGinnis V Muncie Community School*

19   *Corporation*, 2013 WL 2456067, from the Southern District of

20   Indiana, 2013.

21         *Lopez v. Metropolitan Government of Nashville and*

22   *Davidson County*, 646 F.Supp.2d 891, which said most courts

23   have -- that have addressed the issue have concluded that even

24   a single incidence of rape is sufficient to establish that a

25   child was subjected to severe, pervasive, and objectively

1  offensive sexual harassment.  And it cites a number of other

2  cases.

3          However, the Middle District of Georgia, in *Ross*

4  *versus Corporation of Mercer University*, did find that a single

5  incident of rape could not constitute severe and objectively

6  offensive discrimination because it's not likely to be

7  pervasive or have a systemic effect on educational activity.

8          But there are other cases that have held that

9  allegations of a single sexual assault can sustain a Title IX

10  claim at the motion to dismiss stage; *MDB versus Punxsutawney*

11  *Christian School*, 2019 WL 1970739, from the Western District of

12  Pennsylvania, denied a motion to dismiss where it was a Title

13  IX claim premised on a single sexual assault where one male

14  student touched another student's genitalia and exposed

15  himself.  *T.Z. versus City of New York*, 634 F.Supp.2d 263.

16  This was a plaintiff who was groped and held down and had her

17  clothing removed and her buttocks touched.

18          *Doe versus Dallas Independent School District*, 2002

19  WL 1592694, another single instance of an assault, Northern

20  District of Texas.  This time the student was successful in not

21  only getting his hand into the plaintiff's clothing, but he

22  inserted it into her vagina and caused some damage.

23          It's useful to point out that the Department of

24  Education Sexual Harassment Guidance on Title IX states that if

25  the conduct is more severe, for example, attempts to grab a

1   female student breasts or attempts to grab any student's

2   genital area or buttocks, it need not be as persistent to

3   create a hostile environment.  Indeed, a single or isolated

4   incident of sexual harassment may, if sufficiently severe,

5   create a hostile environment.  And that's from their Revised

6   Sexual Harassment Guidance:  Harassment of Students by School

7   Employees, Other Students, or Third Parties under Title IX in

8   this document issued by the Office for Civil Rights that's

9   available at the department's website.

10         So, for all of these reasons, I think it's prudent to

11   wait until the facts have been uncovered before ruling on the

12   severity of the incident here.

13         Plaintiff alleges that she was forced to transfer

14   schools and she alleges that she's become depressed and

15   withdrawn and has had mental health issues that have required

16   medical attention in the wake of this incident.  These facts

17   can be enough to show a depravation of educational

18   opportunities, and they may also bear on the severity at the

19   end of the day.

20         In *Doe versus Hamilton County Board of Education*, 329

21   F.Supp.3d 543, court in the Eastern District of Tennessee, in

22   2018, found that the student's subsequent transfer contributed

23   to a depravation of educational activities.  Other courts, for

24   instance, the Southern District of New York, found that

25   examples of such negative affects could include a drop in

1   grades, missing school, being forced to transfer schools, or

2   mental health issues requiring therapy or medication.  That's

3   169 F.Supp.3d 353.  And the Eleventh Circuit said something

4   similar in *Hill versus Cundiff*, 797 F.3d 948.  This was a

5   student who was raped, but the depravation of access to

6   educational activities was shown with withdrawing from

7   extracurriculars, transferring schools, her grades suffering,

8   and depression.

9        So at this stage I find that the plaintiff has set

10   forth sufficient facts to allege severe and pervasive conduct

11   that deprived her of access to educational opportunities.  But

12   I emphasize that the allegations are thin on this point and

13   we're going to need to take a close look at the end of

14   discovery.  There are issue not only with the severity, but I

15   think plaintiff needs to keep in mind even if the case moves

16   forward, all this may bear on damages and the damages may not

17   be quite what plaintiff and her mother have in mind.

18        The District's last argument turns on whether the

19   plaintiff has sufficiently pled that the district was

20   deliberately indifferent.  The Supreme Court has stressed it is

21   a high standard, fashioned to provide schools with the

22   flexibility they require and to restrain courts from second-

23   guessing the disciplinary decisions made by school

24   administrators.  That's the *Davis* case again at 643 and 648.

25   Deliberate indifference, according to *Davis*, can be found only

1   where the recipient's response to the harassment or lack

2   thereof is clearly unreasonable in light of the known

3   circumstances.

4           In light of the circumstances and the nature of the

5   allegations, I find that plaintiffs have pled enough facts to

6   show that the school was deliberately indifferent to

7   plaintiff's complaint.  The complaint alleges, in essence, not

8   only that they did nothing, but that they were dismissive and

9   disparaging of the plaintiff, who was a minor.

10          The inappropriate comments by the principal give rise

11  to an inference that the school did not take plaintiff's

12  complaint seriously.  That, coupled with the lack of

13  investigation or any remedial action taken by the school, may

14  be sufficient to show that the school's response was clearly

15  unreasonable.  See *Cavalier versus Catholic University of*

16  *America*, 306 F.Supp.3d, page 9, from this District in 2018.

17  There the Court found that where the university had

18  investigated, it then took over four and a half months to

19  institute disciplinary proceedings, that even that was

20  sufficient to state a claim of deliberate indifference.  Or

21  *Wells versus Hense*, 235 F.Supp.3d at 1, D.D.C. 2017, where the

22  school didn't conduct an investigation to institute

23  disciplinary proceedings and only involved the police,

24  plaintiff had stated a claim of deliberate indifference.

