**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JANE DOE, by and through her<br>  next friend, JULIE DOE, | : | |
| | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | C.A. No. 1:18-CV-2181 (ABJ) |
| | : | |
| DISTRICT OF COLUMBIA, et al. | : | |
| | : | |
| *Defendant*. | : | |
| _____ | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S**
**MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]**

    When Plaintiff Jane Doe was a freshman student at Roosevelt High School ("RHS"), a

male classmate dragged her into a boys' bathroom and sexually assaulted her in a restroom stall.

The very next day Jane and her mother, Julie Doe, reported the assault to school administrators,

including the Principal at RHS, Defendant Aqueelha James. James responded to her student's

disclosure of sexual violence by stating:

> [S]ince I walked into this building, I immediately responded to what I knew
> was bullshit . . . this whole thing is going to blow up in her face, that is why I
> am going to go the extra mile and call MPD because I am sick of her, sick and
> tired of her and her mom. So I am going to call MPD and have a long and drawn
> out email just so I can embarrass her ass.

Defendant James' disbelieving, biased, and blaming response likely interfered with law

enforcement's investigation of the assault and set the tone for the remainder of Jane Doe's time

---

[1] Plaintiff incorporates by reference arguments set forth in her contemporaneously filed
Memorandum of Points and Authorities in Opposition to Defendant James' Motion for Summary
Judgment.

as a student in Defendant District of Columbia ("District"). For the next three years, Jane suffered the District's clearly unreasonable, retaliatory, and discriminatory actions that destroyed her high school education. Jane's grades plummeted, she ranked near the bottom of her class, and was diagnosed with post-traumatic stress disorder. According to the District's attendance records, during her sophomore and junior years she was absent from class on over 181 days. The District's misconduct even caused her to quit attending therapy.

The District has moved for summary judgment on two elements of Jane Doe's Title IX deliberate indifference claim – actual knowledge and deliberate indifference. As set forth below, this Court should grant <u>Plaintiff</u> summary judgment on the actual knowledge prong of her claim, because it is undisputed that numerous school administrators – who as a matter of law qualify as "appropriate persons" because they had the authority to discipline students – received actual notice of the sexual assault she suffered. With respect to deliberate indifference, a reasonable jury could find that the combined systemic effect of the sexual assault and the District's egregious response effectively denied Jane Doe access to educational programs and activities. The District's arguments regarding Plaintiff's Title IX retaliation claim are similarly unavailing. Numerous courts, including this District Court, have applied the Title VII framework in analyzing Title IX retaliation claims, and a reasonable jury could find through direct or indirect evidence that the District retaliated against her.

## FACTS

### I.    Jane Doe Was Sexually Assaulted at RHS on June 13, 2017

Roosevelt High School ("RHS") is a school in the District. Pl's Statement of Additional Material Facts ("SMF") ¶¶ 1-2. On June 13, 2017, Jane Doe was a freshman student at RHS. *Id.* ¶ 3. That day, she was in a classroom at RHS with approximately 10 other students, including

MP[2], while they were waiting for their teacher to arrive and start class. *Id.* ¶ 28. Jane and MP had previously been cordial to one another, but they were not friends. *Id.* ¶ 29. While waiting for their teacher, MP obtained Jane's phone charger and would not give it back. *Id.* ¶ 30. MP left the classroom with the charger, and Jane followed, asking that he return the charger to her. *Id.* ¶ 31. As shown on RHS video, as the two neared the boys' bathroom, MP went into the bathroom, tried to pull Jane into the bathroom with him, and – when she resisted – he forcefully, and against her will, dragged her into the restroom. *Id.* ¶ 32. MP pushed Jane Doe into a bathroom stall, groped her breasts and buttocks, tried to lift up her dress, and kissed her neck so forcefully that he left a mark, while Jane cried and yelled at him to stop. *Id.* ¶¶ 33-35. When MP finally stopped the assault, he left the bathroom. *Id.* ¶ 36. School video captures Jane subsequently exiting the bathroom, visibly upset and anxious. *Id.* ¶ 37. Jane Doe then called her mother, Julie Doe, frantic and begging to go home, and Julie said she could. *Id.* ¶¶ 4, 38. Jane left school, went home, and provided her mother with details about the sexual assault. *Id.* ¶ 39.

That same day, Julie verbally reported the sexual assault to law enforcement, who told her to file a report through a school administrator. *Id.* ¶¶ 40-41. Julie contacted Instructional Superintendent Dr. David Pinder and informed him that her daughter had been sexually assaulted. *Id.* ¶¶ 11, 43. Dr. Pinder told Julie that as a District employee he could not take her complaint, as his role was to protect the school and District. *Id.* ¶ 44. Julie also contacted RHS and set up an appointment to meet at school the following day. *Id.* ¶ 45.

## II.   The District Failed to Provide Title IX Training to RHS Administrators, Personnel, and Students

At this point in time, the District had just one Title IX Coordinator, Lynice Hannah, who

---

[2] "MP" are the initials used in this litigation to refer to the male perpetrator.

was part of the District's Civil Rights Team (later re-branded and renamed "CARE"), and the majority of her duties pertained to athletics. *Id.* ¶¶ 18-20, 81. Ms. Hannah was the sole person responsible for conducting Title IX sexual harassment investigations in the District, which served approximately 50,000 students at 118 schools. *Id.* ¶¶ 1, 18-20.

The District knew that, in August 2016, a gang rape had occurred at RHS. *Id.* ¶ 22. Football players had held down and anally sodomized a male student, and students video recorded the rape. *Id.* ¶¶ 22-23. The District placed a school coach on leave as a result of the assault. *Id.* ¶ 24. The District also knew that at least one male administrator portrayed the sodomized victim as having "cried rape." *Id.* ¶¶ 25-26.

Despite knowing all of this, by the end of 2016-2017 school year, when Jane Doe was sexually assaulted at RHS, the District still had not provided RHS administrators or personnel any training regarding Title IX, student-on-student sexual assault and harassment, how to interview students reporting sexual assault, not responding with bias to such reports, or not retaliating against students who report sexual assault. *Id.* ¶¶ 46-48. According to the District itself, proper Title IX training for Principal James and others would have instructed them:

- Retaliation occurs "when a school intimidates, threatens, coerces or discriminates against an individual who has brought a concern or reported a possible violation of a civil right."

- Examples of retaliation include failing to accommodate academic needs or removing a student from sports or extracurricular activities.

- School Principals "set the tone the way staff respond to students [reporting sexual harassment] and can have a significant impact on what may have been traumatizing experiences."

- Staff should not "determine whether a student is telling the truth, conduct an interview, provide counseling or therapy or make any judgments, shame, or credit or discredit the information that you received."

- "Be sure to listen, be empathetic, and don't be cold or curt" to students who complain of sexual harassment.

*Id.* ¶¶ 46-48, 51. Nor had the District provided any Title IX or sexual harassment training for RHS students. *Id.* ¶ 53.

### III.     Principal James' Response to Jane Doe's Report of Sexual Assault

On June 14, 2017, Julie Doe emailed Principal James and Superintendent Pinder that "[a] young man, with the name [MP] pulled my daughter into a male restroom yesterday and sexually assaulted her." *Id.* ¶ 55.

