THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, by and through her next friend, JULIE DOE,       :<br><br>        *Plaintiff*,       :<br><br>v.       :<br><br>DISTRICT OF COLUMBIA, et al.       :<br><br>        *Defendant*.       : | C.A. No. 1:18-CV-2181 (ABJ) |

### PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia ("District") has moved for summary judgment on Plaintiff Jane Doe's Title IX deliberate indifference, Title IX retaliation, and intentional infliction of emotional distress claims. The District asserts, for the first time in its reply brief, that Jane Doe's Title IX claims fail because she did not exhaust her administrative remedies available under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Defendant's argument must be rejected because it is an affirmative defense that the District never before pleaded or asserted, and thus waived. Even if Defendant's argument is considered, and Plaintiff strongly contends that it should not be, it is clear that Plaintiff was not required to exhaust administrative remedies under the IDEA because she has never alleged that the District violated her IDEA rights, and the gravamen of her Title IX claims is <u>sexual discrimination</u> that denied her educational opportunities and benefits. To accept Defendant's argument would require children with disabilities to exhaust their IDEA administrative remedies prior to bringing a Title IX claim, whereas children without disabilities would not bear that same burden – an untenable proposition at best. Such a result would be particularly unjust here, given that the

1

sexual assault Plaintiff suffered at school, and Defendants' refusal to appropriately respond to that assault and its consequences, <u>caused</u> Jane Doe to suffer post-traumatic stress disorder ("PTSD") and major depression, the only disabilities she could be said to have. The District cannot be immunized from a Title IX lawsuit where its own deliberate indifference and retaliation played a substantial part in causing its student, a victim of school-place sexual violence, to develop a disability, and where its continuing deliberate indifference and retaliation further compounded her injuries and further deprived her of educational opportunities and benefits, which is precisely what occurred here.

## ARGUMENT

**I.      The District Waived the Affirmative Defense of Failure to Exhaust Administrative Remedies**

As a threshold matter, the failure to exhaust administrative remedies is an affirmative defense. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *T.H. v. D.C.*, 255 F. Supp. 3d 55 (D.C. 2017). "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "A party's failure to plead an affirmative defense . . . generally 'results in the waiver of that defense and its exclusion from the case.'" *Harris v. Sec'y of the Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (citation omitted). The D.C. Circuit has stated, "Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Id.* at 345.

Here, the District did not assert a failure to exhaust administrative remedies as an affirmative defense, nor has it ever sought leave to amend its answer to incorporate that defense. *See* Doc. 25. Instead, Defendant first raised this affirmative defense not just in a dispositive motion, but in its <u>reply</u> in support of its motion for summary judgment. Accordingly, the District

waived its affirmative defense, and may not be asserted now.

**II.     The Gravamen of Plaintiff's Complaint Is Sex Discrimination that Effectively Denied Her Educational Opportunities and Benefits, and Not the Denial of IDEA Accommodations**

Should this Court consider the District's last minute affirmative defense, and Plaintiff strongly argues that it should not, Defendant's argument still fails.

The IDEA is intended to ensure that children with disabilities receive necessary special education services. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Torrence v. DC*, 669 F. Supp. 2d 68, 69 (D.D.C. 2009) (quoting 20 U.S.C. § 1400(d)(1)(A)). The IDEA's "core guarantee" is a "free appropriate public education" ("FAPE"). *Fry*, 137 S. Ct. at 750. A written individualized education program ("IEP") serves as the vehicle for providing a child with a FAPE. *Id.* at 748-49. A parent may challenge the adequacy of an IEP or its implementation through an administrative process set forth in the IDEA. *See* 20 U.S.C. § 1415.

The IDEA does not restrict rights or remedies available under other Federal laws to children with disabilities, and it requires administrative exhaustion in only limited circumstances, as follows:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

*Id.* at 750 (quoting 20 U.S.C. § 1415(l)).

In *Fry*, a school district prohibited a student with cerebral palsy from bringing her service dog to school. *Id.* at 750-51. The student's family sued the school district, claiming its exclusion of the service dog violated their daughter's rights under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").[1] *Id.* The Sixth Circuit held that the suit could not proceed because the child suffered harms that were "educational," and the Frys had not exhausted the IDEA's administrative procedures. *Id.* at 751-52.

The Supreme Court disagreed. The Court began its analysis by stating:

> Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Id.* at 752. The Court specifically noted that the exhaustion requirement only applies where the lawsuit "'seeks' relief available under the IDEA – not, as a stricter exhaustion statute might, [when] the suit 'could have sought' relief available under the IDEA." *Id.* at 755.

