THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, by and through her<br>  next friend, JULIE DOE,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.<br><br>*Defendant*. | :<br>:<br>:<br>:<br>:<br>: C.A. No. 1:18-CV-2181 (ABJ)<br>:<br>:<br>:<br>:<br>: |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Jane Doe, by and through her attorneys, respectfully files this Notice of Supplemental Authority. This Court has the discretion to permit a party to provide a limited notice of supplemental authority, without prior leave of the court. *See, e.g., Sanders v. District of Columbia*, No. 06-1411, 2014 U.S. Dist. LEXIS 156954, at *2 (D.D.C. Nov. 6, 2014); *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6, 10 (D.D.C. 2011).

On May 19, 2022, the Sixth Circuit issued its opinion in *Doe v. Metropolitan Government of Nashville and Davidson County, Tennessee*, clarifying that the analysis to be utilized in adjudicating high schools Title IX cases is different that that to be utilized in college and university Title IX cases. No. 20-6225, 2022 U.S. App. LEXIS 13530 (6th Cir. May 19, 2022).The Sixth Circuit will continue to adjudicate post-secondary Title IX cases based on the analysis set forth in *Foster v. Board of Regents of University of Michigan*, 982 F.3d 960 (6th Cir. 2020) – a case cited by Defendant District of Columbia here throughout its summary judgment briefing – and *Kollaritsch v. Michigan State University*, 944 F.3d 613 (6th Cir. 2019). However, as forth in the Sixth Circuit's new opinion, that precedent does not apply to high school Title IX

cases, including those asserting an "after" or post-assault deliberate indifference theory. *Metro. Gov't*, 2022 U.S. App. LEXIS 13530 at *15-19.

A copy of the Sixth Circuit's opinion is attached hereto.

| | |
|---|---|
| Date:   May 27, 2022 | s/ Kasey M. Murray<br>DAVID M. SCHLOSS [446579]<br>KASEY K. MURRAY [1016186]<br>KOONZ, MCKENNEY, JOHNSON &<br>DEPAOLIS, LLP<br>2001 Pennsylvania Avenue, N.W.<br>Suite 450<br>Washington, D.C. 20006<br>(202) 824-0700<br>kmurray@koonz.com |
| | s/ Monica H. Beck<br>DOUGLAS FIERBERG [418632]<br>MONICA H. BECK<br>THE FIERBERG NATIONAL LAW GROUP, PLLC<br>161 E. Front Street<br>Suite 200<br>Traverse City, MI 49684<br>(231) 933-0180<br>dfierberg@tfnlgroup.com<br>mbeck@tfnlgroup.com<br><br>*Counsel for Plaintiff Jane Doe* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 27, 2022, a copy of the foregoing Plaintiff's Notice of Supplemental Authority was sent via CM/ECF filing to all counsel of record.

                                                s/ Monica H. Beck
                                                Monica H. Beck

 Neutral
As of: May 26, 2022 3:26 PM Z

# *Doe v. Metro. Gov't & Davidson Cnty.*

United States Court of Appeals for the Sixth Circuit

October 27, 2021, Argued; May 19, 2022, Decided; May 19, 2022, Filed

File Name: 22a0109p.06

Nos. 20-6225/6228

**Reporter**
2022 U.S. App. LEXIS 13530 *; 2022 FED App. 0109P (6th Cir.) **; __ F.4th __

JOHN DOE and JANE DOE #1, on behalf of their minor child, Jane Doe #2 (20-6225); SALLY DOE, on behalf of her minor child, Sally Doe #2 (20-6228), Plaintiffs-Appellants, v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, dba Metropolitan Nashville Public Schools, Defendant-Appellee.

**Prior History: [*1]** Appeal from the United States District Court for the Middle District of Tennessee at Nashville. Nos. 3:17-cv-01159 (20-6225); 3:17-cv-01209 (20-6228)—Aleta Arthur Trauger, District Judge.

*T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cty., 2020 U.S. Dist. LEXIS 176805, 2020 WL 5797978 (M.D. Tenn., Sept. 25, 2020)*

## Core Terms

harassment, district court, video, sexual harassment, deliberate indifference, sexual misconduct, indifferent, student-on-student, schools, summary judgment, sexual, instances, deliberately, recipient, actual knowledge, high school, misconduct, funding, vacate, male student, disciplinary, vulnerable, causation, severe, notice, school district, female student, sexual assault, inappropriate, perpetrator

## Case Summary

### Overview

HOLDINGS: [1]-In consolidated appeals of a summary judgment for a public school district in parents' Title IX and *§ 1983* suit on behalf of their daughters, the court adopted the Ninth Circuit's Karasek standard for evaluating Title IX "before" claims, and held that the district's deliberate indifference to widespread instances of sexual harassment before the students were harassed could have caused the harassment, requiring a remand of the "before" claims; [2]-As to the Title IX "after" claims, a reasonable jury could have concluded that the district had opted to avoid the problem, causing further harassment; [3]-The court declined to extend Kollaritsch's same-victim requirement imposed for university students to the high school student's Title IX claim; [4]-Because of the rulings on the students' Title IX claims, the court also vacated dismissal of the *§ 1983* claims.

### Outcome

Summary judgment vacated in part, reversed in part, and remanded.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN1*[ ] **Entitlement as Matter of Law, Appropriateness**

Courts of appeal review de novo the district court's grant of summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact, and the

Case 1:18-cv-02181-ABJ   Document 86   Filed 05/27/22   Page 5 of 15

Page 2 of 12

2022 U.S. App. LEXIS 13530, *1; 2022 FED App. 0109P (6th Cir.), **Cir.

moving party is entitled to judgment as a matter of law. The appellate courts view the facts and reasonable factual inferences in the light most favorable to the nonmoving party. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Education Law > Civil Liability > Harassment

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Sexual Harassment

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Private Educational Institutions

Education Law > ... > Student Discipline > Misconduct > Sexual Misconduct

Education Law > ... > Gender & Sex Discrimination > Title IX > Scope of Title IX

*HN2*[ ] **Civil Liability, Harassment**

Title IX prohibits discrimination on the basis of sex in any education program receiving federal funding. *20 U.S.C.S. § 1681(a)*. A school may be liable under Title IX for subjecting students to discrimination where the school is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority. The United States Court of Appeals for the Sixth Circuit requires plaintiffs alleging violations of Title IX via student-on-student harassment to establish a three-part prima facie case: (1) sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the school had actual knowledge of the sexual harassment; and (3) the school was deliberately indifferent to the harassment.