25          Finally, the defendant argues that the complaint does

1    not allege that M.P. continued the same conduct against Jane

2    Doe because of the deliberate indifference.   Another Court in

3    this District has recently examined whether plaintiff must

4    allege subsequent harassment to state an actionable Title IX

5    claim.   *Doe 1 versus Howard University*, 2019 WL 3037605, case

6    out of this district from 2019.   That Court examined a Tenth

7    Circuit decision that had concluded that *Davis* clearly

8    indicates that plaintiffs can state a viable Title IX claim by

9    alleging, alternatively, either that a school's deliberate

10   indifference to the reports of rape caused plaintiffs to

11   undergo harassment or made them liable or vulnerable to it.

12   That's *Farmer versus Kansas State University*, 918 F.3d 1094.

13          The Court in *Doe 1* agreed with the Tenth Circuit and

14   noted that the First and Eleventh Circuits have ruled

15   similarly, quoting *Fitzgerald versus Barnstable School*

16   *Committee*, 504 F.3d 165, and Williams versus *Board of Regents*

17   *of the University System of Georgia*, 477 F.3d 1282.   In that

18   case the Court found that a school may be liable where the

19   complaint showed that the plaintiff withdraw from the school

20   the day after the assault and, therefore, she didn't experience

21   any further harassment.

22          The *Doe 1* Court also observed that finding Title IX

23   liability based on vulnerability to harassment is consistent

24   with the statute's objectives.   It said the alternative offered

25   by the school, i.e., that a student must be harassed or

1    assaulted a second time before the school's clearly

2    unreasonable response becomes actionable, irrespective of the

3    deficiency of the school's response, the impact on the student

4    and the other circumstances of the case runs counter to the

5    goals of Title IX and is not convincing.

6           Title IX liability derives from the school's

7    deliberate indifference to known student-on-student sexual

8    harassment, which leaves victims vulnerable to additional

9    harassment, not just from a failure to remedy past harassment.

10   Thus, a school's inadequate response may create a hostile

11   environment that deprives victims of the school's educational

12   opportunities and benefits.

13          For these reasons, I'm going to permit the complaint

14   to proceed on this theory and a decision will need to be made

15   at summary judgment based on a full factual record.

16          The Court notes that Defendant James moved to dismiss

17   this count as well.  Plaintiff stated that she did not intend

18   to bring a Title IX action against the principal because James

19   herself is not an appropriate defendant in a Title IX action.

20   So James' motion to dismiss will be granted as to this count,

21   Count 1.

22          Count 2 is Title IX retaliation.  Plaintiff brought a

23   claim of retaliation under Title IX, asserting that the

24   District, through its employees, retaliated against her when

25   she reported the sexual assault by making defamatory

1    statements, denying her a safety transfer, depriving her of an

2    impartial investigation, and subjecting her to a hostile

3    educational environment.  It's in the complaint in paragraphs

4    63 and 64.

5            Plaintiff points out that the District didn't even

6    address this claim in its motion to dismiss, so it says that

7    the motion to dismiss should be denied as to this count.  The

8    District says that it did address the claim because it argued

9    that the school wasn't deliberately indifferent and it took all

10   the actions it was required to take as set forth in Title IX.

11   And finally, in its reply, it argues that the complaint is

12   devoid of facts showing retaliatory conduct.

13           Having reviewed the motion to dismiss, I find that

14   the District did not address the retaliation claim in the

15   motion.  The deliberate indifferent arguments don't apply to a

16   retaliation claim under Title IX.  Title IX retaliation is

17   analyzed similarly to Title VII retaliation claims, with

18   different elements.  The District did not cite or apply the

19   Title IX retaliation standard, and it didn't even mention

20   retaliation in its motion to dismiss.  First time it came up

21   was in its reply.

22           Therefore, pursuant to *King versus District of

23   Columbia*, 2012 WL 1077683, citing *Penn Electric Company versus

24   F.E.R.C.*, 11 F.3d 207.  I agree that arguments raised for the

25   first time in reply are waived.  Doesn't mean that plaintiff --

1    that the defense can't raise it later, but I'm not going to

2    dismiss the claim now.

3              And in any event, in its reply the District provided

4    no legal authority for its argument that the complaint fails to

5    state a Title IX claim of retaliation.  It merely states not

6    only is the complaint void of facts showing retaliatory

7    conduct, plaintiffs have pled no injury caused to Jane Doe

8    resulting from Defendant James' conduct.  That's the extent of

9    it.

10             So it's not up to the Court to go out and do the

11   research and figure out what the retaliation standard is and

12   whether there's facts in the complaint that support it, that's

13   up to the defendant.  So, plaintiff's Title IX retaliation

14   claim will move forward at this time.  And also, plaintiff has

15   emphasized that those claims are just against the District, so

16   it is dismissed as to Defendant James.

17             But I think it's important to note that since I'm

18   ruling on the defendant's failure to move to dismiss or to

19   support the motion with legal authority, I haven't opined and

20   my opinion shouldn't be taken as saying anything one way or the

21   other as to the sufficiency of the factual allegations as a

22   matter of law on Count 2.