Later that day, Jane and Julie went to RHS and met with Principal James, Assistant Principal Michael Moss, and Instructional Coach Maurice Butler. *Id.* ¶¶ 7, 15, 17, 54-57. The meeting took place in a conference room on the main floor of RHS, across from the school's main office. *Id.* Reginald Stevens, the lead Dean of Students for RHS, participated in the meeting by phone. *Id.* ¶¶ 13, 58. Julie Doe placed her cell phone on the table in the conference room and audio recorded the meeting because of Dr. Pinder's response to being notified that Jane had been sexually assault, and to ensure that her daughter would obtain justice. *Id.* ¶ 60. Jane disclosed details of the sexual assault to the school officials, including the perpetrator's identity. *Id.* ¶ 61.

Principal James – despite knowing that Jane was "very upset" – was disrespectful, insensitive, treated Jane like she was "crying rape" and that the assault was her fault. *Id.* ¶¶ 62-63, 71. Jane left the meeting because she was upset by Principal James, and Julie followed so she could comfort her daughter. *Id.* ¶¶ 62, 64. Julie Doe did not intend to leave her phone in the room; she was not even thinking about her phone and instead was focused on Jane, who was hysterical. *Id.* ¶¶ 64-65. Julie told Jane that she did not have to sit through the rest of the meeting. *Id.* ¶¶70.

While the Does stood in the hallway, just a step or two outside of the open door to the RHS conference room where the meeting was still taking place[3], Principal James stated:

> [S]ince I walked into this building, I immediately responded to what I knew was bullshit . . . this whole thing is going to blow up in her face, that is why I am going to go the extra mile and call MPD because I am sick of her, sick and tired of her and her mom. So I am going to call MPD and have a long and drawn out email just so I can embarrass her ass.

*Id.* ¶ 72. Principal James also stated to Dean Stevens, "**you should see the dress that she has got on**," and laughed and otherwise ridiculed Jane Doe. *Id.* ¶ 73. Julie Doe then returned to the conference room, and the meeting finished. *Id.* ¶ 74.

The Does left RHS and walked home, where they met with police officers. *Id.* ¶ 76. The police informed the Does that they had spoken to the RHS Principal, and they treated Jane Doe as though she were lying. *Id.* ¶¶ 75, 77. The police stated they were not going to arrest MP based on "what the principal said" that had diminished or otherwise downplayed Jane's report of sexual assault. *Id.* ¶¶ 75, 77. Julie Doe subsequently tried to escalate the police investigation, including to the Office of Attorney General, to no avail. *Id.* ¶ 78.

## IV.    The District Ignored Jane Doe's Title IX Civil Rights

Although the District admits they should have done so, not a single school administrator or employee informed the Does of Jane's civil rights under Title IX. *Id.* ¶¶ 79-80.

Nor did administrators comply with the District's "Grievance Policy and Procedure." *Id.* ¶¶ 81-90. This Policy identified steps that District officials – and a school's "Grievance Point of Contact" in particular – were supposed to take to ensure that the District investigated a student's report of sexual harassment and connected the student with the District's Title IX Coordinator.

---

[3] If Julie Doe had stepped back one or two inches, she would have been able to see directly into the conference room. *Id.* ¶ 66.

*Id.* ¶¶ 81-82. Pursuant to the Policy, filing a "grievance" initiated an investigation by the District, to be completed in ten days, followed by the issuance of a "Letter of Resolution," in which the District memorialized the allegations, steps it had taken to review the allegations, findings of fact, and whether or not the allegations were substantiated. *Id.* ¶ 82.

However, Principal James was unaware that the District even had a Grievance Policy and Procedure. *Id.* ¶¶ 50. She also did not know the District had a Title IX Coordinator, that she was supposed to report sex crimes to the Title IX Coordinator, or what constituted sexual harassment under Title IX. *Id.* ¶ 50. The District permitted Principal James, with no vetting or approval from the District's Central Office, to appoint the "Grievance Point of Contact" for RHS. 85-86. James appointed Intervention Coach Maurice Butler to the position. *Id.* ¶¶ 81, 86.

The District did not provide Mr. Butler with training on the Grievance Policy and Procedure, Title IX, or sexual harassment, which would have included an overview of the grievance process and how to address allegations that implicated Title IX. *Id.* ¶ 83. In fact, the District knew that, of its 110 Grievance Points of Contact during the 2016-2017 academic year, less than 25 had received this Title IX training. *Id.* ¶ 84. Unsurprisingly, Mr. Butler was unaware that he served as point of contact for Title IX matters at RHS, and he did not file a grievance for Jane Doe, which he should have done. *Id.* ¶¶ 87-88.

No school administrator ever informed the District's Civil Right Office of Jane Doe's complaint of sexual assault. *Id.* ¶ 89. The Does did not receive a "Letter of Resolution" or other documentation concerning the outcome of any investigation performed by the District with respect to Jane Doe's report of sexual assault. *Id.* ¶ 90.

## V.   <u>The District Denied Jane Doe a "Victim Transfer" to Another School</u>

After the sexual assault, Jane Doe understandably did not feel safe at RHS and did not

think she would be able to finish high school there. *Id.* ¶¶ 95-96, 131. The District has admitted that the sexual harassment perpetrated against Jane Doe would have been sufficient to constitute a hostile environment for Jane at RHS. *Id.* ¶ 97.

Milo Howard was a Specialist within the District's Office of Student Supports, and he was responsible for the (a) "immediate and voluntary," (b) "involuntary," (c) "victim," and (d) "discretionary "student transfer processes. *Id.* ¶ 98. The "victim transfer" process typically was initiated by a school administrator, who would inform Mr. Howard's office that a student had been the victim of a criminal offense and needed to transfer to another school for his or her safety or well-being. *Id.* ¶ 99. The victim transfer process could also be initiated by a parent, the Office of Attorney General, or the FBI. *Id.* ¶ 100. For a "victim transfer," Mr. Howard expected a school to prove him with substantiating documentation, like a police report or an investigation completed by CARE / the Civil Rights Office. *Id.* ¶ 101. Once that documentation was received, Mr. Howard would review it and make a transfer recommendation to the Instructional Superintendent, who made the ultimate decision regarding a transfer. *Id.* ¶ 102.

RHS did not submit a transfer request for Jane Doe. *Id.* ¶ 103. Instead, Julie Doe requested a transfer for Jane Doe. *Id.* ¶ 104. The Does hoped that the District would permit Jane Doe to transfer to Wilson High School or School Without Walls, schools much safer and more academically oriented than RHS. *Id.* ¶¶ 105, 131. This was the first time the Doe family had requested a transfer for Jane. *Id.* ¶ 106.

With respect to Jane Doe, Mr. Howard asked Dr. Pinder, "[w]as this a **valid sexual assault** or was this considered to be 'unfounded'?" *Id.* ¶ 107 (emphasis added). Dr. Pinder responded, "I am unaware of the conclusion of the investigation. Copying Principal James for

information on this. As I've explained to mom before we don't negotiate with parents on

placement." *Id.* ¶ 108. Mr. Howard responded:

> Exactly. The parent cannot be allowed to broker a school based upon the student's
> incident. If the student was truly a victim of a criminal offence then [the District]
> can provide a school assignment and stand firm with it. . . . If she was not a victim
> then she stays at [RHS].