The Court explained that "[a] school's conduct toward [a student with disabilities] – say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA." *Id.* at 754. If a claim could have been brought in circumstances where there is no obligation to provide a FAPE, then the claim does not seek relief for denial of a FAPE. *See id.* at 756. In addressing the Frys' ADA and Section 504 claims, the Court noted that the IDEA only protects children and only with respect to their schooling, while the ADA and Section 504 protect people with disabilities of any age, inside and outside of

---

[1] Title II of the ADA forbids a "public entity" from discriminating on the basis of disability, and Section 504 prohibits any federally funded program or activity from discriminating on the basis of disability. *See Fry*, 137 S. Ct. at 749 (citing 42 U.S.C. §§ 12131-12132; 29 U.S.C. § 794(a)).

schools. *Id.* at 756-57. The Court provided two hypothetical questions that may be used as "clues" in determining whether the gravamen of a complaint for discrimination based on disability is, at its core, for a denial of a FAPE. *Id.* at 756-57. The first question was whether the plaintiff could have brought "essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" *Id.* at 756. The second question was "could an adult at the school – say, an employer or visitor—have pressed essentially the same grievance?" *Id.* at 757. If the answer to both questions is yes, then a plaintiff's complaint that does not specifically allege denial of a FAPE is "unlikely to be truly" about denial of a FAPE. *Id.* at 756. The Court vacated the Sixth Circuit's opinion and remanded the case, explaining that the Frys' complaint did not make any allegation about denial of a FAPE or a deficient IEP, the family could have filed the same complaint if a public library had refused admittance to the service dog, and an adult visitor to a school prohibited from entering with her service dog could also have made the same complaint. *Id.* at 758-59.

Other courts have routinely determined, based on the *Fry* framework, that a disabled student who asserts claims based on sexual assault or harassment is not required to fulfill the IDEA's administrative exhaustion requirement. *See, e.g., Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224 (5th Cir. 2019) (holding that plaintiff's Title IX claim was not subject to IDEA's exhaustion requirement); *Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, No. 21-cv-10172-PBS, 2022 U.S. Dist. LEXIS 878, at *16-22 (D. Mass. Jan. 4, 2022) (holding administrative exhaustion was not required for Section 504 claim based on a sexual assault caused by school's negligent supervision of plaintiff); *J.C. v. Greensburg-Salem Sch. Dist.*, No. 18-1683, 2019 U.S. Dist. LEXIS 138239, at *23-25 (W.D. Penn. Aug. 15, 2019) (finding that plaintiff's Title IX claim was not subject to exhaustion requirement); *Raymond v. Me. Sch. Admin. Dist. 6*, 2:18-cv-00379-

JAW, 2019 U.S. Dist. LEXIS 80868, at *27-33 (D. Me. May 14, 2019) (holding no exhaustion required for Section 504 claim where plaintiff alleged he was sexually assaulted when school failed to provide supervision required in his IEP); *McCann v. York Sch. Dep't*, 365 F. Supp. 3d 132, 143-45 (D. Me. 2019) (holding that plaintiff was not required to exhaust IDEA administrative procedures in order to bring Section 504 claim based on school's failure to respond to reports of sexual harassment against plaintiff); *Bowe v. Eau Claire Area Sch. Dist.*, 16-cv-746-jdp, 2017 U.S. Dist. LEXIS 61496, at *11-14 (W.D. Wis. Apr. 24, 2017) (holding that failure to exhaust administrative remedies did not preclude plaintiff's Title IX claim); *see also F.H. v. Memphis City Sch.*, 764 F.3d 638 (6th Cir. 2014) (holding that disabled plaintiff who was sexually abused at school was not required to exhaust his administrative remedies in order to bring a claim under 42 U.S.C. § 1983, and noting that to require otherwise would "create an additional administrative barrier not present for non-disabled children").

In *Dallas Independent School District*, the Fifth Circuit reversed the district court's dismissal of a disabled student's Title IX claim for failure to exhaust IDEA administrative remedies. 941 F.3d at 225-26. The court stated, "[b]ased on the Supreme Court's recent decision in *Fry*, we hold that if a disabled person seeks Title IX relief that a non-disabled person could also seek and requests relief that is different from or in addition to a FAPE, the IDEA's exhaustion requirement does not apply." *Id.* at 227. The circuit court noted that the plaintiff's complaint was "largely about sexual harassment." *Id.* at 227-28. This was true even though the plaintiff included allegations related to his disabilities and denial of educational opportunities, the latter of which – as the court explained – were simply a necessary element of any Title IX deliberate indifference claim. *Id.* at 227-28. Mirroring the appropriate "hypothetical questions" offered in *Fry*, the court articulated the following question to answer in determining whether the

gravamen of a complaint is sex-based discrimination or the denial of a FAPE: "Could a student without disabilities bring this same claim?" *Id.* at 229 (emphasis added). Where the answer is yes, then the gravamen of the claim is not denial of a FAPE, but instead sex discrimination, and exhaustion of administrative remedies under IDEA is not a pre-requisite to filing suit. *Id.*