Civil Rights Law > Protection of Rights > Federally Assisted Programs > Federal Assistance

Education Law > ... > Gender & Sex Discrimination > Title IX > Enforcement of Title IX

*HN3*[ ] **Federally Assisted Programs, Federal Assistance**

The purpose of Title IX is to protect individuals from discriminatory practices carried out by recipients of federal funds.

Education Law > ... > Student Discipline > Misconduct > Abusive & Offensive Conduct

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Sexual Harassment

Education Law > Administration & Operation > School Safety > Constitutional Rights

Education Law > Civil Liability > Harassment

Education Law > ... > Gender & Sex Discrimination > Title IX > Proof of Discrimination

*HN4*[ ] **Misconduct, Abusive & Offensive Conduct**

For a Title IX "before" claim, the Ninth Circuit in Karasek held a student must show: (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school. The United States Court of Appeals for the Sixth Circuit adopts this Karasek test for a student alleging that a school's deliberate indifference before she was harassed caused the harassment.

Education Law > ... > Student Discipline > Misconduct > Abusive & Offensive Conduct

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Sexual Harassment

Education Law > ... > Gender & Sex Discrimination > Title IX > Proof of Discrimination

Education Law > Civil Liability > Harassment

Education Law > ... > Gender & Sex Discrimination > Title IX > Scope of Title IX

*HN5*[ ] **Misconduct, Abusive & Offensive Conduct**

In a student-on-student harassment claim under Title IX, the school's deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. The critical point is that the Davis

Case 1:18-cv-02181-ABJ   Document 86   Filed 05/27/22   Page 6 of 15

Page 3 of 12

2022 U.S. App. LEXIS 13530, *1; 2022 FED App. 0109P (6th Cir.), **Cir.

formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable harassment of the student-victim.

Education Law > ... > Gender & Sex Discrimination > Title IX > Scope of Title IX

### HN6[ ] Title IX, Scope of Title IX

A public school district has Title IX obligations that are separate and apart from any criminal matter.

Education Law > ... > Gender & Sex Discrimination > Title IX > Enforcement of Title IX

### HN7[ ] Title IX, Enforcement of Title IX

Due to the varying degrees of oversight that these two kinds of institutions exercise over their students, the distinction between a university and a high school makes a difference for the purposes of a student-on-student-harassment claim under Title IX.

Education Law > ... > Gender & Sex Discrimination > Title IX > Enforcement of Title IX

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Sexual Harassment

Education Law > Civil Liability > Harassment

Education Law > ... > Gender & Sex Discrimination > Title IX > Scope of Title IX

Education Law > ... > Gender & Sex Discrimination > Title IX > Proof of Discrimination

### HN8[ ] Title IX, Enforcement of Title IX

Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. The U.S. Supreme Court has underscored that the standard for imposing liability on a school under Title IX for deliberate indifference to student-on-student harassment is sufficiently flexible to account for the level of disciplinary authority available to the school. Authority depends largely on the level of schooling. A university might not be expected to exercise the same degree of control over its students as other kinds of educational institutions would be required to exercise. An en banc majority of the United States Court of Appeals for the Sixth Circuit stresses the importance of analyzing a Title IX claim within the institutional setting from which it arose. Liability under Title IX is on a spectrum, with deliberate indifference claims having special resonance when the school exercises substantial control over both the harasser and the context in which the known harassment occurs.

Education Law > Administration & Operation > School Safety > Constitutional Rights

Education Law > Discrimination in Schools > Gender & Sex Discrimination > Sexual Harassment

### HN9[ ] School Safety, Constitutional Rights

For purposes of a Title IX claim, because of their age, a school's power over students in high school is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults. The importance of school officials' comprehensive authority, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools, is emphasized.

Civil Rights Law > ... > Section 1983 Actions > Elements > Protected Rights

Civil Rights Law > ... > Elements > Color of State Law > State-Authorized Actions

### HN10[ ] Elements, Protected Rights

To state a claim under *42 U.S.C.S. § 1983*, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.

**Counsel:** ARGUED: Mary Parker, PARKER & CROFFORD, Brentwood, Tennessee, for Appellants.

J. Brooks Fox, METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for Appellee.

ON BRIEF: Mary Parker, Stephen Crofford, PARKER & CROFFORD, Brentwood, Tennessee, for Appellants.

Melissa Roberge, METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville,

Case 1:18-cv-02181-ABJ   Document 86   Filed 05/27/22   Page 7 of 15

Page 4 of 12

2022 U.S. App. LEXIS 13530, *1; 2022 FED App. 0109P (6th Cir.), **Cir.)

Tennessee, for Appellee.

**Judges:** Before: GUY, MOORE, and GIBBONS, Circuit Judges. GIBBONS, J., delivered the opinion of the court in which MOORE, J., joined. GUY, J. (pp. 13-21), delivered a separate dissenting opinion.

**Opinion by:** JULIA SMITH GIBBONS

## Opinion

 [**2]  JULIA SMITH GIBBONS, Circuit Judge. Jane Doe and Sally Doe, [1] two female students at Metropolitan Nashville Public Schools ("MNPS"), were videoed by other students engaging in sexual activity with male students at school. Through their parents, they sued MNPS alleging violations of Title IX and constitutional violations under *42 U.S.C. § 1983*. The district court granted summary judgment in favor of MNPS on the students' [*2]  claims. We vacate in part, reverse in part, and remand.

**I**.

In this consolidated appeal, two students from different high schools allege similar treatment by MNPS. We begin with Jane Doe.