23             Count 3 is a 1983 claim against the District.  § 1983

24   of the Civil Rights Act provides that every person who, under

25   color of any statute, ordinance, regulation, custom, or usage,

1    of any state or the District of Columbia, subjects, or causes

2    to be subjected, any citizen of the United States to the

3    depravation of any rights, privileges, or immunities secured by

4    the Constitution and laws, shall be liable to the party injured

5    in an action at law.

6            In considering that here what plaintiff is seeking is

7    to hold the District liable, not an employee, and in

8    considering whether a plaintiff has stated a claim for

9    municipal liability under § 1983, the Court has to determine

10   two things:  First of all, it has to determine whether the

11   complaint states a claim for the predicate constitutional

12   violation, and then, if it does, the Court has to determine

13   whether the complaint states a claim that a custom or policy of

14   the municipality caused the violation.

15           The standard arises out of *Monell versus Department*

16   *of Social Services*, 436 U.S. 658, in 1978, and the circuit

17   authority on that point is *Baker versus District of Columbia*,

18   326 F.3d 1302.

19           A municipality cannot be held liable for the

20   unconstitutional conduct of its employees based solely on a

21   theory of *respondeat superior*.  *Monell* emphasizes that it is

22   only when the execution of a government's policy or custom,

23   whether made by its lawmakers or by those whose edicts or acts

24   may fairly be said to represent official policy, inflicts the

25   injury that the government as an entity is responsible under

1    § 1983.

2           Thus, under the second prong of the inquiry, the

3    Court must determine whether the plaintiff has alleged an

4    affirmative link such that the municipal policy was the moving

5    force behind the constitutional violation.  According to *Baker*,

6    there are four ways in which a policy can give rise to a § 1983

7    liability for the municipality.

8           Number one, if the government explicitly sets a

9    policy that violates the Constitution.

10          Number two, the action of a policy maker within the

11   government.

12          Number three, the adoption of a policy through a

13   knowing failure to act by a policy maker in response to

14   persistent actions of his subordinates such that they become a

15   custom.

16          Or, four, failure of the government to respond to a

17   need, such as for training, in such a manner as to show

18   deliberate indifference to the risk that not addressing the

19   need will result in constitutional violations.

20          Here, plaintiff claims that Jane Doe's rights under

21   the equal protection clause were violated when she suffered

22   sexual discrimination and harassment at the hands of the

23   school.  It's not entirely clear to the Court that plaintiff

24   has made anything other than an entirely conclusionary

25   allegation that her constitutional, as opposed to her

1    statutory, rights were violated.  But since defendant has

2    dismissed for failure to allege the facts necessary to

3    establish causation under *Monell* and the motion is going to be

4    granted on that basis, I don't need to rule on that issue.

5         Plaintiff claims that the District failed to train

6    its agents and employees concerning sexual discrimination and

7    harassment, Title IX, peer harassment, sexual conduct --

8    misconduct, and identifying, investigating, reporting, and

9    stopping sexual harassment by students like M.P. against

10   students like Jane Doe.  That's in paragraph 73 to 75 of her

11   complaint.

12        She asserts that the need for training was plainly

13   obvious and that it was inevitable that school defendants'

14   administrators and employees would encounter recurrent

15   situations involving sexual abuse that implicated students'

16   constitutional and federal rights, and they did, in fact,

17   encounter those recurring situations.  That's paragraph 76.

18        Finally, she alleges, in 77 to 78, that the

19   District's failure to train its employees reveals that it was

20   deliberately indifferent and effectively denied Jane Doe's

21   constitutional rights.

22        The District argues the plaintiff has not stated a

23   claim for municipal liability because she hasn't pled any facts

24   showing that a custom, practice, or policy of the District was

25   the moving force behind any violation.  Plaintiff argues that

1    causation can be inferred from the facts in the complaint since

2    a properly trained individual would not have taken the actions

3    that principal James took.  That is plainly not a fair

4    inference if the alleged harassment is supposed to be the

5    assault itself, and it doesn't suffice if the constitutional

6    violation is supposed to be the school's response either.

7         A city's inaction, including its failure to train or

8    supervise its employees adequately, constitutes a policy or

9    custom under *Monell* when it can be said that the failure

10   amounts to deliberate indifference towards constitutional

11   rights of persons in its domain.  That's *Daskalea*,

12   D-A-S-K-A-L-E-A, *versus District of Columbia*, 227 F.3d 433, at

13   441, the D.C. Circuit citing *City of Canton versus Harris*, 489

14   U.S. 378, at 388 to '89.

15        As the Supreme Court has explained, in some

16   circumstances the need for more or different training is so

17   obvious, and the inadequacy so likely to result in the

18   violation of constitutional rights, that the policy makers of

19   the city can reasonably said to have been deliberately

20   indifferent to the need.  That is to say, when city policy

21   makers are on actual or constructive notice that a particular

22   omission in their training program causes city employees to

23   violate citizen's constitutional rights, the city may be deemed

24   deliberately indifferent if the policy makers choose to retain

25   that program.  It's *Connick versus Thompson*, 563 U.S. 51, at

1    page 61.