*Id.* ¶ 109. On July 18, 2017, RHS Dean of Students James Taylor informed Mr. Howard that the

Office of Attorney General had declined prosecution. *Id.* ¶ 110, 116.

 Mr. Howard never received a Letter of Resolution concerning Jane Doe's report of sexual

assault, and he did not permit Jane to transfer schools. *Id.* ¶¶ 111-12. Had Mr. Howard received a

Letter of Resolution that stated Jane Doe's report of sexual assault was substantiated, he would

have granted Jane's victim transfer request. *Id.* ¶ 113.

## VI.  <u>Principal James Misrepresented the Sexual Assault to the District</u>

 On the evening of June 14, 2017, after the Does returned from their meeting with school

administrators at RHS, Jane and Julie Doe, together, listened to the recording of that meeting.

*Id.* ¶ 114. Julie Doe then emailed the recording to Dr. Pinder and Mayor Muriel Bowser. *Id.* ¶

115.

 On approximately June 22, 2017, Principal James watched video from RHS capturing

part of the assault that Jane Doe described. when she returned from vacation. *Id.* ¶¶ 116-18

James informed her supervisor, Instructional Superintendent Dr. Pinder, that she did not believe

Jane Doe's accusation of sexual assault. *Id.* ¶¶ 119-20. James told Dr. Pinder that MP and Jane

were "hand-and-hand" and "entered the bathroom mutually." *Id.* ¶ 121. She similarly

mischaracterized the assault in a June 26, 2017 email to Dr. Spence (Dr. Pinder's supervisor), in

which Principal James described the assault solely as "the boy kept trying to hold [Jane Doe]

down and kiss her." *Id.* ¶ 122.

On August 16, 2017, Dr. Pinder had the opportunity to observe the RHS video personally, and he determined that the video clearly showed that MP had pulled Jane Doe into school bathroom against her will. *Id.* ¶ 123. What Dr. Pinder saw in the video did not align with Principal James' characterization of the event, and it changed his perspective regarding the incident. *Id.* ¶¶ 119-21, 123-24. Dr. Pinder submitted an Incident Report to the District's Labor Management Employee Relations, requesting a formal investigation of Principal James. *Id.* ¶ 125. Dr. Pinder reported that he had listened to the audio recording of the June 14, 2017, meeting between Principal James, RHS administrators, and the Does, and stated:

> The conversation between Ms. James and Mr. Moss was quite concerning after [Julie Doe] left. During this discussion Ms. James indicated that she was going to call "MPD to embarrass" [Jane and Julie Doe]. She also indicated that she believed [Julie Doe] or [Jane Doe] was "full of shit."
>
> This is concerning for several reasons. First, it is the responsibility of the principal to take all allegations of misconduct very seriously and to ensure that these investigations are conducted professionally and without malice towards any student. **Additionally, MPD or other legal divisions should never be used to embarrass or humiliate a student,** but rather to conducts a fair and impartial investigation of the facts. Further, in my conversations with Ms. James about the incident she indicted to me that there was no evidence on the video of an assault. In fact, she indicated that it appeared that the young man and [Jane Doe] were hand-in-hand and enterer the bathroom mutually. Today, August 16, I was able to view the video of the incident. Clearly, the young man pulled [Jane Doe] in the bathroom against her will. And it was clear that when she exited the bathroom that she was upset/visibly anxious. This incident should have been handled very differently by Principal James. **Her clear distrust of [Jane Doe or Julie Doe] in the audio tape clouded her judgment and endangered student safety. Additionally, her reckless and unprofessional conversation with Mr. Moss was a breach of the trust expected of our school leaders when handling such a sensitive matter**. Finally, Ms. James was not transparent with me about the nature of this incident or her response to it.

*Id.* ¶ 126. Dr. Pinder considered Principal James' statement – that she would make a report to MPD for the purpose of embarrassing a student – as potentially biasing any investigation. *Id.* ¶ 127. The District formally reprimanded Principal James for her misconduct. *Id.* ¶ 128.

After Dr. Pinder reviewed the video footage of the sexual assault, he requested that Jane Doe be permitted to transfer to Wilson High School ("Wilson"). *Id.* ¶ 129. This transfer to Wilson occurred at the last minute, just a week before school started. *Id.* ¶ 130.

Over the course of that summer, Jane Doe suffered anxiety and stress due to Principal James and the District's response to her report that MP sexually assaulted her. *Id.* ¶ 13. She explained:

> On June 14, 2017, I was devastated when I learned that Principal James stated she thought my report of sexual assault was "bullshit," she wanted to "embarrass" me, and she laughed and made fun of me, saying "you should see the dress that she has got on." The sexual assault was horrifying. But knowing that my school principal would say those things about me was nearly just as bad.. . . .

> Having been the victim of sexual assault, being humiliated and degraded by Principal James who treated me like a liar and blamed me for being assaulted, and facing the prospect of having to transfer to another school like [RHS] – it all caused me [to] distrust people in general, and especially people in authority like school officials.

> All during the Summer of 2017 I had to wait and hope that the District would let me transfer to either Wilson or School Without Walls, a much safer school than the three offered to me,[4] and this caused me anxiety and stress. I could not understand why the District would disregard my safety and education, knowing that I was dragged into a boys' bathroom and sexually assaulted at school, during the school day, when school officials were supposed to keep me safe. I felt that no adult at school would keep me safe. *Id.* ¶ 131.

Julie Doe testified to the changes she observed in Jane Doe during the Summer of 2017:

> My baby began shrinking. She felt extremely betrayed by people in positions of authority.  So of course, you know, she became really, really distrusting. Again, Jane was a vibrant, outgoing, lovely young lady. And I had to watch her shrink into a shell of not wanting to come out of her room. Wearing super baggy clothes because she didn't want to be branded as 'loose' or like she was asking to be sexually assaulted because of how she dressed. She could not believe that people she trusted treated her this way. That people she liked and she looked up to treated

---

[4] While the District denied Jane Doe a "victim transfer," it offered her the option of transferring to three schools in the District – Phelps, Eastern, or Cardozo – which were just as unsafe as RHS, if not even more unsafe, and were less academically oriented than RHS. *Id.* ¶ 216.

her this way. They had a responsibility to her. And they not only failed her but they blamed her for being sexually assaulted. *Id.* ¶ 132.

## VII.   The District Did Not Discipline MP

The next academic year (2017-2018), MP transferred to his "neighborhood" school within the District. *Id.* ¶ 91. Dr. David Pinder was the Instructional Superintendent for that school, and he informed the school of the incident. *Id.* ¶ 92. However, the District did not discipline or suspend MP for his sexual assault of Jane Doe, and there is no documentation concerning the assault in any of his educational records. *Id.* ¶¶ 93-94.

## VIII.   The District Failed to Provide Title IX Training or Education to Wilson Administration and Students

Kimberly Martin was the Principal of Wilson High School. *Id.* ¶ 133 Prior to the 2017-2018 academic year, the District had not provided Principal Martin with training on Title IX, student-on-student sexual harassment, retaliation, providing accommodations to a student who reported being sexually assaulted, or any District policy regarding Title IX. *Id.* ¶ 134. There was no Title IX point of contact at Wilson. *Id.* ¶ 135. Although Wilson had a student handbook for the 2017-2018 and 2018-2019 academic years, it did not contain any information regarding accommodations for students who report sexual assault. *Id.* ¶ 136.