Other courts have followed the same or a similar analysis utilized by the Fifth Circuit in finding that a disabled plaintiff's Title IX claim is not precluded by a failure to exhaust IDEA administrative remedies. *See J.C.*, 2019 U.S. Dist. LEXIS 138239, at *24-25; *Bowe*, 2017 U.S. Dist. LEXIS 61496, at *11-14. In *J.C.*, the court explained that a "school's duty to provide a FAPE under the IDEA is generally not the basis on which a school's duty to respond to [sexual] harassment arises." 2019 U.S. Dist. LEXIS 138239, at *24-25. The *Bowe* court stated, "[t]he peer [sexual] harassment that [plaintiff] alleges is a general-purpose barrier to all of the benefits of school, not just the custom-designed IEP that the IDEA provides. So the relief [plaintiff] seeks is not for the denial of a FAPE, but rather the denial of a harassment-free environment to which all students and employees are entitled." 2017 U.S. Dist. LEXIS 61496, at *13.

Here, Jane Doe has not pleaded or asserted a claim for the District's violation of the IDEA or sought relief for the denial of a FAPE. Instead, she asserts that the combined systemic effect of sexual assault and the District's response to her report of that assault effectively denied her educational opportunities and benefits, which is a required element of her Title IX deliberate indifference claim. And on Plaintiff's Title IX retaliation claim, she asserts that when she engaged in protected activity under Title IX, the District took materially adverse actions against her. Just as in *Dallas Independent School District*, *J.C.*, and *Bowe*, a student without disabilities could have brought these same Title IX claims, which means that Jane Doe was not required to exhaust her administrative remedies under the IDEA prior to bringing suit against the District. It

also is imperative note that, prior to MP's sexual assault of Jane Doe, she did not have an IEP or a disability warranting an IEP. It was MP's sexual assault and Defendants' response to the report of that assault which caused Plaintiff to develop a disability, chronic post-traumatic stress disorder and major depressive disorder. *See* Doc. 71-2 (Pl's Statement of Add'l Material Facts ("PSMF")) ¶¶ 169, 176-77, 207-13.[2] In these circumstances, it would be manifestly unjust to require Plaintiff to jump through administrative hoops not required of non-disabled students, particularly given that it was Defendants who played a significant role in causing Jane Doe to suffer a disability in the first place.

The District cites no applicable case law to support its argument, and its cherry-picked factoids do not establish that the gravamen of Plaintiff's claim is denial of an IEP or violation of the IDEA. With respect to the specific questions posited as "clues" in *Fry*, they were specific to determining whether the gravamen of a claim for discrimination based on disability was a denial of a FAPE. *Fry*, 137 S. Ct. at 756-57. Those questions are unhelpful and inapt where, as here, the claim at issue is one involving discrimination on the basis of sex.

Accordingly, the District's argument based on Plaintiff's failure to exhaust administrative remedies under the IDEA must be rejected.

---

[2] While it is true that during her junior year in high school Plaintiff sought disability accommodations and special education *because of the disability which Defendants, in large part, caused her to suffer*, this is not the gravamen of any of her claims and serves only to show the extreme nature of Defendants' deliberate indifference and retaliation against Plaintiff. The fact that the District refused to provide accommodations and special education to Jane Doe in no way transforms her Title IX claims into an IDEA claim which required administrative exhaustion. Moreover, Plaintiff filed her Title IX claims against the District long before she sought any disability accommodations, and it is unclear how, as Defendant contends, she was supposed to exhaust her administrative remedies prior to filing suit, unless it was by way of magical time travel.

**CONCLUSION**

For all of the reasons set forth above, Jane Doe respectfully requests that this Court DENY Defendant District's motion for summary judgment in its entirety.

Date:  April 21, 2022

s/ Kasey M. Murray
DAVID M. SCHLOSS [446579]
KASEY K. MURRAY [1016186]
KOONZ, MCKENNEY, JOHNSON & DEPAOLIS, LLP
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, D.C. 20006
(202) 824-0700
kmurray@koonz.com


s/ Monica H. Beck
DOUGLAS FIERBERG [418632]
MONICA H. BECK
THE FIERBERG NATIONAL LAW GROUP, PLLC
161 E. Front Street
Suite 200
Traverse City, MI 49684
(231) 933-0180
dfierberg@tfnlgroup.com
mbeck@tfnlgroup.com

*Counsel for Plaintiff Jane Doe*