Jane Doe was a freshman at Maplewood High School. On September 21, 2016, four upperclassmen male students brought unwelcome sexual activity to Jane Doe and another female student in a stairwell at Maplewood. Unbeknownst to Jane Doe, the incident was recorded on video and circulated. Jane Doe later became aware of the video and that people were calling her "slut" and "whore." DE 92-8, Affidavit, Page ID 3410. Jane Doe's brother also found out about the video and informed their parents. Jane Doe's parents reported the video to Assistant Principal Marvin Olige, explaining the video was made without Jane Doe's knowledge and was being circulated at the school. Olige called in two School Resource Officers ("SROs") and questioned Jane Doe on whether the conduct was forcible rape. Jane Doe's parents asked whether it was safe for Jane Doe to return to class, and when school officials confirmed that it was, Jane Doe returned to class. However, she was afraid to remain at Maplewood and enrolled in a new school the [*3]  next day.

 [**3]  Sally Doe was a freshman at Hunters Lane High School. On February 21, 2017, Sally Doe was led to the bathroom by a male student and pressured into performing oral sex. The male student videoed the incident, without Sally Doe's knowledge. School administrators learned the students went into the bathroom together, so Assistant Principal Melanie McDonald questioned Sally Doe about what occurred. Sally Doe provided a written statement that the students only talked. The next day, Sally Doe and her mother met with Assistant Principal Nicole Newman and an SRO where Sally Doe admitted to kissing the male student but not to any further sexual activity.

About a month and a half later, a female student posted the video of Sally Doe in the bathroom on Instagram. Several of Sally Doe's friends saw the video, and a family member sent the video to her mother. Sally Doe's mother and grandmother went to Hunters Lane and met with Newman and an SRO to report the video. Sally Doe's mother told Newman she wanted something done and her daughter protected, but Newman told her it was now a criminal matter and to contact Metro Police.

After the video was circulated, Sally Doe was called names in the [*4]  hallway and threatened. Sally Doe's mother emailed Newman detailing the harassment and seeking an alternative arrangement for the rest of the school year. Newman helped arrange for Sally Doe to finish the rest of the school year at home. Sally Doe returned to Hunters Lane during the summer. Again, Sally Doe was called names, such as "slut" and "whore." DE 83-3, Dep. Tr., Page ID 2358-59. Sally Doe's mother told McDonald, and McDonald said she would keep an eye out for Sally Doe. Sally Doe also attended Hunters Lane for the 2017-18 school year. That year, a male student touched Sally Doe's buttocks when they were in class taking a picture and posted the photo to social media. This resulted in a fight involving three students, including Sally Doe.

In August 2017, Jane Doe and Sally Doe sued MNPS in federal court, alleging violations of Title IX and constitutional violations under *§ 1983*. MNPS moved for summary judgment against both students. In May 2019, the district court denied MNPS's motion as to Jane Doe, but granted the motion as to Sally Doe only in part. However, on MNPS's motion, the district court certified issues in the summary judgment order for interlocutory appeal.

 [**4]  In December [*5]  2019, this court decided *Kollaritsch v. Michigan State University, 944 F.3d 613 (6th Cir. 2019)*. Believing *Kollaritsch* raised similar issues to those in Jane Doe's and Sally Doe's cases, a motions panel of this court granted MNPS's petition to appeal, vacated the district court's summary judgment order, and remanded the matter back to

---

[1] In the district court proceedings, the two students went by "Jane Doe #2" and "Sally Doe #2" because their mothers used "Jane Doe" and "Sally Doe." For ease of reference, we refer to the students as Jane Doe and Sally Doe here.

the district court. *See In re: Metro. Gov't Nashville & Davidson Cnty.*, 19-0508. On remand, the district court granted MNPS's summary judgment motions with respect to all of Jane Doe and Sally Doe's claims. This appeal followed.

## II.

**HN1**[↑] We review de novo the district court's grant of summary judgment. *Pearce v. Chrysler Grp. LLC Pension Plan, 893 F.3d 339, 345 (6th Cir. 2018)*. Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)* (citing *Fed. R. Civ. P. 56(a)*). We view the facts and reasonable factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. Summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

## III.

**HN2**[↑] Title IX prohibits discrimination on the basis of sex in any education program receiving federal funding. *20 U.S.C. § 1681(a)*; *Chisholm v. St. Mary's City Sch. Dist. Bd., 947 F.3d 342, 349 (6th Cir. 2020)*. In *Davis v. Monroe County Board of Education*, the Supreme Court held that a school could be liable under Title IX for subject deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is undering "students [*6] to discrimination where [the school] is the school's disciplinary authority." *526 U.S. 629, 646-47, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)*. After *Davis*, this court required plaintiffs alleging violations of Title IX via student-on-student harassment to establish a three-part prima facie case: (1) sexual harassment that "was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school"; (2) the school "had actual knowledge of the sexual harassment"; and (3) the school "was deliberately indifferent to the [**5] harassment." *Pahssen v. Merrill Cmty. Sch. Dist., 668 F.3d 356, 362 (6th Cir. 2012)* (quoting *Soper ex rel. Soper v. Hoben, 195 F.3d 845, 854 (6th Cir. 1999)*); *see also Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253, 258-59 (6th Cir. 2000)*.

In *Kollaritsch v. Michigan State University*, this court limited certain Title IX claims based on student-on-student sexual harassment. *944 F.3d 613 (6th Cir. 2019)*. Four female students at Michigan State University were sexually assaulted by male students and reported the assaults to administrative authorities. *Id. at 618*. They alleged the administration's subsequent response was inadequate. *Id.* This court held the plaintiffs must show "that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in [*7] further actionable harassment of the student-victim." *Id. at 620* (emphasis added). Because the students were each only assaulted once, this court concluded the women could not show the school's conduct (or lack thereof) caused them to suffer harassment. *Id. at 625*. The court observed, "the further harassment must be inflicted against the same victim." *Id. at 621-22*.

### A.

Jane Doe and Sally Doe allege two theories of liability under Title IX: liability for MNPS's conduct *before* the students were harassed and liability for MNPS's conduct *after* the students were harassed. These theories have been respectively labelled the students' "before" and "after" claims. We begin with the students' "before" claims.

Under their "before" theory, Jane Doe and Sally Doe contend MNPS had a widespread problem in its schools: numerous instances of sexual misconduct and the dissemination of sexual images of minor students without their consent. Jane Doe and Sally Doe allege that MNPS was deliberately indifferent to these widespread problems, causing them to be sexually harassed and videoed by fellow students on school property without their consent. Following *Kollaritsch*, the district court determined that the students' "before" claims were precluded. [*8] In fact, the district court recognized that no "before" theories of liability under Title IX would be viable if *Kollaritsch* applies because they rely on notice *before* an incident involving the plaintiff and *Kollaritsch* requires two instances of harassment against the same plaintiff-victim.