2         Thus, deliberate indifference is determined by

3    analyzing whether the municipality knew or should have known of

4    the risk of constitutional violations but did not act.  That's

5    *Warren versus District of Columbia*, 353 F.3d 36 to 39 from the

6    D.C. Circuit.  A pattern of similar constitutional violations

7    by untrained employees is ordinarily necessary to demonstrate

8    deliberate indifference for purposes of failure to train.  The

9    Supreme Court said that in the *Connick* case at page 62.

10         Here, plaintiff has failed to allege any facts to

11   show that the District was deliberately indifferent to the

12   unconstitutional consequences of a failure to train its

13   employees.  Plaintiff generally alleges that sexual assault is

14   prevalent, citing to Supreme Court decisions and guidance from

15   the Department of Education's Office for Civil Rights.  And so

16   she says the District was on notice that failing to respond to

17   sexual harassment may constitute sex discrimination.  But

18   plaintiff has pointed to no official District policy as the

19   alleged cause of the inappropriate response.  And plaintiff has

20   failed to show more than one occurrence of inadequate handling

21   of such an incident such that it could rise to a policy or

22   custom.

23         Similarly, a district court found, in *Blue versus*

24   *D.C.*, 850 F.Supp.2d 16, where plaintiff only pled the

25   mishandling of her sexual abuse, and pointed to no official

1    district policy, plaintiff did not sufficiently plead a 1983

2    claim.  That was actually upheld by the D.C. Circuit in 2015,

3    at 811 F.3d 14.  Also, in *Atchinson versus District of*

4    *Columbia*, 73 F.3d 418, the D.C. Circuit said, in 1996, proof of

5    a single incident of unconstitutional activity is not

6    sufficient to impose liability under *Monell*, absent proof that

7    the activity was caused by a municipal policy.

8         Plaintiff conclusorily argues that the District

9    ignored the highly predictable occurrence of sexual assault in

10   schools and that school officials were unprepared to handle it.

11   But there are no allegations in the complaint to infer that

12   Principal James' alleged missteps can be attributed to the

13   District's failure to train its employees.  And as I pointed

14   out before, *Monell* liability cannot be based on *respondeat*

15   *superior*, the mere improper action of an employee.

16        Plaintiff alleges that prior to M.P.'s assault on

17   Jane Doe there was a student-on-student sexual assault on

18   August 15, 2016 on Roosevelt High School's campus.  Paragraph

19   44.  But the complaint says nothing more about the handling of

20   that sexual assault or what happened after.  And plaintiff

21   bases her 1983 claim solely on the official response to her

22   assault.  In *Martinetti versus Mangan*, the Southern District of

23   New York found that plaintiff's general allegations that a

24   school district failed to train employees or have sufficient

25   policies or procedures in place based on a single alleged

1   incident of failure to respond to report of sexual assault,

2   without identifying anything that would have put policy makers

3   on notice that employees were not sufficiently trained to

4   handle such reports, are insufficient to establish municipal

5   liability.  That's at 2019 WL 1255955.

6        There just aren't enough facts here to support the

7   inference that the plaintiff is asking the Court to draw.  And

8   other courts have found similarly, in *Zahra versus Town of*

9   *Southold*, 48 F.3d 674, out of the Second Circuit.  *K.E. versus*

10  *Dover Area School District*, 2017 WL 4347393.

11       In cases involving student sexual assault a school

12  district's failure to train its employees to detect or report

13  signs of abuse may constitute deliberate indifference if

14  plaintiff establishes a pattern of causally-connected employee

15  violations.  Similarly, a school district's inactions

16  subsequent to one or more reports of sexual abuse conveyed

17  directly to school officials may also manifest deliberate

18  indifference.

19       Thus, because plaintiff has failed to point to other

20  instances where school officials failed to adequately handle

21  claims of sexual assault or any defect in the training

22  whatsoever, plaintiff has not sufficiently stated a 1983 claim

23  and it will be dismissed.

24       The Court notes that the defendant James, in her

25  motion to dismiss, addresses § 1983 claim and plaintiff did not

1    oppose her arguments.  Plaintiff explained that her § 1983

2    claim rested solely on a theory of municipal liability.  She's

3    not seeking individual liability against Miss James.  So

4    plaintiff's 1983 claim is dismissed as to defendant James as

5    well.

6         All right.  Now we can talk about the tort claims.

7    To bring tort claims, D.C. Code § 12-309 has a notice

8    requirement.  It says an action may not be maintained against

9    the District of Columbia for unliquidated damages to person or

10   property unless, within six months after the injury or damage

11   was sustained, the claimant, or its agent, gave notice in

12   writing to the mayor of the District of Columbia of the

13   approximate time, place, cause, and circumstances of the

14   injury.  A report in writing by the Metropolitan Police

15   Department is usually sufficient notice under this action -- is

16   sufficient notice for purposes of the D.C. Code.  This is a

17   mandatory prerequisite for anyone with a tort claim against the

18   District.

19        And the D.C. courts have held, in *Wharton versus*

20   *District of Columbia*, 666 A.2d 1227, and *Washington versus*

21   *District of Columbia*, 429 A.2d 1362, the statute is strictly

22   construed insofar as concerns the requirement that notice be

23   given and within the time specified and as to the proper

24   offense.  But on the question of whether a notice is

25   sufficiently definite on the time, place, and nature of the

1    injury, the rule of liberal construction is generally adopted

2    by the courts.  And, so, courts have found that in close cases,

3    they resolve the doubt in favor of finding compliance with the

4    statute.