## IX.   The District Took Punitive Actions against Jane Doe

### A.   Sophomore Year, 2017-2018

Jane Doe transferred to Wilson for her sophomore year, the 2017-2018 academic year. *Id.* ¶ 137. By this point in time, the District purportedly had concluded that Jane's report of sexual assault was substantiated, but it did not provide this determination, through a Letter of

Resolution or otherwise, to the Does or Principal Martin.[5] *Id.* ¶ 138. The District did not provide

Wilson with transfer paperwork for Jane Doe, and neither Principal James nor any other RHS

administrator informed Principal Martin about Jane Doe's report of sexual assault or an

investigation of that report. *Id.* ¶¶ 140-41.

For Jane Doe, Wilson was a better school than RHS, but she struggled in different ways,

explaining, "I did not trust most of my teachers or school administrators. I had a hard time

focusing on schoolwork because [I] felt sad and depressed a lot of the time, especially in my first

year there." *Id.* ¶ 142. Worse yet, from the very beginning of Jane Doe's sophomore year at

Wilson, the District began penalizing here for unexcused absences that should have been

excused, or when she was not even absent. *Id.* ¶ 143. The District marked even her previously-

approved therapy appointments as unexcused. *Id.* ¶ 144. This caused Jane Doe to suffer extreme

stress, anxiety, and depression, which in turn caused her to miss more school and made it more

difficult to finish her assignments. *Id.* ¶ 145.

During Jane Doe's sophomore year at Wilson, the District marked her absent for **74 days**,

with **48** of them "unexcused." *Id.* ¶ 146. Because the District incorrectly marked Jane as

unexcused for these absences, a "PINS[6]" truancy case was opened against the Doe family. *Id.* ¶

147. The District had incorrectly marked Doe as unexcused or absent for all but seven of those

unexcused days. *Id.* ¶ 148.

Jane Doe's final grades for the year were 3 Bs, 6 Cs, and 2 Ds. *Id.* ¶ 149.

---

[5] As a <u>practice</u>, the District did not provide or otherwise make available a Letter of Resolution to
the school to which a victim of sexual assault transferred; the District only provided a Letter of
Resolution to the school where the report of sexual assault originated, which in this case was
RHS. *Id.* ¶ 139.
[6] This was a "Person In Need of Supervision" proceeding, conducted pursuant to Washington
D.C. truancy laws.

### B.      Junior Year, 2018-2019

At the beginning of Jane Doe's junior year, Julie Doe provided the District with medical documentation from Georgetown University Hospital Department of Psychiatry to excuse Jane Doe from school on Mondays so that she could attend therapy appointments. *Id.* ¶ 156. At that point in time, Jane Doe's class rank was 304 out of 409.[7] *Id.* ¶ 150.

On approximately September 27, 2018 – just after Jane Doe had filed her federal lawsuit against the District and the Washington Post published an article regarding Principal James – Principal Martin and other Wilson administrators "gleaned" that Jane had reported being sexually assaulted at RHS. *Id.* ¶¶ 152-55. Principal Martin also knew that, as of October 17, 2018, the District had marked Jane Doe with 13 unexcused absences, and that Jane was attending therapy appointments associated with the sexual assault. *Id.* ¶¶ 157, 159. However, Martin did not reach out to CARE or any other person in the District who had Title IX responsibilities to discuss the situation, nor did she instruct teachers that they should excuse Jane's absences for therapy appoints. *Id.* ¶¶ 157-59.

In September 2018, the District removed Jane Doe from the cheerleading team because of her absences. *Id.* ¶ 162. Jane was not permitted to attend cheerleading on days that she missed school, and this included days when she was absent for therapy appointments and due to her anxiety and depression about the incidents that had occurred. *Id.* ¶ 163. Also, when Jane's grades fell below a certain GPA, she was not allowed to cheer. *Id.* ¶ 164.

---

[7] A Wilson class ranking of "1" meant that a student was at the top of her class, whereas the last number meant that a student was at the bottom of the class. *Id.* ¶ 151.

Around this same time, a school security guard said to Jane Doe, "oh, you're the girl from Roosevelt that was sexually assaulted."[8] *Id.* ¶ 161. And Ms. Ward, a teacher at Wilson, approached Jane Doe, said she know what happened to Jane at her previous school, and told Jane she should stop using being sexually assaulted as an "excuse." *Id.* ¶ 160.

On October 22, 2018, Wilson provided 50 make-up assignments to Jane Doe for one class, and required that she complete them in just two days, or she would receive an F grade. *Id.* ¶ 165.

The Does filed a grievance with the District in October 2018, reporting that Jane had been marked absent and unexcused when she should have been excused for medical appointments, Jane had been removed from cheerleading because of absences, and Wilson had required her to complete 50 assignments in two days. *Id.* ¶ 166. The District, in letters dated November 27, 2018 and January 18, 2019, defended these actions, with no mention whatsoever of Jane Doe's report of sexual assault or Title IX rights. *Id.* ¶ 167.

In November 2018, the Does began seeking disability accommodations and special education for Jane, through a "504 meeting." *Id.* ¶ 168.

In December 2018, Jane Doe was diagnosed with post-traumatic stress disorder ("PTSD"). *Id.* ¶ 169. At this point in time, Jane was ranked 393 out of 414 students in her class. *Id.* ¶ 170.

In March 2019, Jane Doe stopped attending therapy sessions because the District continued marking her absent and would not allow her to make up work, which caused her

---

[8] The District acknowledged that this occurred and the security guard's conduct constituted "harassment." *Id.* ¶ 161.

grades to drop further. *Id.* ¶ 171. Jane had to pick and choose whether she wanted to attend therapy or run the risk of facing continuing truancy issues with the District. *Id.* ¶ 172.

On May 10, 2019, the Does, through their attorney, sent correspondence to Principal Martin, reminding her that Jane Doe was diagnosed with PTSD as the result of the violent sexual assault that led to her transfer to Wilson, and requesting that Jane's absences for standing therapy appointments be excused. *Id.* ¶¶ 175-78. The Does also informed the District that:

- "There are numerous stressors in the school environment that are affecting [Jane Doe's] ability to focus and learn which we believe could be alleviated greatly providing some accommodations to ensure [Jane Doe] feels safe, comfortable and in a state of mind where she can meaningfully access the general education curriculum."

- On days when Jane Doe attended therapy, "[Jane Doe] is often upset, distracted, tired and unable to focus or talk must . . . which is completely understandable considering the underlying reasons for her treatment and how recent her traumatic experience was."

- "[Jane Doe's] progress reports and EdModo contain several inconsistences and her failing grades or "no mark" grades are causing serious anxiety about whether or not [Jane Doe] will be promoted to the 12th grade."

*Id.* ¶ 177. The Does requested a multi-disciplinary team meeting to confirm that Jane's grades accurately reflected the worked she had completed, and to discuss testing needed to determine her eligibility for special education and related services.[9] *Id.* ¶ 178.

On June 6, 2019, the Does met with school officials and stressed the importance of amending Jane Doe's inaccurate attendance records, particularly because the failure to do so was impacting her grades and causing her undue stress and anxiety, compounded by her existing PTSD. *Id.* ¶ 179.