[**6] The district court's reading of *Kollaritsch* does not take into account the very different context and facts of this case. In *Kollaritsch*, Michigan State University had no knowledge of any threat to the four female students prior to the assaults against them. *944 F.3d at 618, 624-25*. And the adequacy of the university's response could not be assessed unless the students suffered further harm. The allegations here and the facts developed in discovery are quite different.

During discovery, Jane Doe and Sally Doe requested disciplinary records across MNPS schools from 2012 to 2016 related to sexual misconduct, resulting in documentation of

"over 950 instances of sexual harassment, over 1200 instances of inappropriate sexual behavior, 45 instances of sexual assault, and 218 instances of inappropriate sexual contact." DE 101, Dist. Ct. Order, Page ID 4131. Many of those incidents involved students taking and/or distributing sexually explicit photographs or videos of themselves [*9] or other students. Despite the frequency of inappropriate sexual behavior in MNPS facilities, the incidents were handled on an individual basis by the principal of the school in which the sexual offender was enrolled. And although the Department of Education guidance to schools recommended that the Title IX coordinator address all complaints raising Title IX issues, the system-wide Title IX coordinator for MNPS was not involved at all in resolution of the sexual misconduct incidents. *See* 45 C.F.R. § 83.15(a). Rather, she was only notified if the untrained principals determined there was a Title IX violation. Unlike the *Kollaritsch* plaintiffs, Jane Doe and Sally Doe allege that their unwelcome sexual contact was a result of MNPS's indifference to the problem of pervasive sexual misconduct in the schools.

HN3[↑] The purpose of Title IX is to protect "individuals from discriminatory practices carried out by recipients of federal funds." *Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)*. Extending *Kollaritsch*'s same-victim requirement to Title IX "before" claims like those here would thwart that purpose as it would allow schools to remain deliberately indifferent to widespread discrimination as long as the same student was not harassed twice. The majority and the dissent in *Davis* both appear [*10] to reject this result: "Even the dissent suggests that Title IX liability may arise when a funding recipient remains indifferent to severe, gender-based mistreatment played out on a 'widespread level' among students." *Davis, 526 U.S. at 653* [**7] (quoting *id. at 683*). Our sister circuits have found viable "before" claims. *See Karasek v. Regents of Univ. of Cal., 956 F.3d 1093, 1111-12 (9th Cir. 2020)*; *K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1058 (8th Cir. 2017)*; *Williams v. Bd. of Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1288-90, 1296 (11th Cir. 2007)*; *Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1178 (10th Cir. 2007)*. [2] HN4[↑] For a Title IX "before" claim, the Ninth Circuit held a student must show:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Karasek, 956 F.3d at 1112* (footnote omitted) (quoting *Davis, 526 U.S. at 650*). We adopt this test for a student alleging that a school's deliberate indifference *before* she was harassed caused the harassment.

Contrary to the dissent's argument, this test parallels *Kollaritsch*'s overall logic. HN5[↑] In *Davis*, the Supreme Court held that in a student-on-student harassment claim under Title IX, the school's "deliberate indifference [*11] must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *526 U.S. at 645* (citations omitted). *Kollaritsch* interpreted this language to mean that a student must allege that post-notice [3] harassment occurred to satisfy causation under Title IX. *944 F.3d at 623-24*. Specifically, the panel there noted that "[t]he critical point . . . is that the *Davis* formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable harassment of the student-victim." *Id. at 620*.

When a student shows that a school's deliberate indifference to a pattern of student-on-student sexual misconduct leads to sexual misconduct against the student, *Kollaritsch*'s [**8] requirements for causation have been satisfied. A quick comparison demonstrates why. "Before" claims require that the student show that a school's response to reports of sexual misconduct "be clearly unreasonable and lead to further [misconduct]," exactly what *Kollaritsch* requires for "after" claims brought by university students. *Id. at 622*. Rather than premise liability on a school's "*commission* (directly causing further [misconduct])," a "before" claim is premised on the school's "*omission* [*12] (creating vulnerability that leads to further [misconduct])*," a category of wrongful conduct that *Kollaritsch* recognized as giving rise to liability. *Id. at 623* (citation omitted). "Before" claims consequently keep a student's vulnerability to harassment or sexual misconduct, without more, from forming the basis of a Title IX claim, just as *Kollaritsch* did in the context of student-on-student, university-based harassment claims. *See id. at 622-23*. "Before" claims require that more than a single incident of

---

[2] The dissent asserts that *Kollaritsch* rejected this authority. Dissent Op., at 15. But *Kollaritsch* does not mention these cases, which is not surprising, because *Kollaritsch* did not consider a fact pattern like the one before us. Moreover, *Kollaritsch* was decided before *Karasek*.

[3] As one of the concurrences indicated, *Kollaritsch* does not speak to what a student must show to demonstrate a school had notice of previous incidents of harassment. *944 F.3d at 630* (Rogers, J., concurring).

sexual misconduct occur to trigger liability, a requirement that mirrors *Kollaritsch*. See *id. at 623*. Put differently, in a successful "before" claim, a school's deliberate indifference to known past acts of sexual misconduct must have caused the misconduct that the student currently alleges.

In distinguishing this case from a *Kollaritsch*-type claim, we reiterate that plaintiffs here assert a drastically different theory of Title IX liability than was asserted in *Kollaritsch*, in which college women alleged inadequate responses to their specific instances of harassment. *944 F.3d at 618*. Specifically, the university in *Kollaritsch* was not on notice of a possible Title IX violation until after the plaintiffs reported these incidents of sexual harassment. As the disciplinary records cited **[*13]** by Jane Doe and Sally Doe demonstrate, MNPS was aware of issues with sexual harassment in the school system well before the two students reported their incidents. Many of these incidents involved photos or videos. To hold MNPS is immune from liability as long as no student is assaulted twice, regardless of its indifference to widespread instances of sexual harassment across its schools, would defeat Title IX's purpose of eliminating systemic gender discrimination from federally funded schools.