5          Here, plaintiffs submitted a form to the Office of

6    Risk Management setting out the time and date of the incident

7    and the description, which stated sexual assault, interference

8    with police investigation, Title IX failure, due diligence,

9    etcetera.  And also, she also filed a police report

10   memorializing the date and location of the incident and a brief

11   description of what happened.  C1 disclosed that S1 forced her

12   noto the male restroom and into a bathroom stall.  S1 then

13   kissed her neck, causing a passion mark, and touched her

14   buttocks without her consent.

15         Defendant says these don't put the District on

16   sufficient notice of the tort claims that plaintiff has

17   brought.  While she didn't explicitly state that she intended

18   to bring claims for negligent inflection of emotional distress,

19   intentional infliction of emotional distress, defamation or

20   slander, or negligent supervision, I find the notice to be

21   sufficient to put the District on notice of the injury and the

22   potential claims that could arise from it.

23         The purpose of the statute is to allow the District

24   to investigate potential claims so that evidence may be

25   gathered while it is still available.  The tort claims arise

1    from the same set of circumstances as the Title IX claim, so by

2    stating that there may be Title IX liability and that there's

3    been a sexual assault, and by setting forth the time and

4    location of the incident, the District was given enough

5    information to investigate and be on notice of a potential

6    claim.

7          The statute focused on fairness to the District, not

8    on technical perfection.  Therefore, according to the precedent

9    that I cited earlier in *Wharton*, I find no unfairness to the

10   District here and that plaintiff should not be deprived of her

11   date in court by an over-technical application of the statute.

12         So, what are the torts?  There's intentional

13   infliction of emotional distress.  To establish liability under

14   D.C. law for intentional infliction of emotional distress, a

15   plaintiff must show extreme and outrageous conduct on the part

16   of the defendant which either intentionally or recklessly

17   causes the plaintiff severe emotional distress.  That's

18   *Larijani versus Georgetown University*, 791 A.2d 41, at 44, D.C.

19   Court of Appeals 2002; *Pitt versus D.C.*, 491 F.3d 494, from the

20   D.C. Circuit in 2007.

21         The conduct must be so outrageous in character and so

22   extreme in degree as to go beyond all possible bounds of

23   decency and to be regarded as atrocious and utterly intolerable

24   in a civilized community -- that's a pretty high standard --

25   from *Kaiser versus Unites States*, quoting the *Restatement of*

1   *Torts* at § 46.  And *Kaiser* was 761 F.Supp. 150, at 156.

2          The District says plaintiff hasn't pled facts that

3   defendant James' comments were demeaning or that she ridiculed,

4   treated poorly, or otherwise made anyone feel that the

5   complaints were not being taken seriously.  While plaintiff did

6   not explicitly allege that she was ridiculed or treated poorly,

7   she did state what the comments were, and it is obvious that

8   they were ridiculing and demeaning in nature.  I read them all

9   earlier.  I'm not going to read them again.

10         By making these comments during a meeting with

11  plaintiff and her mother, when they walked out of the room but

12  were still within earshot, defendants acted recklessly.  You

13  don't need specific intent.  Reckless infliction of emotional

14  distress is sufficient under D.C. law.  And plaintiff has

15  asserted that this caused her severe emotional distress and she

16  had to seek medication treatment, including counseling and

17  medication.

18         The Court finds, for purposes of the 12(b)(6) motion,

19  the plaintiff has sufficiently pled outrageous conduct which

20  has recklessly caused Jane Doe severe emotional distress.

21  Again, she's going to have to prove all these elements,

22  including causation and damages, at the summary judgment stage.

23         Defendant James argues that this claim is barred by

24  the statute of limitations, since it arises from the same

25  conduct that underlies the defamation claim and defamation has

1    a one-year statute of limitations, which is a D.C. Code,

2    § 12-301(a)(4).  It is true where IIED claims are intertwined

3    with a tort mentioned in that section of the D.C. Code, such

4    claims are subject to one-year limitations period.  See *Rogers*

5    *versus Johnson-Norman*, 466 F.Supp.2d 162, out of the District

6    Court in 2006.  And another District Court case, *Parker versus*

7    *Grand Hyatt Hotel*, 124 F.Supp.2d 79.  But here that argument

8    fails because plaintiff is a minor and under D.C. Code

9    § 12-302, if a person is under 18 years of age at the time the

10   action accrues, her proper representative may bring the action

11   within the time limit after the disability is removed.  Thus,

12   the statute of limitations is tolled until she reaches the age

13   of 18.

14        The District also argues that had plaintiff's mother

15   not recorded the statements, they wouldn't have been privy to

16   them.  But at this stage it's not clear from the complaint

17   whether that's true.  To the extent that the District is making

18   a causation argument, facts regarding the circumstances of the

19   recording would need to be developed before the Court could

20   find one way or the other.

21        And the D.C. Circuit recognizes *Smith versus District*

22   *of Columbia*, 413 F.3d 86, the proximate cause of an injury is

23   ordinarily a question for the jury.  So if I'm taking all the

24   inferences in favor of the plaintiff, which I'm required to do

25   at this juncture, I find that plaintiff has stated a claim for

1      intentional infliction of emotional distress.

2              Plaintiff also has a claim of negligent infliction of

3      emotional distress against the District and James, asserting

4      that by failing to adequately investigate the claims and making

5      the defamatory statements defendants caused plaintiff severe

6      emotional distress.  That's in paragraphs 87 to 92.