---

[9] The District ultimately denied Does' request for special education services. *Id.* ¶ 178.

On June 18, 2019, the District informed Jane that she had failed U.S. History due to having more than 30 unexcused absences from class, and she should attend summer school. *Id.* ¶ 180. The Does responded and reiterated the request that the District correct Jane Doe's attendance records, including for U.S. History. *Id.* ¶ 181. Principal Martin responded by instructing the attendance counselor for Wilson to "feel free **not** to reply to" the Does' "accusations." *Id.* ¶ 182 (emphasis in original).

On June 22, 2019, the Does escalated their concerns to Scott Barash (General Counsel for the District) and Drewana Bay (Instructional Superintendent). *Id.* ¶ 183. The Does reminded them that Jane had been diagnosed with PTSD, was seeking disability accommodations, and had inaccurate academic and attendance records. *Id.* The Does informed the District that it was ignoring its responsibilities under Title IX. *Id.*

On July 8, 2019, the Does provided the District a detailed analysis demonstrating that the District had incorrectly marked Jane Doe as "unexcused" <u>47 times</u> for which she should have been excused. *Id.* ¶ 184.

On July 30, 2019, the Does – left with no other choice given the District's refusals to act – filed another grievance, complaining that the District, yet again, had improperly marked Jane Doe as absent and unexcused when she was in pre-approved counseling sessions. *Id.* ¶ 185.

At the end of Jane Doe's junior year, the District had marked her absent **for <u>106</u> total days, <u>56</u> of them "unexcused."** *Id.* ¶ 173. Jane's final grades for her junior year were one A, 2 Bs, 2 Cs, 3 Ds, and 2 Fs. *Id.* ¶ 174.

## C.     <u>Senior Year, 2019-2020</u>

In a letter dated September 13, 2019, the District admitted it had incorrectly marked 10 of Jane Doe's absences as "unexcused." *Id.* ¶ 186. However, those mistakes were not rectified

immediately, and it took additional time for to modify Jane Doe's attendance record. *Id.* ¶ 187.

During a meeting to discuss a Section 504 plan for Jane, Mr. Harberger, a teacher, said that Jane should stop using being sexually assaulted as an excuse to get out of class. *Id.* ¶ 188.

Jane Doe ranked 351 out of 407 students. *Id.* ¶ 189. As of January 28, 2020, her grades included one A, one C, and an F. *Id.* ¶ 190.

**X.    Defendants Caused Jane Doe to Suffer Emotional and Psychological Injuries**

Jane Doe began attending therapy during her sophomore year in the District, and she was diagnosed with PTSD in December 2018. *Id.* ¶¶ 144, 148, 169. Jane has experienced suicidal thoughts and behavior, insomnia, recurrent and involuntary distressing memories, including with respect to being blamed for sexual assault because of how she was dressed, and of not being believed. *Id.* ¶ 206.

Dr. Eileen Ryan, a Doctor of Osteopathic Medicine, professor, and the Vice-Chair of Clinical Services for the Department of Psychiatry and Behavior Health at the Ohio State University Wexner Medical Center, is Plaintiff's expert in this case. *Id.* ¶¶ 203-05. Dr. Ryan has opined that the sexual assault Jane Doe suffered at RHS and the District and James' negative response to the report of that sexual assault has caused Jane to suffer from chronic PTSD and major depressive disorder, severe. *Id.* ¶ 207. Principal James' disbelieving and blaming response to Jane Doe's report of sexual assault exacerbated Jane's PTSD symptomatology and is also a factor in her depression. *Id.* ¶¶ 210-13.

**ARGUMENT**

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Anderson v.*
*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact "is 'genuine' . . . if
the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*
"[A] moving party is entitled to judgment as a matter of law only if the nonmoving party 'fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial.'" *Czekalski v. Peters,* 475 F.3d 360,
363 (D.C. Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

   In ruling on a motion for summary judgment, "a court must view the evidence 'in
the light most favorable to the opposing party.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Adickes v.*
*S.H. Kress & Co*., 398 U.S. 144, 157 (1970)). "'[T]he evidence of the nonmovant is to be
believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* at 1863 (quoting
*Anderson*, 477 U.S. at 255); *see also id.* at 1868 (emphasizing "the fundamental principle that at
the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving
party"). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a judge . . . ."*Anderson*, 477 U.S. at
255.

   "'[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the
claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
versions of the truth at trial.'" *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting
*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "'If material facts
are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is
not available.'" *Id*. (quoting *Kuo–Yun Tao v. Freeh,* 27 F.3d 635, 638 (D.C. Cir. 1994)).

**I.**     **The District Was Deliberately Indifferent to Jane Doe's Report of Sexual Assault**

Title IX of the Education Amendments of 1972 provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Individual plaintiffs may seek damages under Title IX when a recipient of federal funding, like the District, fails to comply with Title IX's requirements. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). Title IX liability arises "from 'an official decision by the recipient not to remedy the violation.'" *Davis*, 526 U.S. at 642 (quoting *Gebser*, 524 U.S. at 290).

To establish a Title IX claim based on student-on-student sexual harassment, the plaintiff must establish:

(1) She was a student at an educational institutional that received federal funds;

(2) She suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived her of equal access to the educational opportunities or benefits provided by her school;

(3) The school, through an official possessing the authority to address the alleged harassment and institute corrective measures, had actual notice or knowledge of the alleged harassment; and

(4) The school acted with deliberate indifference to the alleged harassment.

*See Davis*, 526 U.S. at 646-52; *Gebser*, 524 U.S. at 290-92; *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021).[10]

---

[10] The D.C. Circuit Court most recently articulated the requisite Title IX elements as: "(1) an appropriate official at the school, i.e., one with authority to institute corrective measures, (2) had actual notice of the harassment and (3) demonstrated deliberate indifference to the harassment." *Blue v. District of Columbia*, 811 F.3d 14, 21 (D.C. Cir. 2015).

The District has moved for summary judgment on elements three and four of Jane Doe's claim – actual notice and deliberate indifference.

A.    **The District Had Actual Notice of Sexual Harassment Against Jane Doe**

A school has "actual knowledge" or "actual notice" when sexual harassment is reported to an "appropriate person . . . with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).[11] The Fourth Circuit recently held, "when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes." *Fairfax Cty.*, 1 F.4th at 265, 270 n.9 (remanding Title IX case for a new trial where the jury was improperly instructed on legal standard for actual notice). This definition comports with the "nearly unanimous" view of other circuit courts. *Id.* at 267 (collecting cases). An "appropriate person" is "a school official who has the authority to halt known abuse, perhaps by measures such as transferring the harassing student to a different class, suspending him, curtailing his privileges, or providing additional supervision." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999). School administrators, principals, and assistant principals are commonly found to be "appropriate persons." *See, e.g., Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457 (8th Cir. 2009); *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).

---

[11] Under Title IX, courts use the terms "actual notice" and "actual knowledge" interchangeably. *See, e.g.*, *Gebser*, 524 U.S. at 290; *Fairfax Cty.*, 1 F.4th at 263 n.4.