*Kollaritsch* thus does not bar Jane Doe and Sally Doe's Title IX "before" claims. We vacate the district court's grant of summary judgment to MNPS on the students' "before" claims **[**9]** and remand these claims for the district court to consider whether the students have presented sufficient evidence for their claims to go to the jury under the *Karasek* standard. [4]

**B**.

Turning to their Title IX "after" claims, Sally Doe and Jane Doe claim MNPS's inadequate responses to their harassment caused them further harm. The district court granted summary judgment to MNPS on these claims. We vacate in part and reverse in part.

**1**.

We begin with Sally Doe. The district court determined, in light of the school's response, "the facts were **[*14]** not sufficient to allow a reasonable juror to conclude that the school was deliberately indifferent" to Sally Doe's harassment. DE 124, Dist. Ct. Order, Page ID 4355. Viewing the facts in the light most favorable to Sally Doe, we disagree.

When Sally Doe's mother met with and notified Assistant Principal Newman that her daughter had experienced unwelcome sexual contact and that a video of the incident was circulating on social media, Newman responded by saying that the matter "was out of [Newman's] hands" and telling the mother to contact the police. DE 92-5, Affidavit, Page ID 3396. Newman did not recall informing the head of the school about this meeting. Newman did not refer Sally Doe to the Title IX coordinator or any other administrator. And Newman did not provide Sally Doe or her mother with information about any steps that the school would take to address the consequences of the incident. Sally Doe continued to suffer further harassment every day at school, including one incident where a student attempted to show a teacher the video during one of Sally Doe's classes. Yet the school took no additional action, other than assisting her parents with arranging homeschooling. For the **[*15]** dissent, the fact that an SRO filed a report with the police is sufficient to conclude that MNPS's response was not deliberately indifferent as a matter of law. But MNPS *HN6*[⬆] has Title IX obligations that are separate and apart from any criminal matter. We note that the SRO, like Newman, did not investigate the incident further **[**10]** and did not inform the head of the school of the incident. In fact, the SRO was not even familiar with Title IX.

A reasonable jury could conclude that, rather than take steps to remedy the violation, MNPS opted to avoid the problem, resulting in Sally Doe having no choice but homeschooling or enduring further misconduct. *Cf. Foster v. Bd. of Regents of Univ. of Mich., 982 F.3d 960, 962 (6th Cir. 2020)* (en banc) (noting how the school "ratcheted up protections" as more reports of harassment came to the institution's attention); *Stiles ex rel. D.S. v. Grainger Cnty., Tenn., 819 F.3d 834, 849 (6th Cir. 2016)* (detailing how the school followed up complaints of student-on-student harassment with a series of investigations and disciplinary actions). Therefore, we reverse the district court's grant of summary judgment to MNPS on Sally Doe's "after" claim.

**2**.

Unlike Sally Doe, Jane Doe's Title IX "after" claim was dismissed pursuant to *Kollaritsch*. *Kollaritsch* dealt with university students. *944 F.3d at 618*. Cases that we have decided since **[*16]** *Kollaritsch* have applied the decision only to universities. *See, e.g., Doe v. Univ. of Ky., 971 F.3d*

---

[4] The dissent notes faults with the student's deliberate indifference evidence and emphasizes that the district court must decide in the first instance whether there was deliberate indifference. Dissent Op., at 18-19. We make no finding as to the sufficiency of the students' evidence and we remand to the district court to determine whether the record evidence is sufficient to satisfy the standard elaborated in *Karasek*.

553, 555 (6th Cir. 2020). Jane Doe, however, was a high school student when the sexual harassment of which she complained occurred. HN7[↑] Due to the varying degrees of oversight that these two kinds of institutions exercise over their students, the distinction between a university and a high school makes a difference for the purposes of a student-on-student-harassment claim under Title IX.

HN8[↑] "Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment." Davis, 526 U.S. at 644. The Supreme Court has underscored that the standard for imposing liability on a school under Title IX for deliberate indifference to student-on-student harassment "is sufficiently flexible to account . . . for the level of disciplinary authority available to the school." Id. at 649. Authority depends largely on the level of schooling. Universities, for instance, cater primarily to adult students. See Foster, 982 F.3d at 970; Kollaritsch, 944 F.3d at 621-22. For this reason, the Court recognized that "[a] university might not . . . be expected to exercise the same degree of control over its students" as other kinds of educational institutions would be required to **[**11]** exercise. **[*17]** Davis, 526 U.S. at 649. With the salience of control in mind, an en banc majority of this court recently stressed the importance of analyzing a Title IX claim within the institutional setting from which it arose. See Foster, 982 F.3d at 970. Juxtaposing universities to primary schools, the en banc court noted that liability under Title IX is on a spectrum, with "deliberate indifference claims hav[ing] special resonance when the school 'exercises substantial control over both the harasser and the context in which the known harassment occurs,' . . . ." Id. (quoting Davis, 526 U.S. at 645).

In formulating the same-victim requirement, the Kollaritsch panel stressed the need for a university to be on notice about past incidents of harassment before being subject to liability under Title IX. See Kollaritsch, 944 F.3d at 622. HN9[↑] However, because of their age, a school's power over students in high school "is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." Davis, 526 U.S. at 646 (quoting Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 655, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995)). Indeed, the Supreme Court emphasized in Davis "the importance of school officials' 'comprehensive authority . . ., consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools,'" citing cases involving high school students to support **[*18]** this proposition. Id. (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 507, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); citing New Jersey v. T.L.O., 469 U.S. 325, 342 n.9, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985)). Considering this difference in oversight and recognizing that Title IX liability is to be analyzed based on the institutional setting, we decline to extend Kollaritsch's same-victim requirement to a Title IX claim in a high school setting.

Therefore, we vacate the district court's grant of summary judgment to MNPS on Jane Doe's "after" claim and remand for the district court to consider whether the claim survives summary judgment without applying Kollaritsch.

## C.

Jane Doe and Sally Doe also brought claims under § 1983. HN10[↑] "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Doe v. Miami Univ., 882 F.3d 579, 595 (6th Cir. **[**12]** 2018) (citation omitted). Jane Doe and Sally Doe allege MNPS violated the Equal Protection Clause of the Fourteenth Amendment. The district court determined the § 1983 claims rose and fell with the Title IX claims and dismissed all the claims together. As we vacate in part and reverse in part the district court's dismissal of the students' Title IX claims, we also vacate its dismissal of the § 1983 claims.