7              Negligent inflection of emotional distress has a

8      different set of prerequisites, though, than intentional

9      inflection of emotional distress.  To establish a negligence

10     claim there are only certain theories that would support it and

11     plaintiff has stated that she's pursuing a claim under what's

12     been called the special relationship theory.

13             To state a claim for negligent inflection of

14     emotional distress under this theory plaintiff must show:  One,

15     that the defendant has a relationship with the plaintiff or has

16     undertaken an obligation to the plaintiff of a nature that

17     necessarily implicates the plaintiff's emotional well-being.

18     Two, there's an especially likely risk that the defendant's

19     negligence would cause serious emotional distress to the

20     plaintiff.  And three, negligent actions or omissions of the

21     defendant in breach of that obligation have, in fact, caused

22     serious emotional distress to the plaintiff.  That's *Hedgepeth*

23     *versus Whitman Walker Clinic*, 22 A.3d 789, D.C. 2011.

24             Plaintiff claims the defendant had a duty to protect

25     Jane Doe from harassment and that they breached their duties

1     when they acted in a manner that was likely to cause emotional

2     distress.  They argue that plaintiff -- defendant says

3     plaintiff has failed to show the special relationship that is

4     necessary for this claim.  Plaintiff has not identified any

5     authority showing that a student's relationship with the school

6     alone is the type of relationship that necessarily implicates

7     her emotional well-being.  In *Sibley versus St. Albans School*,

8     134 A.3d 789, the D.C. Court of Appeals held that the

9     relationship between a student and her school is not enough,

10    without more, to impose the predicate duty of care for a claim

11    of negligent inflection of emotional distress.

12            If the school obligates itself to a specific

13    undertaking that can qualify as the more that was lacking in

14    *Sibley*, so as to establish a special relationship, then there

15    can be one between a school and a student.  For example, in

16    *Cavalier*, a rape victim's negligent infliction of emotional

17    distress claim survived a motion to dismiss because the

18    university had affirmatively represented to her that a

19    no-contact order was in place and that it would take the

20    necessary steps to enforce it.

21            In that case the university undertook a

22    responsibility to protect Cavalier from future harassment by

23    Doe, and it allegedly failed to do so, despite repeated

24    complaints that Cavalier registered with the responsible

25    administrators.  So while that precedent exists, it's a really

1    different situation than what is alleged here.

2           Plaintiff hasn't alleged that defendant James or the

3    District undertook a specific obligation to protect her, either

4    before or after the assault took place.  It's basically just

5    the school-student relationship.  There were no representations

6    to Jane Doe or to her mother that investigation would be

7    conducted or that any remedies would be taken.  Plaintiff is,

8    therefore, lacking the something more necessary to establish

9    the special relationship between Jane Doe and the school.  And,

10   therefore, I find that the complaint fails to state a claim for

11   negligent inflection of emotional distress.

12          Another tort that is alleged is defamation or

13   slander.  Plaintiff asserts that the defendants defamed her

14   when the principal made statements about her during the meeting

15   with school officials after the assault occurred.

16          *Farah versus Esquire Magazine*, 736 F.3d 528, from the

17   D.C. Circuit in 2013, set out the elements of defamation under

18   D.C. law.  A plaintiff must prove, one, that she was the

19   subject of a false and defamatory statement.  Two, that the

20   statement was published to a third-party.  Three, that

21   publishing the statement was at least negligent.  And, four,

22   that the plaintiff suffered either actual or legal harm.

23          Under the First Amendment, liability for defamation

24   arises only if, at a minimum, a defendant's statement

25   reasonably implies false and defamatory facts.  That's

1    *Milkovich versus Lorain Journal Company*, 497 U.S. 1.  The First

2    Amendment provides protection for statements that cannot

3    reasonably by interpreted as stating actual facts about an

4    individual.  Where a defendant's statement cannot be construed

5    as representations of fact, there can be no defamation.  And

6    that's also emphasized in the *Farah* case.

7           As a general rule, therefore, while a statement of

8    fact can be the basis for a defamation claim, a statement of

9    opinion cannot.  It's *Rosen versus American Israel Public*

10   *Affairs Commission, Inc.*, 41 A.3d 1250.  But a statement of

11   opinion can be actionable if it implies a provably false fact,

12   or relies upon stated facts that are provably false.  It's

13   *Guilford Transportation Industries versus Wilner*, 760 A.2d 580.

14          Here, defendant James' statements cannot be construed

15   as stating actual facts, or even as being based upon a factual

16   foundation.  The statements:  I'm going the extra mile in

17   calling MPD because I'm sick of her, sick and tired of her mom;

18   I'm going to have a long and drawn-out email just so I can

19   embarrass her; you should see the dress she has on; it's going

20   to blow up in her face; I knew it was bullshit.  Those

21   statements are James' opinion of the plaintiff and her mother.

22          While the final statement is a closer call, it, too,

23   is a personal assessment of the validity of plaintiff's

24   allegations and her credibility.  While these comments are

25   wholly inappropriate, they don't assert any facts about the

1    plaintiff, and plaintiff's claim for defamation will be

2    dismissed.

3          The other tort claim is a negligent supervision

4    claim.  Plaintiff asserts that Jane Doe and M.P. were students

5    at Roosevelt High School and that M.P. was a student who was

6    subject to the authority and control of the defendants and that

7    the defendants had a duty to protect Jane Doe while on the

8    premises and while in their custody and control.