Here, Instructional Superintendent Pinder, Principal James, Dean Stevens, and Assistant Principal Moss all qualified as "appropriate persons" because they had the authority to discipline students. SMF ¶¶ 9, 12, 14, 16. The District received "actual notice" when Julie Doe emailed Dr. Pinder and Principal James and reported, "[a] young man, with the name [MP] pulled my daughter into a male restroom yesterday and sexually assaulted her," and on the following day, when Jane Doe reported the sexual assault to Principal James, Dean Stevens, and Assistant Principal Moss. *Id.* ¶¶ 55, 60.

The District argues Plaintiff cannot show actual notice because it did not receive notice that MP's sexual assault of Jane Doe was "ongoing." Doc. 66 at 11. The school's argument is based solely on *Blue*, where a plaintiff alleged that her school failed to stop a teacher's continuing sexual abuse of her. *Blue*, 811 F.3d at 32. Jane Doe's claim is entirely different because she does not claim that the District's pre-assault deliberate indifference resulted in the failure to stop or prevent MP's sexual assault of her, which was the theory in *Blue*. Instead, Plaintiff's claim is based on the District's discrimination and deliberate indifference after it received actual notice of MP's sexual harassment against her.

Accordingly, based on the undisputed facts and as a matter of law, Jane Doe has established the "actual notice" element of her Title IX claim.

**B.**     **A Reasonable Jury Could Find that the District Was Deliberately Indifferent**

A school's "response – or failure to respond – must amount to deliberate indifference to discrimination." *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 25-26 (D.D.C. Mar. 27, 2018). "Deliberate indifference" occurs "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Davis*, 526 U.S. at 648; *Cavalier*, 306 F. Supp. 3d at 26. Deliberate indifference is also described as "an official decision

by the [funding] recipient not to remedy the [Title IX] violation." *Id.* at 968 (first alteration in original) (quoting *Gebser*, 524 U.S. at 290 (1998)).  In evaluating this element, the court considers "the conduct of the funding recipient, not the alleged harasser . . . to ensure that [the court] hold[s] the funding recipient liable only if the funding recipient's deliberate indifference 'subjected' the plaintiff to discrimination." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1293 (11th Cir. 2007).  A Title IX plaintiff must "prove that the deliberate indifference occurred in response to discrimination she faced."  *Id.* at 1295.

The District contends that Jane Doe cannot show deliberate indifference because she did not suffer further harassment from MP, or was not "exposed" to potential further harassment from him. This argument must be rejected. Although the D.C. Circuit Court has not addressed the issue, the First, Fourth, and Eleventh Circuits are in agreement that the theory articulated by the District is <u>not</u> the only route to establishing Title IX liability in a peer sexual harassment case, and a school may be held liable where the combined systemic effect of the sexual harassment and the school's response effectively denies the victim access to a scholastic program or activity. *Fairfax Cty.*, 1 F.4th at 273-74; *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172-73 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246 (2009); *Williams*, 477 F.3d at 1295-97 (11th Cir. 2007); *see also Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1380 (M.D. Ga. 2015), *aff'd* 688 F. App'x 791 (11th Cir. 2017) ("while the 'further discrimination' may be sexual harassment the plaintiff experienced, this need not be the case," and "further discrimination" occurs when a school's deliberate indifference prevents the plaintiff from attending school).

Notably, the Fourth Circuit recently rejected the very argument made by the District in a case with facts similar to those here. *Fairfax Cty.*, 1 F.4th at 272. In *Fairfax County*, a student

reportedly sexually assaulted his classmate while they were traveling on school band trip. *Id.* at

261. The assault was subsequently reported to school administrators, who investigated,

determined the reported conduct was not sexual assault, and did not discipline the perpetrator *Id.*

at 262. The victim received counseling for multiple weeks, was diagnosed with adjustment

disorder with anxiety, and – even after the assailant graduated and was no longer at the school –

found it difficult to enjoy and fully participate in band classes. *Id.* at 262. The school provided

the victim with some accommodations to help her cope with the trauma resulting from the sexual

assault. *Id.* at 262.

The victim brought a Title IX claim against the school, claiming deliberate indifference

to the report she was sexually harassed by a fellow student. *Id.* at 261. The dissent in *Fairfax*

*County* contended, like the District here, that the school could not be found deliberately

indifferent because it received notice of the sexual harassment "only after the fact," and "no

school conduct, or lack thereof, caused any [further or continued] sexual harassment." *Id.* at 273.

The majority disagreed and stated, "Title IX liability based on student-on-student harassment is

not necessarily limited to cases where such harassment occur[s] after [the school] receives notice

and is caused by the school's own post-notice conduct." *Id.* The court explained– under *Davis'*

explanation that a school could be liable under Title IX where its deliberate indifference

"caused" a student to undergo harassment or made the student "liable or vulnerable" to

harassment – courts have found Title IX liability where a plaintiff alleged "a single incident of

pre-notice harassment." [12] *Id*. The court stated:

---

[12] Although the District has not moved for summary judgment on the issue, it is well-established
that one incident of sexual assault may be sufficiently severe, pervasive, and objectively
offensive conduct for Title IX purposes.  *See, e.g.*, *Williams*, 477 F.3d at 1298; *Fitzgerald,* 504
F.3d at 172; *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 n.4 (6th Cir. 2000)

Even a single incident of sexual harassment, if sufficiently severe, can inflict serious lasting harms on the victim – physical, psychological, emotional, and social. **And where such harms deprive the victim of the ability to fully participate in or to benefit from the educational opportunities provided by their school, and where this deprivation remains unremedied or is compounded as a result of the school's deliberate indifference, the victim surely is "denied access to educational benefits and opportunities on the basis of gender" – which Title IX clearly prohibits**. In such situations, the school's inadequate response to the alleged sexual harassment leaves the victim more vulnerable to further harassment.

*Id.* at 274 (emphasis added). The court then held "a school may be held liable under Title IX if

its response to a single incident of severe sexual harassment, or the lack thereof, was clearly

unreasonable and thereby made the plaintiff more vulnerable to future harassment or further

---

(affirming trial verdict against school on Title IX claim, stating "[w]ithin the context of Title IX, a student's claim of hostile environment can arise from a single incident"); *Doe v. Brighton Sch. Dist. 27J*, 2020 U.S. Dist. LEXIS 30848, at *17 (D. Colo. Feb. 24, 2020); *Doe v. Forest Hills Sch. Dist.*, No. 1:13-cv-428, 2015 U.S. Dist. LEXIS 175321, at *37-38 (W.D. Mich. Mar. 31, 2015) (denying defendant's summary judgment motion and holding a jury could determine single sexual assault of plaintiff met this Title IX element); *McGinnis v. Muncie Cmty. Sch. Corp.*, No. 1:11-cv-1125, 2013 U.S. Dist. LEXIS 79548, at *35-37 (S.D. Ind. June 5, 2013) (rejecting argument that a single incident of sexual assault cannot satisfy element); *Lopez v. Metro. Gov't*, 646 F. Supp. 2d 891, 913-15 (M.D. Tenn. 2009) (denying summary judgment motion and finding issue of whether one act of forced fellatio established element was a jury question); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 269-72 (E.D.N.Y. 2009) (holding a jury should decide whether one act of sexual harassment satisfied the element); *J.K. v. Ariz. Bd. of Regents*, No. CV 06-916, 2008 U.S. Dist. LEXIS 83855, at *41 (D. Ariz. Sept. 29, 2008) (denying defendant's summary judgment motion, stating it was undisputed that rape of student constituted requisite degree of sexual harassment); *M. v. Stamford Bd. of Educ.*, No. 3:05-cv-0177, 2008 U.S. Dist. LEXIS 51933, at *23-25 (D. Conn. July 7, 2008) (denying school's summary judgment motion and finding a jury "could reasonably conclude" one student-against-student sexual assault satisfied this element); *Kelly v. Yale Univ.*, No. 3:01-CV-1591, 2003 U.S. Dist. LEXIS 4543, at *8-9 (D. Conn. Mar. 26, 2003) (denying school's summary judgment motion and holding single sexual assault was sufficiently severe). The U.S. Department of Education ("DOE") also supports the position that one incident of sexual misconduct may create a hostile education environment and explains, "[t]he more severe the conduct, the less the need to show a repetitive series of incidents; this is particularly true if the harassment is physical.  For instance, if the conduct is more severe, e.g., attempts to grab a female student's breasts or attempts to grab any student's genital area or buttocks, it need not be as persistent to create a hostile environment." DOE, *Revised Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students, or Third Parties*, 2001 ("2001 Guidance"), at 6, available at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.