Kollaritsch is limited to Title IX "after" claims, does not apply to "before" claims, **[*19]** and does not apply to students in high school. Therefore, we reverse the district court's dismissal of Sally Doe's "after" claim. We vacate the district court's dismissal of the students' Title IX "before" claims, § 1983 claims, and Jane Doe's "after" claim. We remand to the district court for a determination of whether the students have presented sufficient evidence to survive summary judgment on these claims.

**Dissent by:** RALPH B. GUY

## Dissent

**[**13]** DISSENT

RALPH B. GUY, JR., Circuit Judge, dissenting. I cannot join the majority opinion's significant enlargement of school district liability for student-on-student sexual harassment under Title IX because, in my view, it cannot be squared with our published decision in Kollaritsch or the Supreme Court's holdings in Gebser and Davis that define the contours of this judicially implied private right of action under Title IX. See Kollaritsch v. Michigan State Univ. Bd. of Educ., 944 F.3d

613 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 554, 208 L. Ed. 2d 175 (2020); Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). That precedent establishes the outer limits of the cause of action, which courts may not expand "no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). The urge to want to blame someone for failing to prevent the sexual misconduct inflicted on Jane in the stairwell and Sally in the bathroom—albeit by different [*20] perpetrators at different high schools—and the subsequent peer-to-peer sharing of videos of those encounters cannot justify supplanting or side-stepping what is required to hold a school district liable under Title IX.

Indeed, the district court applied the controlling authority faithfully, if reluctantly, after this court remanded for reconsideration in light of *Kollaritsch*. First, the district court properly recognized that *Kollaritsch*'s articulation of a *Davis* claim for student-on-student harassment leaves no room for plaintiffs to prevail on a "before" theory (*i.e.*, a Title IX claim "based on MNPS's general knowledge of the risk of sexual misconduct of the type [plaintiffs] suffered"). (PageID 448.) Second, the district court correctly concluded that *Kollaritsch*'s interpretation of *Davis* as requiring proof of *further* post-actual-notice harassment could not be limited to university level students because "*Kollaritsch* made abundantly clear that it was extrapolating the principle . . . from the Supreme Court's opinion in *Davis*, which involved a fifth grader" (*i.e.*, "the rule applies just as much to Maplewood [H.S.] and Hunters Lane [H.S.] as it did to MSU"). (PageID 447.) Because I agree, I would affirm.

[**14] I.

The place to start is Title IX, which [*21] declares that no one "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). For example: "A school might directly interfere with a student's participation in an education program on the basis of sex. Or it might indirectly do the same thing by being 'deliberately indifferent to known acts of student-on-student sexual harassment.'" Foster v. Bd. of Regents of Univ. of Michigan, 982 F.3d 960, 965 (6th Cir. 2020) (en banc) (quoting Davis, 526 U.S. at 647). Title IX may be enforced through a judicially implied private right of action for damages based on the "conditioning an offer of federal funding on a promise by the recipient not to discriminate," but the Supreme Court has said that its enactment under the spending power "has implications for our construction of the scope of available remedies." Gebser, 524 U.S. at 286, 287. [1]

In particular, the Court in *Gebser* held "that it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official." 524 U.S. at 285. Nor would the school [*22] district's failure to promulgate an effective policy and grievance procedure be sufficient to impose liability. Id. at 292. Instead, "the district could be liable for damages *only* where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge." Davis, 526 U.S. at 642 (emphasis added) (citing Gebser, 524 U.S. at 290).

Against that backdrop, *Davis* held that, "in certain limited circumstances," a school district's "deliberate indifference to known acts of harassment" could constitute "an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is a student rather than a teacher." Id. at 643. In fact, explaining that the identity of the harasser [**15] matters, *Davis* expressly limited a school district's liability for student-on-student harassment "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Id. at 630. And, "the harassment must occur 'under' 'the operations of' a recipient." Id. (quoting 20 U.S.C. § 1687 (defining "program or activity")). Critically, *Davis* also held that a recipient "may not be liable for damages unless its deliberate [*23] indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." Id. at 64-45 (quoting Random House Dictionary of the English Language 1415 (1966)). What this additional causation requirement meant was the question that *Kollaritsch* sought to answer. See Doe v. Univ. of Ky., 959 F.3d 246, 250 (6th Cir. 2020) (describing *Kollaritsch* as a rearticulation of *Davis*'s pleading standard). That answer matters because it is what precludes the plaintiffs here from prevailing under their so-called "before" theory.

A. "Before" Theory

First, as this court recently explained, *Kollartisch* "addressed

---

[1] Although not before us here, the Supreme Court recently held that emotional distress damages are not recoverable in implied private actions to enforce certain antidiscrimination statutes enacted under the Spending Clause. See Cummings v. Premier Rehab Keller, PLLC, 142 S. Ct. 1562 (2022) (No. 20-219).

a question that divided our sister circuits following *Davis*—what is required to find that a school has 'subjected' a student to discrimination?" *Wamer v. Univ. of Toledo, 27 F.4th 461, 466 (6th Cir. 2022)*. And, departing from the First, Tenth, and Eleventh Circuits' interpretation, *Kollaritsch* instead read *Davis* as "introduc[ing] a causation element requiring additional post-notice harassment in deliberate indifference claims alleging student-on-student harassment." *Id.* That is, we acknowledged that *Kollaritsch* rejected those other circuits' interpretation of *Davis*, which only require students to demonstrate "that a school's deliberate indifference [*24] made harassment more likely, not that it actually led to any additional post-notice incidences of harassment." *Id. at 467* (citing *Farmer v. Kansas State Univ., 918 F.3d 1094, 1103-05 (10th Cir. 2019)*; *Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 172-73 (1st Cir. 2007)*, *rev'd on other grounds*, *555 U.S. 246, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009)*; and *Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1297-98 (11th Cir. 2007)*). [**16] In other words, *Kollaritsch* rejected the very authority that would leave open the possibility of Title IX liability under a "before" theory. [2]