9          Plaintiff alleges that the defendant should have

10   known of the risk of sexual violence towards students,

11   considering its prevalence, and that when they failed to

12   adequately staff classrooms, monitor hallways, and provide

13   adequate security they were negligent in their supervision of

14   M.P.

15          Specifically, plaintiff alleges in her complaint on

16   June 13, 2017 Jane Doe and M.P. were in a classroom together on

17   the third floor of the building with other students.  There was

18   no teacher or staff member in the classroom and upon

19   information and belief, many staff and teachers had already

20   left the building for the summer holiday as this was the last

21   day of school.  The District argues that there can be no

22   negligent supervision claim because the incident occurred on

23   the last day of school and after staff had already left the

24   building and so the incident was unforeseeable.  And the

25   District also argues that the method by which students are

1    supervised is within the discretion of school officials so

2    sovereign immunity bars the claim.

3         Although a school district is not the insurer of the

4    complete safety of school children, nor is it strictly liable

5    for any injuries which may occur to them, the D.C. Court of

6    Appeals said, in *District of Columbia versus Cassidy*, 465 A.2d

7    395, a secondary school does owe a duty to its students to

8    exercise reasonable and ordinary care for the protection of

9    pupils to whom it provides an education.  That's *D.C. versus

10   Doe*, 524 A.2d 30, at page 32, and also *D.C. versus Royal*, 465

11   A.2d 367.  Teachers and school boards have an obligation to

12   supervise the activities of students when the school is

13   entrusted with their care.

14        A school's duty to supervise its students, however,

15   is limited to a reasonable duty to guard against foreseeable

16   harm.  The duty is restricted by the common law tort principle

17   that limits liability to those injuries which are reasonably

18   foreseeable results of one's action or inaction.

19        Whether or not the school authorities provided

20   supervision depends largely upon the particular circumstances

21   involved.  If no special or dangerous condition exists, the

22   school is of course not under duty to supervise all the

23   movements of its students at all times.  The Court in this

24   District said that in *Ballard versus Polly*, 387 F.Supp. 895,

25   899.  And also in *Cassidy*, 465 A.2d at 398, one student threw a

1    stick and hit the plaintiff in the eye, but the Court found

2    that the negligence claim could not be sustained because the

3    intervening acts of the third-party couldn't have been

4    anticipated.

5            In D.C. the cases involving negligent supervision of

6    students by teachers tend to involve specific knowledge

7    regarding a so-called dangerous condition, such as in *Ballard,*

8    where a student was struck and killed by a vehicle on a road

9    next to the school.  The Court found that the city was

10   negligent because the school knew that the fence separating the

11   playground and the road was down and the school knew that

12   students wandered outside the fence onto the road.

13           In *D.C. versus Doe*, 524 A.2d 30, school officials

14   were on notice of a danger to students from assaultive criminal

15   conduct by intruders because crimes including arson, robbery,

16   and sexual assault had been committed on school grounds, the

17   school could be held liable when a student was abducted from a

18   classroom.  *D.C. versus Royal* found that the District

19   negligently failed to properly supervise the departure of the

20   school children when there was a construction site near the

21   school grounds and the school knew that it was dangerous.

22           Here, plaintiff doesn't allege that the defendants

23   had any specific knowledge of the so-called dangerous condition

24   at Roosevelt High.  Rather, plaintiff makes broad assertions

25   about the prevalence of sexual assault at schools in general.

1    And she identifies one other incident of sexual assault that

2    occurred in 2016, but no other details are provided.

3         Plaintiff hasn't presented any facts regarding the

4    prevalence of sexual assault at Roosevelt High, any

5    circumstances that make sexual assault likely to happen at

6    Roosevelt High, or any facts that would put defendants on

7    notice that such an act would occur, or that M.P. would commit

8    such an act, nor has she alleged any facts to show that the

9    school was on notice that its supervision and monitoring of

10   school hallways during after-school hours was deficient.  The

11   complaint specifically alleges that it was the last day of

12   school and that most of the staff had already left the building

13   for summer holiday.  Plaintiff doesn't allege that teachers

14   were supposed to be in the classroom, in the hallways, or in

15   any of the offices at that time.

16        Therefore, I find that the plaintiff has failed to

17   plead that M.P.'s act were a foreseeable result of inadequate

18   supervision in this case.

19        In sum, Counts 1 and 2 will be moving forward against

20   the District.  Count 4 will move forward against defendant

21   James and the District.  And the other counts will be dismissed

22   at this time.

23        Going to this point then, the defendants need to

24   answer and then we would need a scheduling conference and a

25   plan for discovery.  And before we go too far down that road, I

1  think everybody should step back and think about this case, and

2  think about what really makes sense for the District or for the

3  plaintiff for this case to go forward, instead of coming to

4  some sort of negotiated resolution.

5       The facts are not pretty for the District of

6  Columbia.  And if the statements are not just allegations but

7  they're recorded, I think it's fair to suggest that the jury

8  may not like them.

9       But there are also some significant legal and factual

10  hurdles for the plaintiff.  And to the extent she has to prove

11  her damages, that means she has to be very up front about her

12  mental health with the defense, with, potentially, the

13  defendants' expert, if plaintiff has an expert.  It's all a lot

14  to go through and it may be that she's still suffering

15  significant consequences from this incident, or it may be that

16  the new placement has been successful.  I don't know any of

17  those facts.