contributed to the deprivation of the plaintiff's access to educational opportunities. *Id.* at 274.

The court concluded that the evidence in the record, viewed in the light most favorable to the plaintiff, could persuade a reasonable jury to find that the school was deliberately indifferent to the plaintiff's report of sexual harassment. *Id.* at 271. That evidence included: the school did not offer the victim any emotional support in the days after the reported assault; the school principal and assistant principal made jokes about the reported incident; the investigating administrator was accusatory and sarcastic, and made the victim feel disbelieved and "was in the wrong"; and the school's investigation was incomplete. *Id.* at 271-72.

Here, the sexual assault Jane Doe suffered and the actions the District took in response to her report of assault are even more egregious than those in Fairfax County, and they undoubtedly had the combined, systemic effect of denying Jane educational benefits and opportunities, if not outright destroying her high school education altogether. MP's sexual assault of Jane involved dragging her, against her will, into a boys' restroom, where he isolated her in a bathroom stall, groped her breasts and buttocks, tried to lift up her dress, and kissed her so hard that he left a bruise on her neck, while she cried and yelled at him to stop. SMF ¶¶ 32-35. The video footage of just the first part of that assault – showing MP pulling Jane into the bathroom while she was staunchly resisting – is shocking, and it should be sufficient to establish the severity of the assault. After Jane reported an undeniably violent sexual assault to the District:

- Principal James made fun of, blamed, humiliated, and degraded Jane Doe, described Jane's report of sexual assault as "bullshit," and said she would contact law enforcement in order to "embarrass" Jane;

- Principal James misrepresented the sexual assault to her supervisors, telling them she did not believe Jane Doe, and claiming Jane and MP entered the bathroom "mutually," were "hand-in-hand," and MP only tried to kiss Jane Doe;

- Principal James responded to Jane's report of sexual assault with such bias and disbelief that she likely interfered with law enforcement's investigation and the potential criminal prosecution of MP;

- School administrators did not comply with the District's Grievance Policy, did not file a grievance for Jane Doe, did not connect her to the District's Title IX Coordinator, and did not provide the Does with notice of any outcome of an investigation of Jane's report;

- The District did not sanction or discipline MP;

- The District denied Jane Doe a "victim transfer" because she was not the victim of a "valid sexual assault," and

- No administrator informed the Does of Jane's Title IX rights.

*Id.* ¶¶ 62, 72-73, 77-78, 81-82, 88-90, 95-114, 118-28, 131-32.

When the District, at the last moment, permitted Jane Doe to transfer to Wilson, the District failed to inform Wilson administration that Jane was a victim of sexual assault. *Id.* ¶¶ 137-42. For the next three academic years, the District incorrectly marked Jane as absent and unexcused, which resulted in truancy charges against the Does, including a PINS proceeding, and Jane failing her U.S. History class and being removed from the cheerleading team,. *Id.* ¶¶ 143-48, 162-63, 171-73, 180. The District's actions forced Jane to choose between attending therapy or facing continuing truancy issues. *Id.* ¶¶ 171-72. It required her to finish 50 homework assignments in two days or receive a failing grade. *Id.* ¶ 165. Teachers and a security guard harassed Jane Doe, and the District knew of and substantiated at least one of these instances. *Id.* ¶¶ 160-61, 188. The Does repeatedly informed the District that it was incorrectly recording Jane's attendance, and that its actions were causing Jane Doe emotional and psychological distress. *Id.* ¶¶ 146, 148-51,156-59, 166-70, 173-79, 181-85. The District defended its actions and would not stop its erroneous attendance-keeping for Jane, and even denied Jane special education accommodations, all the while knowing that Jane was attending therapy, had been

diagnosed with PTSD, was – by the District's count – absent a total of **181 days** from school in

her sophomore and junior years,[13] had plummeting grades, and was close to the bottom of her

class. *Id.* The District's "response" to Jane's report of sexual assault caused her to suffer extreme

stress, anxiety, and depression, which in turn caused her to miss more school and made it more

difficult to finish her schoolwork. *Id.* ¶ 145. The District's "response" was clearly unreasonable

by any measure, it created an unconscionably hostile educational environment for Jane[14], and it

caused Jane to suffer academically, emotionally, socially, and psychologically.

None of the District's cited cases are relevant here, as they are entirely factually distinct,

and the courts in those cases did not consider the issue here, namely whether deliberate

indifference is established because the sexual harassment a plaintiff suffered was sufficiently

severe and the school's response was sufficiently egregious. If there is any question on this issue,

then it must be left for a jury to decide, and the District's motion for summary judgment should

be denied.

## II.   Jane Doe Has Established Her Title IX Retaliation Claim

Retaliation against a person who "has complained of sex discrimination is another form

---

[13] These absences alone informed the District that any purported measure it was taking in response to Jane Doe's report of sexual assault was not working, and was instead causing her additional harm. SMF ¶¶ 192-202; *see also Vance*, 231 F.3d at 261 ("[W]here a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.").

[14] The fact that, even after two incidents of sexual violence at RHS – the gang rape that occurred in August 2016, and MP's sexual assault of Jane Doe in June 2017 – the District still had not implemented Title IX training for the school community demonstrates its general deliberate indifference to, and tolerance of, peer sexual harassment, and serves to further substantiateJane Doe's Title IX claim. SMF ¶¶ 22-26, 46-53, 81-88, 133-36. To the extent the District had one Title IX policy, its Grievance Policy and Procedure, it was worth nothing more than the paper it was written on, as the District failed to even inform, let alone train, its administration and personnel on the policy. SMF ¶¶ 48-50, 53, 81-84, 87, 134.

of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). "Reporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished.  Indeed, if retaliation were not prohibited, Title IX's enforcement scheme would unravel[.]" *Id.* at 180-81.