Second, any doubt on that score is dispelled by *Kollaritsch* itself. There, we expressly rejected the argument "that the isolated phrase *make them vulnerable* means that post-actual-knowledge *further* harassment is not necessary" because it would be a "misreading of *Davis* as a whole and the causation requirement in particular." *Kollaritsch, 944 F.3d at 622, 623*. Instead, *Kollaritsch* explained that *Davis*'s two-part causation statement gives "two possible ways that a school's 'clearly unreasonable' response could lead to further harassment: that response might (1) be a detrimental action, thus fomenting or instigating further harassment, or it might (2) be an insufficient action (or no action at all), thus making the victim vulnerable to, meaning unprotected from, further harassment." *Id. at 623*; *see also id. at 623* (further harassment could occur by "*commission* (directly causing further harassment) [or] *omission* (creating vulnerability that leads to further harassment)" (citation omitted)). [*25] Moreover, *Kollaritsch* also specifically rejected the argument that "a single, sufficiently severe sexual assault is enough to state a viable action." *Id.*

Nor can *Kollaritsch* be side-stepped on the grounds of "the very different context and facts of this case." (Maj. Op. 6.) As the district court aptly noted: "'Before' claims and 'after' claims are, for statutory purposes, all just Title IX claims, subject to the applicable Title IX jurisprudence." (PageID 445.) And, "*Kollaritsch*'s central holding *does* implicate 'before' claims, albeit by unavoidable implication." (PageID 446.) The district court's reasoning is worth repeating:

> A "before" claim, by definition, only satisfies the first element and cannot satisfy the second and fourth elements [articulated in *Kollaritsch*] without becoming an "after" claim. Moreover, the court in *Kollaritsch* was unambiguous that a claim cannot be premised on a school's failure to address risk of sexual harassment based on past incidents of harassment against students other than the plaintiff. *944 F.3d at 621-22*. *The type of hypothetical claim rejected—a claim based on a* [**17] *school's failure to protect the plaintiff from risks apparent from prior misconduct directed at other students—is simply a description of what a "before" claim* [*26] *is.*

(PageID 446.) (Emphasis added.) In other words, *Kollaritsch* precludes the plaintiffs' "before" claims "because such claims are categorically incapable of satisfying its requirements." (PageID 447.)

Third, the majority opinion misleadingly points to a statement in *Davis* as supporting its conclusion that it would "thwart" Title IX's broad remedial purposes to allow "schools to remain deliberately indifferent to widespread discrimination as long as the same student was not harassed twice." (Maj. Op. 6.) Not only is this precisely what *Kollaritsch* requires, the actual passage from *Davis* does not support the proposition either. The *Davis* majority commented that even the dissent suggested liability may arise from deliberate indifference to "severe, gender-based mistreatment played out on a 'widespread level' among students." *Davis, 526 U.S. at 653*. But the *Davis* dissent directly contradicted that characterization, explaining that it only meant that a pattern of discriminatory enforcement of a school's own rules could be the basis of a Title IX action and rejecting the theory that "mere indifference to gender-based mistreatment—even if widespread—is enough to trigger Title IX liability." *Davis, 526 U.S. at 683* (Kennedy, J., dissenting). More importantly, the *Davis* majority made [*27] its assertion to bolster the conclusion that it was "unlikely that Congress would have thought" that "a single instance of sufficiently severe one-on-one peer harassment" was sufficient to have the "systemic effect of denying the victim equal access to an educational program or activity." *Davis, 526 U.S. at 652-53*. Indeed, that conclusion is consistent with *Kollaritsch*'s understanding of *Davis*.

---

[2] Although the *Kollaritsch* majority did not mention these cases by name, it explained that "plaintiffs cite several cases that rely on their same misreading of *Davis* to support that same inapt logical argument. But none of those cases is controlling. And, because we find none of them persuasive, we decline to address them specifically or discuss them here." *944 F.3d at 623*. This court was not mistaken to recognize as much in *Wamer*.

Fourth, in adopting the Ninth Circuit's recent articulation of a "before" or "pre-assault" claim in *Karasek v. Regents of University of California*, the majority opinion implies that the Eighth, Tenth, and Eleventh Circuits have adopted a similar test. A closer look, however, reveals that the Ninth Circuit's decision is an outlier. For example, take the Eighth Circuit's decision in *K.T. v. Culver-Stockton College*, which described *Davis*'s "actual knowledge" element as requiring prior notice of a substantial risk of peer harassment in the recipient's programs based on evidence such as previous similar incidents of assault. 865 F.3d 1054, 1058 (8th Cir. 2017). While the allegations in *K.T.* were insufficient to state a claim, the court gave three examples [**18] where actual knowledge could be established: (1) prior knowledge of "harassment previously committed by the same perpetrator" [*28] or "previous reports of sexual harassment occurring on the same premises," id. (citing Ostrander v. Duggan, 341 F.3d 745, 750 (8th Cir. 2003)); (2) "actual knowledge that [the assailant] posed a substantial risk of sufficiently severe harm to students based on [the assailant's] *previous known conduct*," id. (quoting Thomas v. Bd. of Trustees of Neb. State Colls., 667 F. App'x 560, 562 (8th Cir. 2016)); and (3) where "school officials had actual knowledge of the discrimination in part because they recruited the student assailant despite having 'preexisting knowledge' of the student's previous sexual misconduct," id. at 1058-59 (citing Williams v. Bd. of Regents of the Univ. Sys. of Ga., 477 F.3d 1282, 1293-94 (11th Cir. 2007)). None of those situations are alleged here. As for the Tenth Circuit, its decision in *Simpson v. University of Colorado* rested entirely on an "official policy" theory under which policymakers would know to a moral certainty of the need to do something about the specific risk of sexual assault. 500 F.3d 1170, 1178-80 (10th Cir. 2007). Emphasizing that in *Gebser* and *Davis* "there was no element of encouragement of the misconduct by the school district," the court in *Simpson* explained that "the gist of the complaint [was] that CU sanctioned, supported, even funded, a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts." Id. at 1177. Thus, even if we were free to look beyond *Kollaritsch*, the test articulated [*29] in *Karasek* hardly represents a consensus with respect to "before" theories of liability under Title IX.