18       But I think it's important to weigh what she could

19  get out of this case, even if she won, versus what it's going

20  to take to get from here to the end of the case, not only in

21  terms of what the plaintiff has to prove, but what the

22  plaintiff personally and her mother are going to have to go

23  through.

24       So both sides, I think, have a lot of good reasons to

25  think through whether there's a place that they can meet in the

1    middle to resolve this matter.  It's often hard to overstate

2    the importance of apologies sometimes.  And, so, I think both

3    sides should consult their clients and think about that.  And

4    what I think I'm going ask to you do before I have you draft a

5    proposed discovery schedule and discovery plan and a Rule 16.3

6    report, would be to have the defendant answer and then have the

7    parties let me know whether you would be interested in being

8    referred to mediation in this case, either to one of the

9    magistrate judges or to one of the court-appointed mediators,

10   who can be someone who has expertise in the field.  And if

11   you're willing to give that a try, then that would save a lot

12   of time and effort and strain on everybody in the discovery

13   process.

14          So, I mean, I know the rules say when an answer is

15   due, but when does the defendant think they can get their

16   answers to the --

17          MR. TILGHMAN:  For defendant James, I believe the

18   rule says 14 days.  I think we can do 14 days, but it might

19   make sense to, in connection with the form of the court, will

20   submit an answer if it's needed.  And what I mean by "form of

21   the court," you mentioned to let -- you would want us to let

22   you know whether or not there's resolution.  I don't know

23   whether you anticipate there will be a certain number of days

24   before we report to the Court, or how you wanted to proceed.

25          THE COURT:  Well, how long -- I recognize that the

1      District isn't usually inclined to engage in this process at

2      this stage, but sometimes it is, and some cases are more

3      amenable to it than others.  How long do you think it would

4      take you to think through that question and let me know on

5      behalf of the District?

6              MS. FEATHERSTONE:  Well, Your Honor, first we would

7      need the plaintiff to provide us a demand in the case, so that

8      we can have that information and analyze the case based on the

9      demand, the current attorney fees at issue.  All these things

10     we take into account when we come up with a response.

11             We can have the answer done by October 10th, was the

12     answer to the Court's first question.  But we would need

13     something from the plaintiff in order for us to look at the

14     case, value it to see where we are in terms of those things

15     that make sense when it comes to resolving a case in a fee-

16     shifting case.

17             And so it's going to really depend on how quickly the

18     plaintiffs can get us a demand in the case and then we can

19     discuss it with our office and come up with a resolution, and

20     then how long it will take to get on a magistrate judge's

21     calendar.  In some other cases that I've had recently it's

22     taken at least 30 days for them to get us on their calendar.

23     So if the Court is inclined to use a magistrate judge in this

24     case, we would probably want a referral pretty quickly, so that

25     we can get on their calendar within the next 30 to 45 days.

1          THE COURT:  I think there's a lot of things that

2     everybody needs to think through, and you both need to tell

3     your clients what I said about the various claims that we have.

4          It is at this moment, I think, September 24th.  So,

5     why don't we say that -- what day did you say the answers would

6     be due?

7          THE COURTROOM DEPUTY:  It was 14 days, but she said

8     they could do their answer on October 10, Your Honor.

9          THE COURT:  Okay.  All right.  Why don't we say that

10    the answers -- well, does it make sense to hold off on that

11    until you've had these conversations?  Which I think is what

12    counsel for Ms. James was saying, which is fine with me.

13    What's the plaintiff's point of view?

14          MS. MURRAY:  Yes, Your Honor.  I think it actually

15    makes sense to have the defendants file an answer while we're

16    working on a demand on our end.  I can't say, you know, for

17    certainty that we can turn that around in two weeks, 14 days.

18    But I do think, after I speak with my client and get

19    permission, I think we can turn something around in a

20    reasonably short time thereafter.

21          And my only concern is that if the defendants don't

22    answer, and then we're back to where we choose not to engage in

23    this process, then the schedule order is further backed up from

24    what it already has been.

25          THE COURT:  All right.  I don't think that answering

1    this complaint is as burdensome as some.  So, I think -- let me

2    have the defendants go ahead and answer, but you can have until

3    October 14th to do that.  And then I'll ask everybody to step

4    back and talk to their clients and evaluate.

5          And why don't you file a notice with me on the 25th

6    of October, which gives you basically a month, letting me know

7    if you're interested in a referral.  And if you tell me you're

8    not, then at that point I'll issue an order calling for the

9    Rule 16 report and we'll go forward.

10          MS. FEATHERSTONE:  Your Honor, the 14th is a holiday.

11   Would the court be inclined to say the 15th?

12          THE COURT:  I guess I would.

13          MS. FEATHERSTONE:  Thank you.

14          THE COURT:  All right.  Is there anything else I need

15   to take up on behalf of the District right now?

16          MS. FEATHERSTONE:  No, Your Honor.

17          THE COURT:  Anything further for the plaintiffs?

18          MS. MURRAY:  Nothing further, Your Honor.

19          THE COURT:  All right.  Okay.  Thank you very much

20   for your patience, everybody.

21                        *   *   *

22

23

24

25

1        CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4        I, JANICE DICKMAN, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true and complete transcript of

7    the proceedings to the best of my ability.

8                Dated this 16th day of October, 2018.

9

10

11                /s/_____

12                Janice E. Dickman, CRR, RMR
                  Official Court Reporter
13                Room 6523
                  333 Constitution Avenue NW
14                Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25