 As in the Title VII context, a plaintiff asserting Title IX retaliation must "'establish three elements: that she made a charge or opposed a practice made unlawful by Title [IX], that the [school] took a materially adverse action against her, and that the [school] took the action because of her protected conduct.'" *Cavalier*, 306 F. Supp. 3d at 36 (quoting *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).  Reporting sexual harassment is a protected activity under Title IX. *See Jackson*, 544 U.S. at 174 ("When a funding recipient retaliates against a person because [she] complains of sex discrimination, this constitutes intentional discrimination' 'on the basis of sex,' in violation of Title IX.").  A "materially adverse action" is one that "'might have dissuaded a reasonable [sexual assault victim like the plaintiff] from making or supporting a change of discrimination.'" *Cavalier*, 306 F. Supp. 3d at 36 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Whether an action is sufficiently "adverse" depends on context and the particular circumstances.  *Burlington*, 548 U.S. at 69; *Cavalier*, 306 F. Supp. 3d at 36.

 Causation may be established through direct or circumstantial evidence. *See Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2019). Direct evidence is sufficient, on its own, to entitle a plaintiff to a jury trial and includes, for example, a statement that in and of itself shows bias in the action taken against the plaintiff. *See id.* 394. If a plaintiff does not present direct evidence, she may rely on indirect evidence, and the issue then becomes

whether the defendant's purported legitimate non-discriminatory reason for it adverse action is pretext. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). The "central question" in considering a defendant's motion for summary judgment on a Title IX retaliation claim is whether the plaintiff produced sufficient evidence for a reasonable jury to find that the school's asserted non-discriminatory reason was not the "actual reason," and the [school] retaliated against the plaintiff on a prohibited basis. *See Oviedo*, 948 F.3d at 395; *Brady*, 520 F.3d at 495. A plaintiff may claim an inference that a school's reasons are pretextual, "and that the real motive was retaliation -- by producing evidence of the [school's] 'inconsistent or dishonest explanations, its deviation from established procedures or criteria . . .or other relevant evidence that a jury could reasonably conclude evinces an illicit motive.'" *Burton v. Donovan*, 210 F. Supp. 3d 203, 212 (D.D.C. 2016) (quoting *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). "Other relevant evidence" can include "temporal proximity between a [school's] knowledge of protected activity and an adverse . . . action." *Id.*, quoting *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). "Plaintiffs may survive summary judgment based solely on evidence of pretext when the evidence is such that a reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker*, 798 F.3d at 1096.

It is undisputed that Jane Doe engaged in a protected activity when she reported MP's sexual assault to the District on June 14, 2017. SMF ¶¶ 54, 58, 61. Also undisputed is that Principal James, an administrator at the school, responded to Jane's report by humiliating, belittling, blaming, and laughing at Jane, and stating that she would contact law enforcement to "**embarrass her ass**." *Id.* ¶¶ 62, 71-73. Jane and Julie Doe both understand that Principal James interfered with the police investigation of MP, an understanding supported by Instructional

Superintendent Dr. Pinder. *Id.* ¶¶ 77-78, 126-27. A jury will very likely find that actions like those of Principal James would dissuade any freshman high school student who is a victim of sexual assault from reporting the assault to her school principal. Principal James' biased statements constitute <u>direct</u> evidence on Jane Doe's retaliation claim and entitle her to a jury trial. *See Oviedo*, 948 F.3d at 394. And even if this evidence is considered "indirect," and Plaintiff strongly contends it is not, the District has not offered, and cannot offer, a "legitimate non-discriminatory" reason for Principal James' actions, given that the District formally reprimanded her for that misconduct. *Id.* 128.

Jane Doe also engaged in protected activity when she filed her federal lawsuit on September 21, 2018. *Id.* ¶ 152. On October 22, 2018, the District provided her 50 make-up assignments that she had to complete in two days or receive an F. *Id.* ¶ 165. Jane then filed a grievance against the District. *Id.* ¶ 166. And the District continued marking her unexcused and absent, denied her request for special education services, and failed her from U.S. History. Principal Martin went so far as to instruct Wilson's attendance counselor to ignore the Does' "accusations" regarding absences. These actions were devastating to Jane and would dissuade a high school student in her shoes from filing a federal lawsuit against the District. The District cannot possibly offer any legitimate or non-discriminatory reason for these acts. Temporal proximity between the filing of Jane's federal complaint and the 50 make-up assignments establishes pretext, and a reasonable jury may find that the District wanted to make an example of Jane Doe, who dared to try and hold it responsible for violation of her Title IX rights.

The District's argument that Jane Doe's retaliation claim fails for the "same reasons" as her deliberate indifference claim must be rejected, as the legal standards applicable to a deliberate indifference claim are distinct from those utilized in analyzing retaliation. At least one

court has rejected a similar argument, explaining that a plaintiff's failure to state a claim for

sexual harassment under Title IX was not determinative on his retaliation claim. *Terry v. Young*

*Harris Coll.*, 106 F. Supp. 3d 1280, 1297 (N.D. Ga. 2015) ("A retaliation claim does not depend

on the success of a sexual harassment claim"). Utterly unavailing is the District's contention that

the Title VII retaliation analysis should not be applied to a Title IX retaliation claim, for which it

telling fails to cite a single supporting case. This District has applied the Title VII standard in

Title IX retaliation cases, as have other federal courts.  *See, e.g., Milligan v. Bd. of Trs. of S. Ill.*

*Univ.*, 686 F.3d 378, 388 (7th Cir. 2012); *Collins v. Jackson Pub. Sch. Dist.*, 609 Fed. App'x

792, 795 (5th Cir. 2015); *Cavalier*, 306 F. Supp. 3d at 36; *Wells v. Hence*, 235 F. Supp. 3d 1, 9-

10 (D.D.C. 2017); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1359 (M.D. Ga. 2007)..

Finally, the District's argument that it took no adverse action against Jane Doe is disputed, at

best, given that the actions of Principal James, the highest-ranking official at RHS, who for Title

IX purposes may impute liability to the District. *See Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d

1248, 1255 (11th Cir. 2010) ("the highest-ranking school official on site" at the school, was

"high enough on the chain-of-command to impute liability to the School Board").

Accordingly, for the reasons set forth above, the District's motion for summary judgment

on Jane Doe's Title IX retaliation claim should be denied, and instead submitted for a jury to

decide.

With respect to the District's arguments on Plaintiff's Intentional Infliction of Emotional

Distress claim, Plaintiff incorporates herein by reference her opposition to Defendant James'

motion for summary judgment.

## **CONCLUSION**

For all of the reasons set forth above, Jane Doe respectfully requests that this Court

DENY Defendant District's motion in its entirety and GRANT Jane Doe's motion for summary

judgment on the third element of her Title IX deliberate indifference claim, "actual knowledge."


Date:   March 17, 2022

s/ Kasey M. Murray
DAVID M. SCHLOSS [446579]
KASEY K. MURRAY [1016186]
KOONZ, MCKENNEY, JOHNSON &
DEPAOLIS, LLP
2001  Pennsylvania Avenue, N.W.
Suite 450
Washington, D.C. 20006
(202) 824-0700
kmurray@koonz.com


s/ Monica H. Beck
DOUGLAS FIERBERG [418632]
MONICA H. BECK
THE FIERBERG NATIONAL LAW GROUP,
PLLC
161 E. Front Street
Suite 200
Traverse City, MI 49684
(231) 933-0180
dfierberg@tfnlgroup.com
mbeck@tfnlgroup.com

*Counsel for Plaintiff Jane Doe*