Finally, even in *Karasek*, the Ninth Circuit expressly declined to decide whether the allegations were sufficient and remanded with the additional caveat that "adequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct across campus is difficult." *956 F.3d at 1114*. The same is true here. The majority seems to suggest that evidence of MNPS's indifference may be found in the summary of disciplinary actions, occurring over a four-year period, that reflect "over 950 instances of sexual harassment, over 1200 instances of inappropriate sexual behavior, 45 instances of sexual assault, and 218 instances of inappropriate sexual contact." (PageID 4131.) What to make of those numbers, however, is less than clear. In terms of magnitude, MNPS is a particularly large district with an enrollment of nearly 80,000 students that operates more than a hundred schools, including twenty-some high schools. In terms of relevance, plaintiffs seem to recognize that the [**19] numbers are both overinclusive and underinclusive. (PageID 4131.) And, even then, these [*30] are all incidents that resulted in disciplinary action, which is relevant to whether MNPS's responses were "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. It will be for the district court to determine in the first instance whether there was an official policy of deliberate indifference, but, as in *Karasek*, the remand should go with the additional caveats that "[t]he element of causation ensures that Title IX liability remains within proper bounds" and that "Title IX does not require [a funding recipient] to purge its campus of sexual misconduct to avoid liability." *Karasek, 956 F.3d at 1114*.

I would affirm the district court's rejection of the "before" theory as irreconcilable with *Kollaritsch*'s interpretation of *Davis*.

B. "After" Theory

Although it is conceded that *Kollaritsch* governs the so-called "after" claims, the majority summarily excises the "same-victim requirement" for student-on-student harassment occurring between high school students. (Maj. Op. 10-11.) Nothing in *Kollaritsch* even faintly suggests that harassment of third parties could satisfy the requirement of *further* post-actual-notice harassment in cases involving non-university students. Indeed, in explicating that requirement, *Kollaritsch* specifically relied on a case involving [*31] a middle school student harassed by a high school student. *See Kollaritsch, 944 F.3d at 621-22*. That is, *Kollaritsch* said: "Because the further harassment must be inflicted against the same victim, the plaintiff 'cannot . . . premise the [further harassment] element of her Title IX claim on conduct [by the perpetrator] directed at third parties.'" *Id.* (quoting Pahssen v. Merrill Comm. Sch. Dist., 668 F.3d 356, 363 (6th Cir. 2012)). The district court recognized as much, concluding that "*Kollaritsch* was unambiguous that a claim cannot be premised on a school's failure to address a risk of sexual harassment based on past incidents of harassment against students other than the plaintiff." (PageID 446 (citing *Kollaritsch, 944 F.3d at 621-22*).) *Kollaritsch* can be read no other way.

Nor does this court's decision in *Foster* support a contrary

result. To be sure, *Foster* recognized that "the deliberate-indifference inquiry operates differently [for adults enrolled in an off-site graduate school program] than it does for elementary-age 'schoolchildren' over whom [**20] grade schools possess a unique degree of 'supervision and control.'" *Foster, 982 F.3d at 970* (quoting *Davis, 526 U.S. at 646*). Significantly, however, both *Foster* and *Davis* involved further harassment of the *same* victim. In fact, *Foster*'s focus on the degree of control pertained only to the reasonableness of the university's response to the reports of further harassment. [*32] *See id. at 965-70*; *see also id. at 981-82* (Moore, J., dissenting). The continuum of control is represented by *Foster* on one end (mid-career executive graduate program held off-site at a hotel) and *Davis* on the other ("a fifth-grade boy [who] waged a months-long campaign" of sexual harassment of a classmate mostly in the classroom under the direct supervision of a teacher). A high school's control over a harasser and the context—particularly given greater autonomy of students than elementary school, difficulty controlling all contexts where students interact, and the ubiquity of social media in and outside of school—falls somewhere between those extremes. While *Davis* instructs that the degree of control is relevant to judging the reasonableness of a school district's responses, it does not speak to the same-victim requirement. The district court did not err in finding that Jane Doe could not establish her *Title IX* "after" claim under *Kollaritsch*.

Finally, with respect to the "after" claim asserted by Sally Doe, the district court found no basis to reconsider its prior decision granting MNPS's motion for summary judgment in light of *Kollaritsch*. (PageID 444.) The majority opinion reverses on the grounds that a reasonable jury could find that "MNPS [*33] opted to avoid the problem" of harassment that followed the circulation of the video "resulting in Sally Doe having no choice but homeschooling or enduring further misconduct" (Maj. Op. 10.) That conclusion, however, rests on a selective misreading of the testimony from Sally's mother.

It is true that Sally's mother said she asked Assistant Principal Newman to do something about the perpetrator and Newman responded that it was a criminal matter that was "out of her hands." (RE 83-3, pp. 67, 69.) But, even by Sally's mother's account, that was not the end of the meeting with Newman. In fact, Sally was called to the office and questioned about what happened and the SRO who was present at the meeting initiated a formal complaint to get the video taken down. (RE 83-3, pp. 72-74, 76.) Sally's mother met with a police detective less than two weeks later, who confirmed that the video had been taken down. (RE 83-3, pp. 82-84.) [**21] Also, when Sally's mother reported in emails on April 11 and 12 that Sally was experiencing harassment about the video from other students, Newman's response was to ask to meet to "figure out a plan to get [Sally] through the rest of the year." (RE 83-7.)

The district [*34] court specifically found the "assertion that the school did nothing . . . is simply factually untrue" and concluded that Newman's response "cannot be treated as a total abdication of responsibility such that an inference of deliberate indifference would arise." (No. 17-cv-1098, RE 101, p. 52.) The district court reiterated on remand that Newman

> treated the incident—including, in particular, the videotaping aspect—as serious and maintained ongoing communication with Sally Doe's parents. The initial perpetrator in the Sally Doe incident, moreover, faced significant consequences for his actions, including criminal prosecution. . . . [And,] although MNPS made some errors in its handling of Sally Doe's case, the facts were not sufficient to allow a reasonable juror to conclude that the school was deliberately indifferent.

(PageID 438.) We recognized in *Foster* that, "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not [deliberately indifferent] as a matter of law." *Foster, 982 F.3d at 971* (quoting *Davis, 526 U.S. at 649*). The district court did not err finding that was the case with respect to Sally Doe's "after" claim.

I respectfully [*35] dissent.

---

**End of Document**